UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAWANA R. WYATT, as Administrator of the
Estate of INDIA T. CUMMINGS,

                         Plaintiff,        **Civil Action No.:**

vs.                           **COMPLAINT**

                                **JURY TRIAL DEMANDED**

ERIE COUNTY SHERIFF SERGEANT KOZLOWSKI,
ERIE COUNTY SHERIFF SERGEANT DIAMOND,
ERIE COUNTY SHERIFF SERGEANT WYAND-GARRET,
ERIE COUNTY SHERIFF SERGEANT LIGHTCAP,
ERIE COUNTY SHERIFF SERGEANT SCANLON,
ERIE COUNTY SHERIFF SERGEANT CARNEY,
ERIE COUNTY SHERIFF SERGEANT FORERO,
ERIE COUNTY SHERIFF SERGEANT WEIG,
ERIE COUNTY SHERIFF SERGEANT EVANS,
ERIE COUNTY SHERIFF SERGEANT KNEZEVIC,
ERIE COUNTY SHERIFF SERGEANT ROBINSON,
ERIE COUNTY SHERIFF SERGEANT BALYS,
ERIE COUNTY SHERIFF SERGEANT WEBSTER,
ERIE COUNTY SHERIFF SERGEANT PERKINS,
ERIE COUNTY SHERIFF SERGEANT GLINSKI,
ERIE COUNTY SHERIFF SERGEANT CROSS,
ERIE COUNTY SHERIFF SERGEANT WADE,
ERIE COUNTY SHERIFF LIEUTENANT FRANKLIN,
ERIE COUNTY SHERIFF LIEUTENANT ISCH,
ERIE COUNTY SHERIFF LIEUTENANT LODESTRO,
ERIE COUNTY SHERIFF LIEUTENANT BRYMAN,
ERIE COUNTY SHERIFF LIEUTENANT GLINSKI,
ERIE COUNTY SHERIFF CAPTAIN ALAN WHALEN,
ERIE COUNTY SHERIFF DEPUTY WOOD
ERIE COUNTY SHERIFF DEPUTY GOULD,
ERIE COUNTY SHERIFF DEPUTY GEARRY,
ERIE COUNTY SHERIFF DEPUTY FALETTA,
ERIE COUNTY SHERIFF DEPUTY RIVERA,
ERIE COUNTY SHERIFF DEPUTY SANCHEZ,
ERIE COUNTY SHERIFF DEPUTY HUSSAR,
ERIE COUNTY SHERIFF DEPUTY SALTZ,
ERIE COUNTY SHERIFF DEPUTY FILIPSKI,

ERIE COUNTY SHERIFF DEPUTY WEGRYN,
ERIE COUNTY SHERIFF DEPUTY SHUBERT,
ERIE COUNTY SHERIFF DEPUTY HAYES,
ERIE COUNTY SHERIFF DEPUTY M. MILLER,
ERIE COUNTY SHERIFF DEPUTY LUGO,
ERIE COUNTY SHERIFF DEPUTY CASTOIRE,
ERIE COUNTY SHERIFF DEPUTY GILETTE,
ERIE COUNTY SHERIFF DEPUTY ESFORD,
ERIE COUNTY SHERIFF DEPUTY WINDRUM,
ERIE COUNTY SHERIFF DEPUTY ZARCONE,
ERIE COUNTY SHERIFF DEPUTY CASCIO,
ERIE COUNTY SHERIFF DEPUTY CHERYL MORABITO,
ERIE COUNTY SHERIFF DEPUTY LIBERTI,
ERIE COUNTY SHERIFF DEPUTY BARNES,
ERIE COUNTY SHERIFF DEPUTY SENGBUSCH,
ERIE COUNTY SHERIFF DEPUTY SZRAMA,
ERIE COUNTY SHERIFF DEPUTY WHYTE,
ERIE COUNTY SHERIFF DEPUTY SCIBIA,
ERIE COUNTY SHERIFF DEPUTY HOLDER,
ERIE COUNTY SHERIFF DEPUTY STISSER,
ERIE COUNTY SHERIFF DEPUTY SZENTESY,
ERIE COUNTY SHERIFF DEPUTY PATTI,
ERIE COUNTY SHERIFF DEPUTY SOWINSKI,
ERIE COUNTY SHERIFF DEPUTY MAJCHROWICZ,
ERIE COUNTY SHERIFF DEPUTY VAU,
ERIE COUNTY SHERIFF DEPUTY MCGAVIS,
ERIE COUNTY SHERIFF DEPUTY EAGLE,
ERIE COUNTY SHERIFF DEPUTY D'ALOISIO,
ERIE COUNTY SHERIFF DEPUTY SALVERSON,
ERIE COUNTY SHERIFF DEPUTY MOSS,
ERIE COUNTY SHERIFF DEPUTY RANICK,
ERIE COUNTY SHERIFF DEPUTY KEE,
ERIE COUNTY SHERIFF DEPUTY BOGGS,
ERIE COUNTY SHERIFF DEPUTY MACIEJEWSKI,
ERIE COUNTY SHERIFF DEPUTY MILES,
ERIE COUNTY SHERIFF DEPUTY OSIKA,
ERIE COUNTY SHERIFF DEPUTY KOZAKIEWICZ,
ERIE COUNTY SHERIFF DEPUTY LANCE THURSTON,
ERIE COUNTY SHERIFF DEPUTY JOHN L. DUNN,
ERIE COUNTY SHERIFF DEPUTY TYSEN A. LINCOLN.

