UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAWANA R. WYATT as Administrator of the
 Estate of India T. Cummings,

       Plaintiff,

    v.

ERIE COUNTY SHERIFF SERGEANT KOZLOWSKI,
ERIE COUNTY SHERIFF SERGEANT DIAMOND,
ERIE COUNTY SHERIFF SERGEANT WYAND-GARRET,
ERIE COUNTY SHERIFF SERGEANT LIGHTCAP,
ERIE COUNTY SHERIFF SERGEANT SCANLON,
ERIE COUNTY SHERIFF SERGEANT CARNEY,
ERIE COUNTY SHERIFF SERGEANT FORERO,
ERIE COUNTY SHERIFF SERGEANT WEIG,
ERIE COUNTY SHERIFF SERGEANT EVANS,
ERIE COUNTY SHERIFF SERGEANT KNEZEVIC,
ERIE COUNTY SHERIFF SERGEANT ROBINSON,
ERIE COUNTY SHERIFF SERGEANT BALYS,
ERIE COUNTY SHERIFF SERGEANT WEBSTER,
ERIE COUNTY SHERIFF SERGEANT PERKINS,
ERIE COUNTY SHERIFF SERGEANT GLINSKI,
ERIE COUNTY SHERIFF SERGEANT CROSS,
ERIE COUNTY SHERIFF SERGEANT WADE,
ERIE COUNTY SHERIFF LIEUTENANT FRANKLIN,
ERIE COUNTY SHERIFF LIEUTENANT ISCH,
ERIE COUNTY SHERIFF LIEUTENANT LODESTRO,
ERIE COUNTY SHERIFF LIEUTENANT BRYMAN,
ERIE COUNTY SHERIFF LIEUTENANT GLINSKI,
ERIE COUNTY SHERIFF CAPTAIN ALAN WHALEN,
ERIE COUNTY SHERIFF DEPUTY WOOD,
ERIE COUNTY SHERIFF DEPUTY GOULD,
ERIE COUNTY SHERIFF DEPUTY GEARRY,
ERIE COUNTY SHERIFF DEPUTY FALETTA,
ERIE COUNTY SHERIFF DEPUTY RIVERA,
ERIE COUNTY SHERIFF DEPUTY SANCHEZ,
ERIE COUNTY SHERIFF DEPUTY HUSSAR,
ERIE COUNTY SHERIFF DEPUTY SALTZ,
ERIE COUNTY SHERIFF DEPUTY FILIPSKI,
ERIE COUNTY SHERIFF DEPUTY WEGRYN,
ERIE COUNTY SHERIFF DEPUTY SHUBERT,
ERIE COUNTY SHERIFF DEPUTY HAYES,
ERIE COUNTY SHERIFF DEPUTY M. MILLER,

DECISION
and
ORDER

19-CV-159W(F)

ERIE COUNTY SHERIFF DEPUTY LUGO,
ERIE COUNTY SHERIFF DEPUTY CASTOIRE,
ERIE COUNTY SHERIFF DEPUTY GILETTE,
ERIE COUNTY SHERIFF DEPUTY ESFORD,
ERIE COUNTY SHERIFF DEPUTY WINDRUM,
ERIE COUNTY SHERIFF DEPUTY ZARCONE,
ERIE COUNTY SHERIFF DEPUTY CASCIO,
ERIE COUNTY SHERIFF DEPUTY CHERYL MORABITO,
ERIE COUNTY SHERIFF DEPUTY LIBERTI,
ERIE COUNTY SHERIFF DEPUTY BARNES,
ERIE COUNTY SHERIFF DEPUTY SENGBUSCH,
ERIE COUNTY SHERIFF DEPUTY SZRAMA,
ERIE COUNTY SHERIFF DEPUTY WHYTE,
ERIE COUNTY SHERIFF DEPUTY SCIBIA,
ERIE COUNTY SHERIFF DEPUTY HOLDER,
ERIE COUNTY SHERIFF DEPUTY STISSER,
ERIE COUNTY SHERIFF DEPUTY SZENTESY,
ERIE COUNTY SHERIFF DEPUTY PATTI,
ERIE COUNTY SHERIFF DEPUTY SOWINSKI,
ERIE COUNTY SHERIFF DEPUTY MAJCHROWICZ,
ERIE COUNTY SHERIFF DEPUTY VAU,
ERIE COUNTY SHERIFF DEPUTY McGAVIS,
ERIE COUNTY SHERIFF DEPUTY EAGLE,
ERIE COUNTY SHERIFF DEPUTY D'ALOISIO,
ERIE COUNTY SHERIFF DEPUTY SALVERSON,
ERIE COUNTY SHERIFF DEPUTY MOSS,
ERIE COUNTY SHERIFF DEPUTY RANICK,
ERIE COUNTY SHERIFF DEPUTY KEE,
ERIE COUNTY SHERIFF DEPUTY BOGGS,
ERIE COUNTY SHERIFF DEPUTY MACIEJEWSKI,
ERIE COUNTY SHERIFF DEPUTY MILES,
ERIE COUNTY SHERIFF DEPUTY OSIKA,
ERIE COUNTY SHERIFF DEPUTY KOZAKIEWICZ,
ERIE COUNTY SHERIFF DEPUTY LANCE THURSTON,
ERIE COUNTY SHERIFF DEPUTY JOHN L. DUNN,
ERIE COUNTY SHERIFF DEPUTY TYSEN A. LINCOLN,

Defendants.
_____

APPEARANCES:       VanDETTE PENBERTHY LLP
                   Attorneys for Plaintiff
                   JAMES M. VanDETTE and
                   VINCENT THOMAS PARLATO, of Counsel
                   227 Niagara Street
                   Buffalo, New York  14201

MATTHEW A. ALBERT, ESQ.
Attorney for Plaintiff
2166 Church Road
Darien Center, New York  14040

MICHAEL A. SIRAGUSA
ERIE COUNTY ATTORNEY
Attorney for all Defendants except Franklin, Isch, Feroro,
 Cross, Hayes, Wegryn, Whyte, Vaughn, and Kee
JEREMY C. TOTH
Assistant County Attorney, of Counsel
ERIE COUNTY DEPARTMENT OF LAW
95 Franklin Street
16th Floor
Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Elizabeth A. Wolford on

May 24, 2019, for nondispositive pretrial matters.  The action is presently before the

court on Plaintiff's motion for substituted service filed April 24, 2019 (Dkt. 12), to file an

amended complaint filed May 29, 2019 (Dkt. 24), and to consolidate this case with

another action filed October 14, 2020 (Dkt. 57).