Defendants.

_____

**JURISDICTION**

1.      This is a civil action seeking damages for personal injuries and wrongful death pursuant to 42 U.S.C. 1983.


**PARTIES**

2.      The plaintiff, TAWANA R. WYATT, as Administrator of the Estate of INDIA T. CUMMINGS, at all times hereinafter mentioned, was and still is a resident of the City of Rochester located within the County of Monroe and the State of New York.

3.      On or about the 5th day of July, 2016, the plaintiff, TAWANA R. WYATT, was appointed Administrator of the Estate of INDIA T. CUMMINGS ("CUMMINGS"), pursuant to an Order of the Surrogate's Court of the County of Erie and the State of New York, and Letters of Administration of the Estate of INDIA T. CUMMINGS were served on the plaintiff, TAWANA R. WYATT, and the said plaintiff thereupon duly qualified and thereafter acted and is still acting as such Administrator.

4.      ERIE COUNTY SHERIFF'S DEPUTY CATHY WOOD (hereinafter "Deputy Wood") was an Erie County Sheriff's Deputy working in the Erie County Holding Center (hereinafter "ECHC") during the period of CUMMING'S booking and incarceration. DEPUTY WOOD is sued in her individual capacity. DEPUTY WOOD performed the initial classification of CUMMINGS on February 1, 2016 and classified CUMMINGS to be housed in a non-medical unit "Alpha Long."

5.     ERIE COUNTY SHERIFF'S DEPUTY GOULD was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration. DEPUTY GOULD is sued in his individual capacity.

6.     ERIE COUNTY SHERIFF'S DEPUTY GEARRY was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration. DEPUTY GEARRY is sued in his individual capacity.

7.     ERIE COUNTY SHERIFF'S DEPUTY FALETTA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S booking and incarceration. DEPUTY FALETTA is sued in his individual capacity.

8.     ERIE COUNTY SHERIFF'S DEPUTY RIVERA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration. DEPUTY RIVERA is sued in his individual capacity.

9.     ERIE COUNTY SHERIFF'S DEPUTY SANCHEZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration.  DEPUTY SANCHEZ is sued in his individual capacity.

10.     ERIE COUNTY SHERIFF'S DEPUTY HUSSAR was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration. DEPUTY HUSSAR is sued in his individual capacity.

11.     ERIE COUNTY SHERIFF'S DEPUTY SALTZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S booking and incarceration. DEPUTY SALTZ is sued in his individual capacity.

12.     ERIE COUNTY SHERIFF'S DEPUTY FILIPSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration. DEPUTY FILIPSKI is sued in his individual capacity.

13.     ERIE COUNTY SHERIFF'S DEPUTY WEGRYN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration. DEPUTY WEGRYN is sued in his individual capacity.

14.     ERIE COUNTY SHERIFF'S DEPUTY SHUBERT was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration.  DEPUTY SHUBERT is sued in his individual capacity.

15.     ERIE COUNTY SHERIFF'S DEPUTY M. MILLER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long.  DEPUTY M. MILLER is sued in his individual capacity.

16.     ERIE COUNTY SHERIFF'S DEPUTY LUGO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long. DEPUTY LUGO is sued in her individual capacity.

17.     ERIE COUNTY SHERIFF'S DEPUTY CASTOIRE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long.  DEPUTY CASTOIRE is sued in his individual capacity.

18.     ERIE COUNTY SHERIFF'S DEPUTY GILETTE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long. GILETTE is sued in his individual capacity.

19.     ERIE COUNTY SHERIFF'S DEPUTY ESFORD was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long. DEPUTY ESFORD is sued in his individual capacity.

20.     ERIE COUNTY SHERIFF'S DEPUTY WINDRUM was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long.  DEPUTY WINDRUM is sued in his individual capacity.

21.     ERIE COUNTY SHERIFF'S DEPUTY HAYES was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg. DEPUTY HAYES is sued in his individual capacity.

22.     ERIE COUNTY SHERIFF'S DEPUTY CASCIO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY CASCIO is sued in his individual capacity.

23.     ERIE COUNTY SHERIFF'S DEPUTY ZARCONE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg.  DEPUTY ZARCONE is sued in his individual capacity.

24.     ERIE COUNTY SHERIFF'S DEPUTY MORABITO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S incarceration in Alpha Seg. and Delta Control.  DEPUTY MORABITO is sued in her individual capacity.

25.     ERIE COUNTY SHERIFF'S DEPUTY LIBERTI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY LIBERTI is sued in his individual capacity.

26.    ERIE COUNTY SHERIFF'S DEPUTY BARNES was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY BARNES is sued in his individual capacity.