## BACKGROUND

Plaintiff Tawana R. Wyatt ("Plaintiff" or "Wyatt"), the court-appointed

administrator of the estate of India T. Cummings ("Cummings" or "Decedent"), brings

this action pursuant to 42 U.S.C. § 1983 seeking damages for personal injuries suffered

by Decedent during a period of post-arrest detention at the Erie County Holding Center

("ECHC"), and Decedent's wrongful death on February 21, 2016.  Plaintiff alleges the

personal injuries and Decedent's wrongful death resulted from the unconstitutional

actions of 72 Defendants, all employees of Erie County Sheriff's Department ("ECSD"),

assigned to the ECHC, including violations of the Fourth, Fifth, and Fourteenth Amendments.

Between April 4 and 14, 2019, Plaintiff attempted to effect service on 71 of the 72 Defendants according to New York Civil Practice Law and Rules 308[2] ("Rule 308[2]"), *i.e.*, by personal service upon Defendants' actual place of business by personally delivering 71 copies of the summons and Complaint to one Karen Cartonia ("Cartonia")[1] at ECHC, and then mailed additional copies of the summons and Complaint to each named Defendant at ECHC.  Because Plaintiff was not certain whether all 71 Defendants received notice of the action, on April 24, 2019, Plaintiff moved for an order permitting substituted service pursuant to Rule 308[5] for service "in such a manner as the court . . . directs. . . . ," specifically asserting service on the Erie County Attorney is adequate, and seeking an extension of time to serve any Defendants for whom it is determined the earlier attempt at service was insufficient (Dkt. 12) ("Plaintiff's Motion for Substituted Service").  The motion is supported by the Attorney Affidavit of James M. VanDette, Esq. (Dkt. 12-1) ("VanDette Affidavit – Substituted Service"), exhibits 1 through 7 (Dkts. 12-2 through 12-8) ("Substituted Service Exh(s). __"), and a Memorandum of Law (Dkt. 12-9) ("Plaintiff's Memorandum – Substituted Service").  On May 17, 2019, Defendants filed the Declaration of Michelle Parker in Opposition to Plaintiff's Motion for Extension of Time (Dkt. 19) ("Parker Declaration – Substituted Service").  On May 24, 2019, Plaintiff filed Plaintiff's Reply and Supplemental Declaration in Support of Plaintiff's Motion for an Extension of Time to Serve and

---

[1] Cartonia is not named as a Defendant to this action.

Substituted Service (Dkt. 23) ("Plaintiff's Reply – Substituted Service"), attaching exhibit A (Dkt. 23-1).

On May 29, 2019, Plaintiff moved to file an amended complaint (Dkt. 24) ("Plaintiff's Motion to Amend"), supported by the attached Affidavit of James M. VanDette, Esq. (Dkt. 24-1) ("VanDette Affidavit – Amend"), a copy of the proposed amended complaint (Dkt. 24-2) ("PAC"), and the Memorandum of Law in Support of Plaintiff's Motion (Dkt. 24-3) ("Plaintiff's Memorandum – Amend").  Plaintiff's Motion to Amend was filed in response to Defendants' motion filed April 25, 2019 seeking  to dismiss the Complaint for failure to state a claim (Dkt. 14) ("Motion to Dismiss").[2]  On June 17, 2019, Defendants filed the Memorandum of Law in Opposition to Plaintiff's Motion to Amend Complaint (Dkt. 33) ("Defendants' Response – Amend").  On June 21, 2019, Plaintiff filed Plaintiff's Reply Memorandum of Law in Support of the Motion to Amend the Complaint (Dkt. 34) ("Plaintiff's Reply – Amend").

On October 14, 2020, Plaintiff moved to consolidate the instant action with another action pending in this court, *Wyatt v. City of Lackawanna*, 17-CV-00446WKS ("*Lackawanna* action"),  (Dkt. 57) ("Plaintiff's Motion to Consolidate"), attaching the Attorney Declaration of Jeffrey M. VanDette, Esq. (Dkt. 57-1) ("VanDette Declaration"), three exhibits (Dkts. 57-2 through 57-4) ("Plaintiff's Exh(s). __ - Consolidate"), and Plaintiff's Memorandum of Law in Support of Federal Rule of Civil Procedure 42(a) Consolidation (Dkt. 57-5) ("Plaintiff's Memorandum – Consolidate").  On October 30, 2020, Defendants filed the Declaration of Michelle Parker in Opposition to Plaintiff's Motion to Consolidate (Dkt. 59) ("Parker Declaration – Consolidate"), the Memorandum

---

[2] Because only nondispositive motions were referred by Judge Wolford, Defendants' motion to dismiss is not before the undersigned; it is pending before Judge Wolford.

of Law in Opposition to Plaintiff's Motion to Consolidate (Dkt. 59-1) ("Defendants' Response – Consolidate"), and the Affidavit of Anthony B. Targia in Opposition to Plaintiff's Motion to Consolidate (Dkt. 59-2) ("Targia Affidavit").  On November 6, 2020, Plaintiff filed the Reply Declaration of Vincent T. Parlato, Esq. (Dkt. 60) ("Parlato Reply Declaration – Consolidate"), and Plaintiff's Reply Memorandum in Further Support of Plaintiff's Motion to Consolidate (Dkt. 60-1) ("Plaintiff's Reply – Consolidate").