27.    ERIE COUNTY SHERIFF'S DEPUTY SENGBUSCH was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY SENGBUSCH is sued in his individual capacity.

28.    ERIE COUNTY SHERIFF'S DEPUTY SZRAMA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY SZRAMA is sued in his individual capacity.

29.    ERIE COUNTY SHERIFF'S DEPUTY WHYTE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY WHYTE is sued in his individual capacity.

30.    ERIE COUNTY SHERIFF'S DEPUTY SCIBIA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY SCIBIA is sued in his individual capacity.

31.    ERIE COUNTY SHERIFF'S DEPUTY HOLDER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY HOLDER is sued in his individual capacity.

32.    ERIE COUNTY SHERIFF'S DEPUTY STISSER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY STISSER is sued in his individual capacity.

33.    ERIE COUNTY SHERIFF'S DEPUTY SZENTESY was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY SZENTESY is sued in his individual capacity.

34.    ERIE COUNTY SHERIFF'S DEPUTY PATTI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY PATTI is sued in his individual capacity.

35.    ERIE COUNTY SHERIFF'S DEPUTY SOWINSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY SOWINSKI is sued in his individual capacity.

36.    ERIE COUNTY SHERIFF'S DEPUTY MAJCHROWICZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY MAJCHROWICZ is sued in his individual capacity.

37.    ERIE COUNTY SHERIFF'S DEPUTY VAU was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY VAU is sued in his individual capacity.

38.    ERIE COUNTY SHERIFF'S DEPUTY MCGAVIS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY MCGAVIS is sued in his individual capacity.

39.    ERIE COUNTY SHERIFF'S DEPUTY EAGLE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  DEPUTY EAGLE is sued in his individual capacity.

40.     ERIE COUNTY SHERIFF'S DEPUTY D'ALOISIO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control. DEPUTY D'ALOISIO is sued in his individual capacity.

41.     ERIE COUNTY SHERIFF'S DEPUTY SALVERSON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY SALVERSON is sued in his individual capacity.

42.     ERIE COUNTY SHERIFF'S DEPUTY MOSS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY MOSS is sued in his individual capacity.

43.     ERIE COUNTY SHERIFF'S DEPUTY RANICK was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY RANICK is sued in his individual capacity.

44.     ERIE COUNTY SHERIFF'S DEPUTY KEE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY KEE is sued in her individual capacity.

45.     ERIE COUNTY SHERIFF'S DEPUTY BOGGS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY BOGGS is sued in his individual capacity.

46.     ERIE COUNTY SHERIFF'S DEPUTY MACIEJEWSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY MACIEJEWSKI is sued in his individual capacity.

47.     ERIE COUNTY SHERIFF'S DEPUTY MILES was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY MILES is sued in his individual capacity.

48.     ERIE COUNTY SHERIFF'S DEPUTY OSIKA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY OSIKA is sued in his individual capacity.

49.     ERIE COUNTY SHERIFF'S DEPUTY KOZAKIEWICZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  DEPUTY KOZAKIEWICZ is sued in his individual capacity.

50.     ERIE COUNTY SHERIFF'S LIEUTENANT FRANKLIN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S booking and incarceration in Alpha Long, Alpha Seg, Delta Control and Delta Female.  LIEUTENANT FRANKLIN is sued in his individual capacity.

51.     ERIE COUNTY SHERIFF'S LIEUTENANT ISCH was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration in Alpha Long, Delta Female.  LIEUTENANT ISCH is sued in his individual capacity.

52.     ERIE COUNTY SHERIFF'S LIEUTENANT LODESTRO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration in Alpa Seg, Delta Control, Delta Female and Buffalo General Hospital.  LIEUTENANT LODESTRO is sued in his individual capacity.

53.     ERIE COUNTY SHERIFF'S LIEUTENANT BRYMAN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in

Alpha Long, Alpha Seg, Delta Female and Delta Control.  LIEUTENANT BRYMAN is sued in his individual capacity.

54.    ERIE COUNTY SHERIFF'S LIEUTENANT GLINSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Alpha Seg, Delta Control, Delta Female and Buffalo General Hospital. LIEUTENANT GLINSKI is sued in his individual capacity.

55.    ERIE COUNTY SHERIFF'S CAPTAIN WHALEN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control and Delta Female.  CAPTAIN WHALEN is sued in his individual capacity.

56.    ERIE COUNTY SHERIFF'S SERGEANT WYAND-GARRET was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking. SERGEANT WYAND-GARRET is sued in his individual capacity.

57.    ERIE COUNTY SHERIFF'S SERGEANT KOZLOWSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration in Delta Control and Delta Female.  SERGEANT KOZLOWSKI is sued in his individual capacity.

58.    ERIE COUNTY SHERIFF'S SERGEANT DIAMOND was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking. SERGEANT DIAMOND is sued in his individual capacity.

59.    ERIE COUNTY SHERIFF'S SERGEANT LIGHTCAP was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Delta Female and Delta Control.  SERGEANT LIGHTCAP is sued in his individual capacity.