Oral argument was deemed unnecessary.

Based on the following, Plaintiff Motion for Substituted Service is DISMISSED as moot in part, and DENIED in part; Plaintiff's Motion to Amend is GRANTED; Plaintiff's Motion to Consolidate is DENIED.

## FACTS[3]

On February 1, 2016, officers of the Lackawanna Police Department ("the police") arrested India T. Cummings ("Cummings" or "Decedent"), in the City of Lackawanna, New York ("Lackawanna").[4]  While in police custody, Cummings's left humerus (arm bone between shoulder and elbow) suffered a spiral fracture.  Despite fracturing her arm which allegedly "was obviously displaced," Complaint ¶ 85, and allegedly displaying "obvious" "bizarre behavior" requiring "emergent [*sic*] psychiatric care," *id.* ¶ 87, Cummings was transported to Erie County Holding Center ("ECHC"),

---

[3] Taken from the pleadings and motion papers filed in this action.
[4] Cummings was arrested when the police were dispatched to assist Lackawanna Fire Department officers who were responding to a mental health Emergency Medical Services call regarding Cummings who reportedly was acting disorderly at a residence.  When the police arrived at the residence, Cummings ran out the front door, approached a vehicle, opened the door, punched the driver in the nose, forced the driver from the vehicle which Cummings then entered and fled the scene in the vehicle.  The police pursued Cummings who refused to stop and struck several vehicles including, *inter alia*, a school bus.  When the police finally caught Cummings, she resisted arrest and the police had to exert force both to extract Cummings from the vehicle and to take Cummings into custody.  *See* Dkt. 24-2 at 2.

where she was administratively processed and housed in "Alpha Long," a non-medical housing unit. *Id.* ¶ 88.  At 2:20 A.M. on February 2, 2016, Cummings was transported to Erie County Medical Center ("ECMC") by Defendants Erie County Sheriff Deputies John L. Dunn ("Dunn"), and Tysen A. Lincoln ("Lincoln").  When Cummings resisted the transport, which Plaintiff attributes to Cummings's allegedly deteriorated mental state, Dunn and Lincoln charged Cummings with various crimes and violations including disorderly conduct, harassment in the second degree, and obstructing governmental administration in the second degree.

On February 3, 2016, Plaintiff had an urgent referral for mental health treatment based on an acute change in behavior and the physical altercation with ECSD Deputies, yet Plaintiff was transferred within ECHC to "Alpha Seg," a non-medical disciplinary housing unit, and Defendant ECSD Deputy Lance Thurston ("Thurston") charged Cummings with the crimes of assault in the second degree, assault on a police officer, obstructing governmental administration in the second degree, and assault in the third degree.[5]  Complaint ¶¶ 92, 95.  Between February 3 and 5, 2016, Cummings continued to exhibit bizarre behavior and was unable to engage with "providers."  *Id.* ¶ 97.  On February 5, 2016, after appearing delusional, minimally engaged, disorganized, and "responding to internal stimuli," *id.* ¶ 98, Cummings was transferred to "Delta Control" which is an ECHC housing unit for inmates with known medical conditions, yet Cummings was not provided with any medical treatment until February 8, 2016, when Cummings was to be transported to ECMC for an evaluation of her left arm fracture.

---

[5] It is not clear from the record against whom Cummings was alleged to have perpetrated these crimes.

Cummings, however, refused the transport and was not taken to ECMC for the evaluation.

On February 11, 2016, Cummings underwent a consultation with Erie County Forensic Mental Health ("FMH") Physician Elizabeth Coggins, M.D. ("Dr. Coggins"), who allegedly recognized Cummings had a serious medical need and opined Cummings needed hospital care, yet Cummings was not transported to a hospital.  Complaint ¶¶ 102-04.  Also on February 11, 2016, one Amy Jordan, R.N. ("R.N. Jordan"),[6] attempted to assess Cummings to differentiate between Cummings's psychotic disorder and general medical concerns, observing Cummings was "disheveled, with poor hygiene, her left arm forearm unsupported and discolored."  *Id.* ¶ 105.  Further on February 11, 2016, one Hollani Goltz ("Goltz"),[7] an FMH counselor reported Cummings "appeared to be decompensated.  She is disengaged and her behavior is bizarre," yet Cummings was not transported to a hospital despite Goltz's inability to assess Cummings's mental health.  *Id.* ¶ 106.  That same day, meal monitoring commenced because it allegedly was known Cummings had not received sufficient food or hydration for the 10 days since Cummings was admitted to ECHC on February 1, 2016, and Cummings was placed on "constant watch" requiring the assigned ECSD employee observe Cummings every 15 minutes and note her condition and food and liquids consumption in a log.