60.     ERIE COUNTY SHERIFF'S SERGEANT SCANLON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long and Alpha Seg.  SERGEANT SCANLON is sued in his individual capacity.

61.     ERIE COUNTY SHERIFF'S SERGEANT CARNEY was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Alpha Seg and Delta Female.  SERGEANT CARNEY is sued in his individual capacity.

62.     ERIE COUNTY SHERIFF'S SERGEANT FORERO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Delta Control, Delta Female.  SERGEANT FORERO is sued in his individual capacity.

63.     ERIE COUNTY SHERIFF'S SERGEANT WEIG was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg and Alpha Female.  SERGEANT WEIG is sued in his individual capacity.

64.     ERIE COUNTY SHERIFF'S SERGEANT EVANS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg.  SERGEANT EVANS is sued in his individual capacity.

65.     ERIE COUNTY SHERIFF'S SERGEANT KNEZEVIC was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg, Delta Control and Alpha Female.  SERGEANT KNEZEVIC is sued in his individual capacity.

66.    ERIE COUNTY SHERIFF'S SERGEANT ROBINSON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control and Delta Female.  SERGEANT ROBINSON is sued in his individual capacity.

67.    ERIE COUNTY SHERIFF'S SERGEANT BALYS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  SERGEANT BALYS is sued in his individual capacity.

68.    ERIE COUNTY SHERIFF'S SERGEANT WEBSTER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration at Buffalo General Hospital.  SERGEANT WEBSTER is sued in his individual capacity.

69.    ERIE COUNTY SHERIFF'S SERGEANT PERKINS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female and Delta Control.  SERGEANT PERKINS is sued in his individual capacity.

70.    ERIE COUNTY SHERIFF'S SERGEANT GLINSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  SERGEANT GLINSKI is sued in his individual capacity.

71.    ERIE COUNTY SHERIFF'S SERGEANT A. LODESTRO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control.  SERGEANT A. LODESTRO is sued in his individual capacity.

72.    ERIE COUNTY SHERIFF'S SERGEANT CROSS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  SERGEANT CROSS is sued in his individual capacity.

73.     ERIE COUNTY SHERIFF'S SERGEANT WADE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female.  SERGEANT WADE is sued in his individual capacity.

74.     ERIE COUNTY SHERIFF'S DEPUTY LANCE THURSTON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female. DEPUTY THURSTON initiated a malicious prosecution against CUMMINGS during her incarceration. DEPUTY THURSTON is sued in his individual capacity.

75.  ERIE COUNTY SHERIFF'S DEPUTY JOHN L. DUNN was an Erie County Sheriff's Deputy and did transport CUMMINGS to ERIE COUNTY MEDICAL CENTER on February 2, 2016. DEPUTY DUNN initiated a malicious prosecution against CUMMINGS during her incarceration. DEPUTY DUNN is sued in his individual capacity.

76.  ERIE COUNTY SHERIFF'S DEPUTY TYSEN A. LINCOLN was an Erie County Sheriff's Deputy and did transport CUMMINGS to ERIE COUNTY MEDICAL CENTER on February 2, 2016. DEPUTY LINCOLN initiated a malicious prosecution against CUMMINGS during her incarceration. DEPUTY LINCOLN is sued in his individual capacity.

## STATEMENT OF FACTS

77.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 76" of this Complaint with the same force and effect as if fully set forth herein.

78.     On February 1, 2016, decedent, CUMMINGS was arrested in the City of Lackawanna by members of the Lackawanna Police Department.

79.     While in the custody of the Lackawanna Police, CUMMINGS sustained a spiral fracture of the left humerus.

80.     On February 1, 2016 CUMMINGS was transported to the ECHC and placed in the custody of the County of Erie, Erie County Sheriff's Office, and Erie County Sheriff Timothy Howard.

81.     While housed at the ECHC, all above-captioned defendants were working in various housing units in the ECHC, which housed CUMMINGS.  Accordingly, all above-captioned defendants had sufficient opportunity to observe CUMMINGS while incarcerated at the ECHC.

82.     While an inmate at ECHC, CUMMINGS was deprived of proper and adequate medical care and treatment, was deprived of humane conditions of confinement, and failed to receive adequate food and hydration.

83.     The cruel and inhumane conditions of INDIA T. CUMMING'S confinement were readily observable to all above-captioned defendants.  At all times during her confinement, CUMMINGS was in a severely depleted, decompensated, and incapacitated state, and in clear and desperate need of medical attention.  Such a fact was evident to ALL INDIVIDUALLY NAMED DEFENDANTS, whether or not they had medical training.

84.     During CUMMINGS' period of confinement, numerous inmates, at various times, made efforts to convince many of the defendants to transport CUMMINGS to the hospital.

85.     During incarceration at ECHC, CUMMINGS' broken arm was obviously displaced and her left arm was noticeably discolored.  Despite this readily observable condition, she was not provided adequate medical treatment for her arm fracture.

86.     Further, CUMMINGS was not of sufficient mental capacity to decline medical care and treatment.  Additionally, the worsening of CUMMINGS' physical and mental condition over the period of incarceration constituted a medical emergency and serious medical condition necessitating treatment.