On February 12, 2016, FMH worker V. Tom Chapin, N.P. ("N.P. Chapin"),[8] observed Cummings was acutely psychotic and refusing to eat.  On February 13, 2017, Defendant ECSD Deputy Boggs ("Boggs"), observed Cummings urinate on the floor of

---

[6] R.N. Jordan is not named as a Defendant to this action.
[7] Goltz is not named as a Defendant to this action.
[8] N.P. Chapin is not named as a Defendant to this action.

her cell, place her clothes in the toilet and then attempt to put the clothes back on, and Cummings stated to Goltz "I'm dying," yet no additional medical care was provided nor was Cummings transported to the hospital.  Complaint ¶ 116.  On February 14, 2016, Cummings was again observed as "being decompensated" and her medical records indicate Cummings was not eating and only sporadically drinking.  *Id.* ¶ 117.  On February 16, 2016, N.P. Chapin observed Cummings defecating on the floor of her cell, rubbing cereal on her body, and throwing food on the floor.  *Id.* ¶ 118.  N.P. Chapin noted Plaintiff drank only a little milk and refused food, asserting she did not trust the food.  *Id.*  Although N.P. Chapin reported Cummings needed inpatient care, Cummings was not transported to a hospital.  *Id.*  Between February 11 and 17, 2016, almost all logged notations made by the ECSD employees charged with observing Cummings indicated Cummings was lying on the floor or bunk in her cell, did not consume adequate food or hydration, was naked and urinating and defecating in her cell, yet there was no attempt to transport Cummings to a hospital or otherwise tend to her medical needs.  Complaint ¶ 110.

On February 17, 2016, after becoming unconscious with no observable heart rate or respirations, Cummings was transported to Buffalo General Hospital ("BGH") where she remained until her death on February 21, 2016.  Complaint ¶ 119.  At BGH, Cummings was reported as critically ill, having experienced cardiac arrest, severe hydration, malnutrition, and organ failure.  *Id.* ¶ 120.

Following Cummings's death, the New York State Commission of Correction ("NYSCC") conducted an investigation into the death, issuing its Final Report ("Final

Report")[9] on June 26, 2018.  Following the investigation, the NYSCC concluded that because "Cummings's deteriorated health began after receiving traumatic injury to her arrn during her arrest and then being subjected to continued neglect during her incarceration, the Medical Review Board opines that her death should be ruled as a homicide due to medical neglect."   Final Report at 2.  Although an autopsy performed by the Erie County Medical Examiner concluded the cause or manner of Cummings's death was "undetermined," *id*. at 28, the NYSCC determined the immediate cause of Cummings's death was "a massive pulmonary embolism that occluded blood flow to both lungs," which was determined to have "detached from lower leg thrombosed veins," and "resulting from acute renal failure, rhabdomyolysis,[10] dehydration and fracture of the humerus, and that the manner of her death was homicide by medical neglect."  *Id*. at 29.

## DISCUSSION

### 1.   Substituted Service

Plaintiff moves for a court order permitting substituted service pursuant to N.Y. Civ. Prac. Laws and Rule 308[5], specifically, for a court order directing that service of papers on the Erie County Attorney is sufficient for all Defendants, Plaintiff's Memorandum – Substituted Service at 11-13, and requesting leave to effect substituted service on those Defendants not previously served.  *Id*. at 13-18.  In opposition,

---

[9] A copy of the redacted Final Report is filed as Dkt. 24-2.

[10] "Rhabdomyolysis is a serious syndrome due to a direct or indirect muscle injury. It results from the death of muscle fibers and release of their contents into the bloodstream. This can lead to serious complications such as renal (kidney) failure. This means the kidneys cannot remove waste and concentrated urine." *See* Rhabdomyolysis, *available at* https://www.webmd.com/a-to-z-guides/rhabdomyolysis-symptoms-causes-treatments#1, *last visited* Jan. 14, 2021.

Defendants do not oppose permitting substituted service but, instead, maintain service has not been effected as to nine Defendants, Parker Declaration – Substituted Service ¶¶ 4-12, and assert Plaintiff has not demonstrated the requisite good cause as required by Fed.R.Civ.P. 4(m) to extend the time for service on those Defendants who have yet to be served especially if Defendants' pending motion to dismiss is granted.  Parker Declaration – Substituted Service ¶¶ 2-3, 13-15.  In further support of the motion, Plaintiff advises she plans to imminently move for leave to file an amended complaint the service of which will be greatly facilitated by substituted service, Plaintiff's Reply – Substituted Service ¶¶ 3-7, and as to those Defendants Plaintiff was unable to serve, an extension of time for service is required.  *Id.* ¶¶ 9-10.

Preliminarily, the court addresses Plaintiff's argument, Plaintiff's Memorandum – Substituted Service at 3-6, that the court dispense with screening the Complaint pursuant to 28 U.S.C. § 1915A ("§ 1915A"), because Plaintiff's Decedent was not a "prisoner" but long-deceased when the instant action was commenced.  Defendants offer no argument in opposition, nor does Plaintiff further address the argument in reply. Nevertheless, the court notes nothing in the docket suggests the Complaint ever was screened pursuant to § 1915A.  Accordingly, such argument is DISMISSED as moot.

Insofar as Plaintiff argues substituted service should be permitted on the Erie County Attorney, Federal Rules of Civil Procedure Rule 4(e)(1) ("Rule 4__") provides "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).  In New York, N.Y. C.P.L.R. 308 ("Rule 308") provides for

service of the summons and complaint by personal delivery on the person to be served,

Rule 308[1], delivery of the summons and complaint to a person of suitable age and

discretion at the abode or regular place of business of the person to be served, followed

by mailing by first class mail the summons and complaint to such abode or place of

business, Rule 308[2], or, where service cannot with due diligence be made under

paragraphs 1 and 2, by affixing the summons and complaint to the abode or regular

place of business of the person to be served, followed by mailing by first class mail the

summons and complaint to such abode or place of business, Rule 308[4].  *Doe v.*

*Hyassat*, __ F.R.D. __; 2020 WL 5440575, at * 2 (S.D.N.Y. Sept. 9, 2020) (citing

*Tishman v. The Associated Press*, 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006)).

Where service pursuant to Rule 308[1], [2], or [4] "is 'impracticable,' however, service

may be effected 'in such a manner as the court, upon motion without notice, directs.'"