87.     Upon intake at ECHC, on February 1, 2016 it was easily observable and known to all defendants at ECHC that CUMMINGS presented with bizarre behavior requiring of emergent psychiatric care.  Further, CUMMINGS had obvious physical injuries, including a broken left arm, which worsened over the course of her incarceration at ECHC.

88.     Despite the readily observable serious medical conditions, CUMMINGS was classified to be housed in "Alpha Long" a non-medical housing unit in ECHC.

89.     On February 2, 2016, at approximately 2:20 A.M., CUMMINGS was being transported from the Erie County Medical Center (ECMC) by Defendants Dunn and Lincoln.

90.     In response to the difficulty Defendants Dunn and Lincoln had in transporting CUMMINGS from ECMC, said Defendants charged her with various crimes and violations of the Penal Law, even though it was clearly evident from Cummings bizarre behavior that she lacked the requisite mental state in order to be held criminally liable for her actions. As such, said Defendants were, in essence, criminalizing CUMMINGS' mental illness.

91.     Defendants Dunn and Lincoln charged CUMMINGS with disorderly conduct, harassment in the second degree, and obstructing governmental administration in the second degree. All of these offenses require an intentional mental state to be held criminally liable for the commission of the offense. As Cummings was babbling incoherently, self-harming, and not eating or drinking with any sense of regularity during the course of her stay at the ECHC, it was readily apparent to these Defendants that CUMMINGS did not have the mental capacity to act with intent, within the meaning of the term as defined by §15.05(1) of New York State's Penal Law.

92.     On February 3, 2016, it was noted that CUMMINGS had an urgent referral for mental health treatment due to an acute change in behavior and a physical altercation with deputies.

93.     Despite the urgent referral to mental health providers, CUMMINGS was transferred to "Alpha Seg," another non-medical disciplinary housing unit.

94.     As a result of the physical altercation with the deputies, CUMMINGS was again charged with various criminal acts, by Defendant ERIE COUNTY SHERIFF DEPUTY LANCE THURSTON.

95.     Defendant THURSTON charged CUMMINGS with the crimes of assault in the second degree, assault on a police officer, obstructing governmental administration in the second degree, and assault in the third degree.

96.     All of these charges require intentional acts and, given CUMMINGS' bizarre behavior as referenced above, which included wildly flailing about at times, it was readily apparent to Defendant Thurston that CUMMINGS lacked the requisite culpable mental state, as set forth by §15.00(6) to commit a crime.

97.     Between February 3, 2016 and February 5, 2016, CUMMINGS bizarre behavior persisted and she was observed not being able to engage with providers. It was apparent to all defendants in the ECHC that CUMMINGS had a serious medical need.

98.     On February 5, 2016, CUMMINGS was observed to be delusional, minimally engaged, disorganized and responding to internal stimuli.

99.     On February 5, 2016, CUMMINGS was transferred to "Delta Control" which is considered to be a housing unit for inmates with known medical conditions.  Due to the placement of CUMMINGS in "Delta Control," coupled with her documented history of physical and mental health conditions, ALL DEFENDANTS knew of CUMMINGS' serious medical needs.

100.     Between February 5, 2016 and February 8, 2016 no medical treatment was rendered to CUMMINGS whatsoever by a medical professional, despite being housed in "Delta Control."

101.     On February 8, 2016, CUMMINGS was to be transported to ECMC for an evaluation of her severely fractured left arm.  Erie County Sherriff Deputy Walter J. Halady failed to transport CUMMINGS.  Instead, Halady, stated that she refused transportation.  As previously stated, and acknowledged by ECHC staff and medical providers, CUMMINGS was not of sound mind.  Accordingly, CUMMINGS was unable to make medical decisions for herself.

102.     CUMMINGS was never transported to ECMC and CUMMINGS received no noted medical treatment until a consultation with Forensic Mental Health Physician, Elizabeth Coggins, M.D. on February 11, 2016.

103.   On February 11, 2016, Dr. Coggins made an assessment at the urging of the local criminal court, who worried something was "terribly wrong" with CUMMINGS and "expressed concerns about her health."

104.   Prior to February 11, 2016, security (presumably Sheriff's Deputies) stated to Dr. Coggins that CUMMINGS appeared "increasingly confused" and had not been eating or drinking.  Dr. Coggins opined CUMMINGS may need hospital care, recognizing a serious medical need.  CUMMINGS was never transported to a hospital.

105.   On February 11, 2016, Amy Jordan, R.N. attempted to make an assessment on CUMMINGS to differentiate psychotic disorder versus a general medical concern.   No licensed medical doctor was dispatched to make this assessment or diagnosis.  Nurse Jordan observed CUMMINGS disheveled, with poor hygiene, her left forearm unsupported and discolored.  Nurse Jordan observed "[a] reddish hue [to the left arm] from approx. [*sic*] 10 feet away."

106.   On February 11, 2016, medical records reflect that Hollani Goltz, a counselor with Erie County Department of Forensic Mental Health, recognized that CUMMINGS "appeared to be decompensated.  She is disengaged and her behavior is bizarre."  CUMMINGS was not transported to a hospital despite the inability to assess.