*Id.* (quoting *Tishman*, 2006 WL 288369, at *1 (citing N.Y. C.P.L.R. Rule 308[5], and

*State Street Bank and Trust Co. v. Coakley*, 790 N.Y.S.2d 412, 413 (2d Dep. 2005))).

In the instant case, Plaintiff attempted to effect service on 71 of the 72

Defendants, *i.e.*, all named Defendants except for Deputy Lugo ("Lugo") whom Plaintiff

maintains was separately served, Plaintiff's Memorandum – Substituted Service at 3 n.

1, according to Rule 308[2] by having VanDette Penberthy LLP legal assistant Shai

Adams ("Adams") personally deliver on April 4, 2019, 71 copies of the summons and

Complaint to Karen Cartonia at 40 Delaware Avenue, Buffalo, New York, the address

for ECHC, *i.e.*, the actual place of business for the 71 Defendants on whom Plaintiff was

then attempting to effect service.  Plaintiff's Memorandum – Substituted Service at 7-8.

When accepting the copies of the summons and Complaint, Cartonia identified herself

to Adams both as a legal stenographer employed by the ECSD and authorized to accept such service.  *Id.* at 8.  Plaintiff further maintains the Erie County Attorney's office indicated Cartonia was the proper person to accept service on behalf of the numerous defendants.  *Id.*  Plaintiff followed up on April 11, 2019 by mailing via first-class mail 72[11] copies of the summons and Complaint to Defendants at their actual place of business at ECHC, placing inside one package 72 separate envelopes, each containing a summons and Complaint for each individual Defendant, that did not reveal or indicate the communication was from an attorney or concerned a legal action and bearing the legend "personal and confidential."  *Id.*  Uncertain as to whether all 71 Defendants received notice of the action, on April 24, 2019, Plaintiff filed the instant motion for an order permitting all future service of papers be pursuant to Rule 308[5] for substituted service "in such a manner as the court . . . directs. . . . ," specifically asserting service on the Erie County Attorney is sufficient, in the circumstances, and seeking an extension of time to serve any Defendants for whom it is determined the earlier attempt at service was insufficient.

Defendants do not dispute that service on 63 of the 72 Defendants was sufficient under Rule 308[2] ("the served Defendants") and defense counsel has appeared on behalf of the 63 served Defendants.  Accordingly, pursuant to Fed.R.Civ.P. 5(b)(1), all further papers filed in this action must be served on the served Defendants' attorney of record, here, the Erie County Attorney, and Plaintiff's Motion for Substituted Service is DISMISSED as moot as to the served Defendants.  The court thus considers whether to permit substituted service on the nine Defendants on whom service has yet to be

---

[11] Plaintiff does not explain why 72 copies of the summons and Complaint were mailed, when only 71 copies of the summons and Complaint were personally delivered to Cartonia.

effected, whom the Erie County Attorney does not as yet represent, since identified by Defendants as Lieutenants Franklin and Isch, Sergeants Cross and Forero, and Deputies Hayes, Kee, Vaughn,[12] Wegryn, and Whyte (together, "the unserved Defendants"), all of whom retired prior to April 2019.  Parker Declaration – Substituted Service ¶¶ 4, 11-12.

The "precondition of impracticability" under Rule 308[5] "'is not capable of easy definition.'"  *Markoff v. South Nassau Community Hospital*, 458 N.Y.S.2d 672, 673 (2d Dept. 1983) (quoting *Liebeskind v. Liebeskind*, 449 N.Y.S.2d 226, 228 (1st Dep't 1982)).  Rather, "the legislative committee reports disclose that the drafters of this section envisioned a scenario where service under the other sections would be 'futile.'"  *Liebeskind*, 449 N.Y.S.2d at 228 (citing *Dobkin v. Chapman*, 236 N.E.2d 451, 499 (N.Y. 1968)).  Impracticability "'should not be construed to require a showing that service under [subdivisions 1, 2 and 4] could not be made with 'due diligence,'"  *Markoff*, 458 N.Y.S.2d at 673 (bracketed material in original) (quoting *Coyne v. Coyne*, 443 N.Y.S.2d 472, 472 (4th Dep't 1981)), but "will depend upon the facts and circumstances of the particular case; however, a 'plaintiff seeking to effect expedient service must make some showing that the other prescribed methods of service could not be made.'"  *Id*. at 673-74 (quoting *Siemens v. Sedrish*, 440 N.Y.S.2d 687, 687-88 (2d Dep't 1981)).  In the instant case, Plaintiff has not made such a showing.

Plaintiff maintains that service by other means on the unserved Defendants is impracticable because she lacks complete names for the unserved Defendants, rendering internet searches of the individuals impossible.  Plaintiff's Memorandum –

---

[12] Vaughn's name appears to be mistyped in the Complaint as "Vau."

Substituted Service at 11.  Substituted service, however, requires some evidence supporting the need for such service.  *See United States v. McHenry*, 2020 WL 6886558, at * 1 (W.D.N.Y. Nov. 24, 2020) (granting motion for substituted service where plaintiff showed impracticability of other means of service through affidavit of process server who reported attempted service on the defendant's address showed the property was vacant, searches of multiple databases revealed no current public database registration, and calls to listed telephone numbers were fruitless); *Franklin v. Winard*, 592 N.Y.S.2d 726, 727 (1st Dep't 1993) (permitting alternative service pursuant to Rule 308[5] where the plaintiff had address of the defendant's last known residence and used such address to attempt to obtain the defendant's current address through such "ordinary means" as searching motor vehicle registration records which proved ineffectual).  In contrast, in the instant case, Plaintiff has not attempted to avail herself of any methods by which the full names of the unserved Defendants could be obtained, such as serving subpoenas on the Erie County Sheriff pursuant to Fed.R.Civ.P. 45, from which further searches, as described in the above cases, for addresses for the unserved Defendants could be made through "ordinary means."  *Franklin*, 592 N.Y.S.2d at 727.  Accordingly, because Plaintiff has failed to establish the requisite impracticability of obtaining service of process pursuant to Rule 308[1], [2] or [4], Plaintiff's Motion for Substituted Service is DENIED.