107.   The condition of CUMMINGS was readily observable to the above-captioned Sheriff's Department personnel.  The above-captioned defendants did have the duty, and the ability, to call for emergency medical intervention and/or transport to a hospital.

108.   On February 11, 2016, meal monitoring was to begin for CUMMINGS.  At this point, it was known that CUMMINGS was not receiving sufficient food or hydration

for approximately 10 days.  Despite the commencement of meal monitoring, CUMMINGS did not receive adequate food or hydration.

109.   Also on February 11, 2016, CUMMINGS was placed on "constant observation" "Delta female 1:1."  Between February 11, 2016 and February 17, 2016, above-captioned Deputies assigned to CUMMINGS' unit observed and notated CUMMINGS' condition every 15 minutes.  Deputies on duty recorded that they reviewed the previous shifts' logs with respect to CUMMINGS.  Furthermore, the Sargent on duty reviewed the Deputy's logs and made supervisory tours at least once per shift.

110.   Nearly every notation made by Sheriff Deputies between February 11, 2016 and February 17, 2016 noted CUMMINGS lying on the floor or the bunk.  For nearly six straight days, CUMMINGS is observed not to have consumed adequate food, not to have consumed adequate hydration, and is observed to be naked, urinating, and defecating in her cell. Despite this, no attempt is made by the above-captioned defendants to assist CUMMINGS, have her transported to a hospital, or otherwise tend to her serious medical needs.

111.   From February 11, 2016 to February 17, 2016, the above-captioned Sheriff Deputies, Sergeants, and Lieutenants assigned to observe CUMMINGS literally watched her die and documented the same.

112.   It was the duty and obligation for the above-captioned defendants that observed CUMMINGS from the institution of meal monitoring to accurately record the consumption of food and beverage.

113.   Based upon the meal monitoring logs authored by several of the above-captioned defendants, CUMMINGS was suffering from malnutrition and dehydration.

114.   Despite CUMMINGS not eating or drinking, the above-captioned defendants failed to take any action in response to this serious medical need.

115.   On February 12, 2016 another Forensic Mental Health worker, V. Tom Chapin, N.P. noted that CUMMINGS appeared acutely psychotic and was refusing to eat.

116.   On February 13, 2017, CUMMINGS was observed by SHERIFF DEPUTY BOGGS to be urinating on the floor, placing her clothes in the toilet, and attempting to put them back on.  CUMMINGS also stated to Hollani Goltz that she has not been eating and stated "I'm dying."  Despite this, CUMMINGS was not rendered additional medical care, nor transported to a hospital. Despite the declaration of "I'm dying", CUMMINGS remained in ECHC, with the Defendants continuing to show deliberate indifference to her medical needs.

117.   On February 14, 2016, CUMMINGS was observed as being decompensated.  CUMMINGS medical records reflect she was "not eating" and only "drinking sporadically."

118.   On February 16, 2016 V. Tom Chapin, N.P.  observed CUMMINGS defecating on the floor of her cell, rubbing cereal on her body, and throwing food on the floor.  It was noted that she "drank a little milk today" but refused food.  CUMMINGS stated "I don't trust" when food was encouraged.  V. Tom Chapin, N.P. noted CUMMINGS "needs inpatient" but CUMMINGS was never transported to a hospital.

119.   On February 17, 2016, CUMMINGS "became unconscious" per ECHC notes and had no observable heart rate or respirations.   CUMMINGS was then transported to Buffalo General Hospital where she remained until her death on February 21, 2016.

120.    At Buffalo General Hospital, INDIA T. CUMMINGS was found to be critically ill, having experienced, among other things, cardiac arrest, severe dehydration, malnutrition, and organ failure.

<u>FIRST CAUSE OF ACTION</u>

<u>AGAINST ALL DEFENDANTS FOR VIOLATING CUMMINGS' RIGHT TO A MINIMUM STANDARD OF MEDICAL CARE AS GUARANTEED TO HER BY THE FOURTEENTH AMENDMENT</u>

(42 U.S.C. §1983)

121.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "120" of this Complaint with the same force and effect as if fully set forth herein.

122.    At all times hereinafter mentioned, ALL DEFENDANTS were state actors acting under color of law of a statute, ordinance, regulation, custom, or usage of the laws of New York State with respect to the incarceration of, medical care and treatment of CUMMINGS while an inmate in the ECHC.

123.    As more fully explained in paragraphs 77 though 120 herein, as a result of the alleged incident hereinbefore described, the plaintiff's decedent, CUMMINGS, sustained severe bodily injuries which ultimately led to her death on the 21st day of February, 2016, and plaintiff's decedent, prior to her death, sustained great pain, suffering, and physical anguish.

124.    Defendants, individually and/or jointly and severally deprived adequate medical treatment to the decedent; had knowledge and knew of decedent's condition and consciously disregarded the same; inflicted severe bodily harm and physical injuries without due process, deprived adequate and proper nutrition, nourishment and hydration to the decedent; failed and omitted to provide reasonable and adequate protection for the lives, health, and safety of decedent at the Erie County Holding Center and allowed and permitted the Erie County Holding Center to be and remain in an unsafe, hazardous and dangerous condition as to inflict cruel and inhuman punishment upon plaintiff's decedent, and unconstitutionally deprive plaintiff's decedent of due process under the law.