Defendants argue that Plaintiff's separate service of process on Defendant Lugo was insufficient because the summons directed to Lugo does not contain a residential address but, rather, the address for the ECSD at 10 Delaware Avenue, Buffalo, New York 14202, although Plaintiff was no longer employed by the ECSD on April 10, 2019

when service was attempted.  Parker Declaration – Substituted Service ¶¶ 5, 6, 9 (citing Dkt. 1-7 at 11, Dkt. 3 at 91, and Dkt. 11).  Further, Plaintiff's Proof of Service on Lugo filed April 23, 2019 references service upon "Alexis Lugo" on April 10, 2019 by leaving the summons and Complaint at Lugo's "residence or usual place of abode with Joanne Bizowe (sister), a person of suitable age and discretion who resides there . . . and mailed a copy to the individual's last known address," but no address is provided for Lugo's "residence or usual place of abode."  *Id.*  Defendants maintain the failure to include a correct home or business address for Lugo does not comply with Fed.R.Civ.P. 4(a)(1)(C) or N.Y. C.P.L.R. 305(a) ("Rule 305(a)") such that this court has not obtained sufficient service over Lugo.  *Id.* ¶ 10.  In opposition, Plaintiff argues she effected service upon Lugo at 132 North Brier Road, Amherst, New York  14228, known to Plaintiff as Lugo's address based on Lugo's January 14, 2019 deposition testimony given in connection with the *Lackawanna* action.  Plaintiff's Reply – Substituted Service ¶ 12, and Exh. A (Dkt. 23-1).  Plaintiff further maintains that any deficiency in service based on the failure to include Lugo's home address on the summons is a mere technical error for which Plaintiff requests leave to file an amended summons.  *Id.* ¶ 13.

Generally, assertions of insufficient process are made pursuant to Fed.R.Civ.P. 12(b)(4), and assertions of insufficient service of process are pursuant to Fed.R.Civ.P. 12(b)(5).[13]  *See Abram v. Town of Cheektowaga Police Department*, 2020 WL 3513677 at *2 (W.D.N.Y. June 29, 2020) (discussing difference between "insufficient process" and "insufficient service of process").  Although Defendants assert the failure to include Defendant Lugo's home address in the summons resulted in deficient service of

---

[13] The court notes Defendants have not moved pursuant to Fed.R.Civ.P. 12(b)(4) or (5).

process, Defendants' challenge is to the contents of the summons, particularly Lugo's

correct address, which is properly construed as asserting insufficient process.  *Id.*

(explaining that challenges of "substantive deficiencies in the summons, complaint or

accompanying documentation" are for insufficient process, not insufficient service of

process).  In contrast, a challenge to the "mode of delivery or the lack of delivery of the

summons and complaint" asserts insufficient service of process.  *Id.*  Nevertheless,

even if Defendants had properly moved for such relief, the motion would be without

merit because "'[w]hile Rule 4(a) requires that a summons be directed to a defendant, it

sets forth no requirement regarding defendant's address.'"  *D.S. by and through C.S. v.*

*Rochester City School District*, 2020 WL 7028523, at * 6 (W.D.N.Y. Nov. 30, 2020)

(*quoting Spiess v. Meyers*, 483 F.Supp.2d 1082, 1093 (D.Kan. 2007)).  Nor does Rule

305(a), setting forth the requirements for a summons under New York law and cited by

Defendants, Parker Declaration – Substituted Service ¶ 9, require a defendant's

address be included on a summons.  Further, even if Plaintiff was required to list an

address for Lugo, "'where the identified defects in a summons are merely technical, 'the

appropriate remedy . . .[is] not to dismiss the claims but to serve an amended

summons. . . .'"  *D.S. by and through C.S.*, 2020 WL 7028523 at * 6 (quoting *Oliver v.*

*N.Y. State Police*, 2019 WL 453363, at *5 (W.D.N.Y. Feb. 5, 2019)) (additional citation

omitted).  In the instant case, because the summons was directed to Defendant Lugo as

required by Rule 4(a)(1)(B) which does not require listing Lugo's home address, service

on Lugo was sufficient.  *Id.* (declining to dismiss pursuant to Fed.R.Civ.P. 12(b)(4)

claims against defendants for insufficient process or to order filing of an amended

summons that included the defendants' home addresses because Rule 4(a)(1)(B) does not require such information).

**2.      Leave to File Amended Complaint**

After Defendants moved to dismiss the Complaint for failure to state a claim (Dkt. 14), Plaintiff moves for leave to file an amended complaint asserting the proposed amended complaint ("PAC") does not add any defendants nor contain any new claims for relief, but only additional factual allegations to eliminate the "group pleading" that is the basis for Defendants' motion to dismiss, and attaches as an exhibit the Final Report in redacted form.  Plaintiff's Memorandum – Amend at 4-5.  In opposition, Defendants argue it is futile to allow Plaintiff to file the PAC because the claims asserted therein would not withstand a motion to dismiss because the PAC "constitutes an impermissible group pleading that fails to sufficiently allege the personal involvement of any of the defendants," Defendants' Response – Amend at 2-3, and fails to show deliberate indifference on the part of any Defendant, *id.* at 3-5, and granting Plaintiff's Motion to Amend will "allow the Plaintiff to circumvent minimal pleading requirements in order to survive a Rule 12(b)(6) motion to dismiss [and] would put undue delay on this court."  *Id.* at 5-6.  In further support of her motion, Plaintiff argues the PAC is not futile but sufficiently alleges the personal involvement of each Defendant, Plaintiff's Reply – Amend at 3-5, states a claim for deliberate indifference as to each Defendant, *id.* at 6-8, and Plaintiff has not exhibited Defendants engaged in any undue delay in filing the motion.  *Id.* at 8-9.

"Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all

defendants without making specific individual factual allegations." *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F.Supp.3d 282, 293 (W.D.N.Y. 2015), *vacated in part on other grounds*, 655 Fed.Appx. 25 (2d Cir. 2016). Such "group pleading" violates Fed.R.Civ.P. 8(a)'s requirement that a pleading "give each defendant fair notice of the claims against it." *Holmes v. Allstate Corp.*, 2012 WL 627238, at * 22 (S.D.N.Y. Jan. 27, 2012). Nevertheless, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Ausco Products, Inc. v. Axle, Inc.*, 2020 WL 7028521, at * 2 (W.D.N.Y. Nov. 30, 2020) (internal quotation marks and citation omitted).

Here, although the PAC does "collectively refer" to multiple Defendants, it does not "lump all the defendants together in each claim and provide no factual basis to distinguish their conduct . . . ." *Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001) (affirming district court's dismissal of complaint for failure to state a claim where original complaint failed to differentiate among "the defendants" against whom all claims were alleged, and amended complaint simply replaced "the defendants" with the names of all the defendants without identifying which defendants were alleged to be responsible for which alleged violations). Rather, in the PAC Plaintiff attempts to distinguish which Defendants she alleges engaged in the various actions she claims violated the Decedent's civil rights. For example, it is alleged in the PAC that between February 5 and 8, 2016, while Cummings was housed in Delta Control, she was observed by the various Defendants then assigned to Delta Control, including on February 6, 2016, by Defendants Franklin, Glinski, Lodestro, Kozlowski, Knezevic, Balys, Barnes, Sengbusch, and Szarma, and on February 7, 2016 by Defendants

Lodestro, Lightcap, Whyte, and Wahlen, yet none of these Defendants took any action to obtain medical treatment for Cummings despite being aware she had untreated serious medical conditions.  PAC ¶ 114.  Reading the PAC as a whole, including the redacted Final Report attached as an exhibit, establishes the PAC does not contain impermissible group pleading.

The PAC also does not fail to establish the requisite deliberate indifference required to establish the Fourteenth Amendment violations alleged with regard to the conditions of confinement endured by Cummings in the ECHC.  To state a Fourteenth Amendment claim for medical indifference, a pretrial detainee "must plead facts 'showing that she had a serious medical condition and that it was met with deliberate indifference." *Bruno v. City of Schenectady*, 727 Fed.Appx. 717, 720 (2d Cir. 2018) (internal quotation marks and citation omitted).  In particular, for a deliberate indifference claim based on an alleged denial of adequate medical treatment,[14] the first prong requires the plaintiff suffer from "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005).  Here, both Cummings's fractured left humerus and deteriorating mental condition satisfied this prong.  *See Houston v. County of Westchester Dept. of Correction*, 2006 WL 3498560, at * 5 (S.D.N.Y. Dec. 5, 2006) (considering fractured arm as a "condition of urgency"); *Marshall v. Annucci*, 2018 WL 1449522, at * 2 (S.D.N.Y. Mar. 22, 2018) (recognizing Fourteenth Amendment failure to treat claim based on "Plaintiff's own pleas for appropriate mental health treatment" and that Office of Mental

---

[14] The first element of an alleged denial of adequate medical care is the same under the Fourteenth Amendment pertaining to a pretrial detainee as under the Eighth Amendment pertaining to a convicted plaintiff.  *Bruno*, 727 Fed.Appx. at 720.

Health counsel alerted DOCCS to the plaintiff's mental health history, deteriorating mental condition and need for urgent action to prevent future harm).  The second prong is "whether a 'reasonable person' would appreciate the risk to which the detainee was subjected."  *Bruno*, 727 Fed.Appx. at 720 (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29, 33-35 (2d Cir. 2017)).  Toward this end, the PAC contains numerous allegations that Plaintiff was observed by the various Defendants with a broken left arm and behavior indicative of deteriorating mental health.  *See*, *e.g.*, PAC ¶ 97 ("Cummings had obvious physical injuries, including a broken left arm, requiring of emergent [*sic*] medical care"); ¶ 99 ("On February 1, 2016, Cummings states to ECHC medical staff that she was worried about her health, and reported to medical staff the injury to her left arm, which included redness to bilateral wrists and puncture wound noted by the treating medical personnel to her anterior right wrist, as well as large bruise to left forearm.  During this medical evaluation, it was noted by medical staff that Cummings was making 'bizarre' statements.  Cummings stated 'I cannot move my arm.' "), and ¶ 107 ("Defendants Hayes, Glinski, and Scanlon took note, observed, and were aware that Cummings had a plastic brace on her left arm, and were also aware of her serious mental health problems").  Accordingly, the PAC contains sufficient factual allegations plausibly establishing in accordance with *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (requiring complaint state a claim with "facial plausibility" to survive motion to dismiss), the circumstances confronting the various Defendants were sufficient for a reasonable person to appreciate the risk to which Cummings was subjected.  *Bruno*, 727 Fed.Appx.

at 720.  The PAC thus states state medical indifference claims against Defendants based on Plaintiff's fractured left arm and deteriorating mental health.[15]

Nor is there any merit to Defendants' argument that permitting Plaintiff to file the PAC will result in undue delay.  Specifically, Plaintiff's Motion to Amend was filed on May 29, 2019, a little more than one month after the Defendants' Motion to Dismiss was filed on April 24, 2019.  Furthermore, although the filing of the PAC will moot Defendants' Motion to Dismiss, even if the Motion to Dismiss had been granted, it likely would have been without prejudice and with leave for Plaintiff to file an amended complaint.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (holding district court erred in dismissing complaint without leave to amend).