125.    ALL DEFENDANTS had sufficient time to properly observe CUMMINGS, who presented at all times as an individual in desperate need of medical attention, as specified in the above manner.  Since CUMMINGS was in custody, ALL DEFENDANTS had a duty to ensure that CUMMINGS basic needs, including a minimum standard of medical care, were met.   ALL DEFENDANTS showed a deliberate indifference to CUMMINGS' dire physical and mental state.  Such indifference to CUMMINGS' serious medical needs was a proximate cause to her death.

126.    ALL DEFENDANTS had sufficient interactions with CUMMINGS to make the determination this was an individual in severe need of medical assistance. The specificity of the individually-named defendants' interactions with CUMMINGS is set forth more clearly in the Erie County Holding Center Housing Area Log sheets, attached hereto as Exhibit A of this pleading. Due to the nature of the document, and the extent of information provided to plaintiff to date, first names and genders of all above-named defendants have not been fully determined.

127.    Upon information and belief, the aforementioned actions of the defendants constituted deprivation of the rights and privileges of the decedent, CUMMINGS, secured and protected to her by the Fourteenth Amendment of the Constitution and Laws of the United States.  As a result of the aforesaid actions, the decedent, INDIA T. CUMMINGS, was unlawfully subject to cruel and inhuman treatment, was deprived of due process and otherwise tortuously and maliciously harmed by the actions of the defendants, in violation of her Fourteenth Amendment rights as guaranteed in the United States Constitution and as set forth in Title 42 of the United States Code § 1983, et. sec.

128.    Upon information and belief, the incident hereinbefore described and the resultant injuries and damages were caused as a result of the negligent, careless, reckless and/or unlawful conduct on the part of  ALL DEFENDANTS, by inflicting serious physical injury upon plaintiff's decedent, in failing to appropriately supervise and observe plaintiff's decedent while she was incarcerated; in failing and omitting to make and undertake proper safeguards for care and protection of the decedent; in failing and omitting to ensure decedent was provided and supplied with necessary and proper medical care; in failing and omitting to ensure decedent was provided with adequate sustenance and hydration, in failing and omitting to have comprehensive policies, procedures and/or guidelines established and in place to prevent deaths of inmates and in failing to properly train and monitor their agents, servants and/or employees with respect to the proper handling, supervision and monitoring of inmates.

129.    Said violations were done with intent to cause great bodily harm and death and was tantamount to torture. Each defendant acted objectively unreasonably, with a lack of professional judgment, and with deliberate indifference to CUMMINGS' serious

medical and mental health needs. Each defendant was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS unnecessary wrongful death.

130.    The individual defendants are liable under 42 U.S.C. § 1983 for violating CUMMINGS Fourteenth Amendment rights by depriving her of the minimal civilized measure of life's necessities, including ensuring she consumed drinking water, edible food, had sufficient bedding, a mattress, time out of her cell, and a sanitary living environment. Each of these defendants was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS' unnecessary suffering and death. They acted objectively unreasonably from the standpoint of a reasonable police officer, and with deliberate indifference to those risks.

131.    The actions and inactions of all individual defendants described in this complaint were committed with intent, malice, and/or with reckless disregard for CUMMINGS' federal constitutional rights, justifying an award of punitive damages of every defendant.

132.    As a result of the alleged incident hereinbefore described, the plaintiff's decedent, INDIA T. CUMMINGS, sustained severe bodily injuries which ultimately led to her death on the 21st day of February, 2016, and plaintiff's decedent, prior to her death, sustained great pain, suffering, and physical anguish.

SECOND CAUSE OF ACTION

AGAINST DEFENDANTS JOHN L. DUNN and TYSEN A. LINCOLN UNDER

<u>42 U.S.C. §1983; FOR MALICIOUS PROSECUTION, IN VIOLATION OF THE</u>

<u>FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION</u>

133.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "132" of this Complaint with the same force and effect as if fully set forth herein.

134.     To prevail on a § 1983 claim for malicious prosecution a Plaintiff must prove: (1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in is favor; (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for the Defendant. <u>Murphy v. Lynn</u>, 118 F. 3d 938, 947 (2d Cir. 1997).

135.    Defendants Dunn and Lincoln filed a criminal complaint against CUMMINGS, as specified above.

136.    Ultimately, all charges were dismissed against CUMMINGS.

137.    Given CUMMINGS' thoroughly incapacitated state, there was a lack of probable cause to impute criminal liability onto CUMMINGS.

138.    As such, said Defendants were criminalizing CUMMINGS' mental illness by lodging criminal charges against CUMMINGS as opposed to providing her with the medical care she needed.

139.    A lack of probable cause generally creates an inference of malice.

140.    As the lack of probable cause has already been established, there is no need to independently plead malice at this time.

141.     These charges were simply a retaliatory action by Defendants DUNN and LINCOLN against CUMMINGS for her non-compliant behavior while mentally unstable. Therefore, the prosecution of Cummings was inherently malicious.