Accordingly, Plaintiff's Motion to Amend is GRANTED.

## 3.    Consolidation

Plaintiff moves to consolidate, for both discovery and trial, the instant action with the Lackawanna action, asserting common questions of law and fact between the two actions supports consolidation, Plaintiff's Memorandum – Consolidate at 3-5, and that consolidation will not adversely affect the parties but will promote judicial economy.  *Id.* at 5-6.  In opposing consolidation, Defendants argue the two cases are at "vastly different procedural stages," Defendants' Response – Consolidate at 3-4, the two matters involve dissimilar issues of law and fact, *id.* at 4-5, and consolidation would create a "conflict of interest" between Defendants who are county employees in the *Lackawanna* action and represented by a different Assistant Erie County Attorney and

---

[15] The court's discussion here is limited to Defendants' contention that the PAC is futile for the purposes of Plaintiff's motion for leave to file the PAC with regard to Plaintiff's deliberate indifference claim and does not address Defendants' pending motion to dismiss for failure to state a claim.

the Defendants in the instant action who are represented by different Assistant Erie County Attorneys, *id.* at 5-6.  In further support of consolidation, Plaintiff maintains both actions are at similar procedural stages with neither yet reaching discovery, Plaintiff's Reply – Consolidate at 3-4, similar issues of law and fact arising out of Cummings's medical care and treatment at the ECHC are present in both actions, *id.* at 5-6, Defendants' "vague allegations that consolidation would create confusion does not render consolidation inappropriate," *id.* at 6-8, and a potential "conflict of interest" in legal representation does not require denying consolidation.  *Id.* at 8-9.

It is basic that under Fed.R.Civ.P. 42(a) ("Rule 42(a)"), consolidation of actions for pretrial proceedings and trial may be ordered where such actions involve a common question of law or fact.  *J.H. v. Williamsville Central School District*, 2015 WL 2080221, at *4 (W.D.N.Y. May 4, 2015) (Rule 42(a) requires only either a common question of law or fact, which common questions need not predominate) (citing authorities).  The court has broad discretion in balancing the interests of parties, witnesses and court as well as the time and expense entailed by separate proceedings.  *J.H.*, 2015 WL 2080221, at *3. In exercising that discretion, district courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated.  *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011).  The fact that the actions have different parties and counsel is not a bar for consolidation.  *See Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973) (considering fact that some claims, defenses, or parties in separate

actions may be different is not determinative as to whether cases may be consolidated, but only factors to be considered in determining whether benefits outweigh prejudice on consolidation motion).  Nevertheless, here, consideration of the relevant factors does not support consolidation.

Specifically, thorough review of the pleadings in each case fails to establish any commonality of law and facts; rather, there is sparse overlap of the circumstances with the instant action concerning the circumstances under which Cummings was detained at ECHC, whereas the *Lackawanna* case involves Cummings's arrest by the Lackawanna Police and the medical treatment Cummings eventually received at ECMC. The two claims in the instant action assert violations of Cummings' Fourteenth Amendment rights based on the conditions of confinement at ECHC whereas the *Lackawanna* action asserts eight claims, five of which are personal injury claims under New York law based on negligence, medical malpractice, and wrongful death, *Lackawanna* Complaint, Claims 1, 3, 4, 5, and 8, with three federal claims including a § 1983 excessive force claim, *id.* Claim 2, a § 1983 claim for deprivation of adequate medical care, *id.* Claim 6, and a municipal liability claim pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978), *id.* Claim 7.  Although the denial of adequate medical care claim in the *Lackawanna* action does include a few factual allegations regarding Cummins's treatment at ECHC, Lackawanna Complaint ¶¶ 297, 299 and 301, the allegations are only asserted against Defendants in the *Lackawanna* action.  Under these circumstances, there is little risk of inconsistent rulings on common issues of law and facts.

That no scheduling conference pursuant to Fed.R.Civ.P. 16(b) has yet been held in either case does not establish both cases are at similar stages as Plaintiff argues. Plaintiff's Reply – Consolidate at 3-4.  Rather, a review of the docket for the *Lackawanna* action indicates it is, as Defendants argue, at a different stage of litigation with a second amended complaint and answers filed, numerous cross-claims asserted, motions to dismiss for lack of jurisdiction and for failure to state a claim filed and decided, and motions to dismiss the cross-claims pending.  Further, the lack of substantial overlap between claims asserted in each case undermines Plaintiff's assertion that consolidation will avoid duplicative discovery.  Accordingly, consolidating the instant action with the *Lackawanna* action will not promote judicial economy but, rather, will only delay the *Lackawanna* action.  *See Metzgar v. U.A. Plumbers and Steamfitters Local No. 22 Pension Fund*, 2017 WL 3722456, at ** 3-4 (W.D.N.Y. Aug. 29, 2017) (denying consolidation despite likelihood that resolution of claims in one action would completely resolve claims in related action because of risk consolidation would result in significant delay of the threshold determination).

In sum, based on the lack of any significantly commonality of law and facts, the significantly different stages of litigation for each case, and the absence of any benefit to the parties, Plaintiff's Motion to Consolidate is DENIED.

## CONCLUSION

Plaintiff's Motion for Substituted Service (Dkt. 12) is DISMISSED as moot in part, and DENIED in part; Plaintiff's Motion to Amend (Dkt. 24) is GRANTED; Plaintiff's Motion to Consolidate (Dkt. 57) is DENIED.  Plaintiff shall file the Proposed Amended Complaint within 10 days of this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        January 14th, 2021
              Buffalo, New York