THIRD CAUSE OF ACTION

AGAINST DEFENDANT LANCE THURSTON UNDER

42 U.S.C. §1983; FOR MALICIOUS PROSECUTION, IN VIOLATION OF THE

FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION


142.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "141" of this Complaint with the same force and effect as if fully set forth herein.

143.      Defendant THURSTON filed a criminal complaint against Cummings, as specified in the manner above.

144.     Ultimately, all charges were dismissed against CUMMINGS.

145.     Given CUMMINGS' thoroughly incapacitated state, there was a lack of probable cause to impute criminal liability onto Cummings.

146.     As such, said Defendants were criminalizing CUMMINGS' mental illness by lodging criminal charges against CUMMINGS as opposed to providing her with the medical care she needed.

147.     A lack of probable cause generally creates an inference of malice.

148.     As the lack of probable cause has already been established, there is no need to independently plead malice at this time.

149.     Further, malice can be shown on the part of Defendant THIURSTON from the results of his actions. Defendant THURSTON knew that these new baseless charges would result in CUMMINGS being transferred to a disciplinary holding unit "Alpha Seg" instead of being provided medical and mental health treatment. It was in this unit which CUMMINGS health further deteriorated, ultimately leading to her death.

FOURTH CAUSE OF ACTION

AGAINST ALL DEFENDANTS FOR THE INHUMANE CONDTITIONS DURING THE COURSE OF CUMMINGS' CONFINEMENT IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

(42 U.S.C. §1983)

150.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "149" of this Complaint with the same force and effect as if fully set forth herein.

151.     "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v Wolfish, 441 US 520, 535 [1979].

152.     The Defendants subjected CUMMINGS to conditions which amounted to punishment.

153.     The conditions CUMMINGS was subjected to fell well below the minimal standards of life's necessities.

154.     CUMMINGS was allowed to wallow in her own waste over a significant period of time as the Defendants looked on and failed to intervene.

155.     The Defendants knew CUMMINGS was not eating sufficient food or drinking adequate amounts of water but failed to take any steps to remedy the situation.

156.     The Defendants observed, and documented, CUMMINGS naked, groaning, screaming, and crying while lying in her cell for several days straight.

157.     The Defendants allowed CUMMINGS to soak her clothes in the toilet and then attempt to wear the same.

158.     The failure to intervene and ensure CUMMINGS was contained in humane conditions amounts to the Defendants seeking to punish her. CUMMINGS, through no fault of her own due to her incapacitated state, created the deplorable cell conditions by scattering food in the cell, destroying bedding, soaking clothing, and defecating and urinating in the cell.

159.     As such, the Defendants left CUMMINGS in her own waste and subjected her to inhumane conditions as specified above.

160.     Such actions, and inactions, by Defendants amount to punishment under the Fifth and Fourteens Amendments of the United States Constitution and as set forth in 42 U.S.C.§1983.

161.     Said violations were done with intent to cause great bodily harm and death and was tantamount to torture. Each defendant acted objectively unreasonably, with a lack of professional judgment, and with deliberate indifference to CUMMINGS serious

medical and mental health needs. Each defendant was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS unnecessary wrongful death.

162.    The individual defendants are liable under 42 U.S.C. § 1983 for violating CUMMINGS Fifth and Fourteenth Amendment rights by depriving her of the minimal civilized measure of life's necessities, including drinking water, edible food, a mattress, bedding, a working toilet, time out of her cell, and a sanitary living environment. Each of these defendants was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS' unnecessary suffering and death. They acted objectively unreasonably and with deliberate indifference to those risks.

163.    The actions and inactions of all individual defendants described in this complaint were committed with intent, malice, and/or with reckless disregard for CUMMINGS' federal constitutional rights, justifying an award of punitive damages of every defendant

164.    As a result of the alleged incident hereinbefore described, the plaintiff's decedent, INDIA T. CUMMINGS, sustained severe bodily injuries which ultimately led to her death on the 21st day of February, 2016, and plaintiff's decedent, prior to her death, sustained great pain and suffering and physical anguish.


<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief, as follows:

1.  For general damages in a sum according to proof;

2.  For special damages in a sum according to proof;

3.  For punitive damages against the individual named Defendants in a sum

according to proof;

4.  For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.  For any and all statutory damages allowed by law;

6.  For costs of suit herein incurred; and

7.  For such other and further relief as this Court deems just and proper.

DATED: Buffalo, New York
    February 1, 2019

      VANDETTE PENBERTHY LLP

      By: _____s/ James M. VanDette_____
        JAMES M. VANDETTE, ESQ.
      Co-Counsel for Plaintiff
      Office and P.O. Address
      227 Niagara St.
      Buffalo, New York 14203
      (716) 803-8400

      LAW OFFICE OF MATTHEW ALBERT, ESQ.

      By: _____s/ Matthew Albert_____
        MATTHEW ALBERT, ESQ.
      Co-Counsel for Plaintiff
      Office and P.O. Address
      254 Richmond Ave.
      Buffalo, New York 14222
      (716) 445-4119