UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAWANA R. WYATT, as Administrator of the
Estate of INDIA T. CUMMINGS,

                            Plaintiff,          Civil Action No.: 1:19-cv-00159-EAW

vs.                               **FIRST AMENDED COMPLAINT**

                                     **JURY TRIAL DEMANDED**

ERIE COUNTY SHERIFF SERGEANT KOZLOWSKI,
ERIE COUNTY SHERIFF SERGEANT DIAMOND,
ERIE COUNTY SHERIFF SERGEANT WEYAND-GARRETT,
ERIE COUNTY SHERIFF SERGEANT LIGHTCAP,
ERIE COUNTY SHERIFF SERGEANT SCANLON,
ERIE COUNTY SHERIFF SERGEANT CARNEY,
ERIE COUNTY SHERIFF SERGEANT FORERO,
ERIE COUNTY SHERIFF SERGEANT WEIG,
ERIE COUNTY SHERIFF SERGEANT EVANS,
ERIE COUNTY SHERIFF SERGEANT KNEZEVIC,
ERIE COUNTY SHERIFF SERGEANT ROBINSON,
ERIE COUNTY SHERIFF SERGEANT BALYS,
ERIE COUNTY SHERIFF SERGEANT WEBSTER,
ERIE COUNTY SHERIFF SERGEANT PERKINS,
ERIE COUNTY SHERIFF SERGEANT GLINSKI,
ERIE COUNTY SHERIFF SERGEANT CROSS,
ERIE COUNTY SHERIFF SERGEANT WADE,
ERIE COUNTY SHERIFF LIEUTENANT FRANKLIN,
ERIE COUNTY SHERIFF LIEUTENANT ISCH,
ERIE COUNTY SHERIFF LIEUTENANT LODESTRO,
ERIE COUNTY SHERIFF LIEUTENANT BRYMAN,
ERIE COUNTY SHERIFF LIEUTENANT GLINSKI,
ERIE COUNTY SHERIFF CAPTAIN ALAN WHALEN,
ERIE COUNTY SHERIFF DEPUTY WOOD
ERIE COUNTY SHERIFF DEPUTY GOULD,
ERIE COUNTY SHERIFF DEPUTY GEARRY,
ERIE COUNTY SHERIFF DEPUTY FALLETTA,
ERIE COUNTY SHERIFF DEPUTY RIVERA,
ERIE COUNTY SHERIFF DEPUTY SANCHEZ,
ERIE COUNTY SHERIFF DEPUTY HUSSAR,
ERIE COUNTY SHERIFF DEPUTY SALTZ,
ERIE COUNTY SHERIFF DEPUTY FILIPSKI,

ERIE COUNTY SHERIFF DEPUTY WEGRYN,
ERIE COUNTY SHERIFF DEPUTY SCHUBERT,
ERIE COUNTY SHERIFF DEPUTY HAYES,
ERIE COUNTY SHERIFF DEPUTY M. MILLER,
ERIE COUNTY SHERIFF DEPUTY LUGO,
ERIE COUNTY SHERIFF DEPUTY CASTOIRE,
ERIE COUNTY SHERIFF DEPUTY GILETTE,
ERIE COUNTY SHERIFF DEPUTY ESFORD,
ERIE COUNTY SHERIFF DEPUTY WINDRUM,
ERIE COUNTY SHERIFF DEPUTY ZARCONE,
ERIE COUNTY SHERIFF DEPUTY CASCIO,
ERIE COUNTY SHERIFF DEPUTY CHERYL MORABITO,
ERIE COUNTY SHERIFF DEPUTY LIBERTI,
ERIE COUNTY SHERIFF DEPUTY BARNES,
ERIE COUNTY SHERIFF DEPUTY SENGBUSCH,
ERIE COUNTY SHERIFF DEPUTY SZRAMA,
ERIE COUNTY SHERIFF DEPUTY WHYTE,
ERIE COUNTY SHERIFF DEPUTY SCIBILIA,
ERIE COUNTY SHERIFF DEPUTY HOLDER,
ERIE COUNTY SHERIFF DEPUTY STISSER,
ERIE COUNTY SHERIFF DEPUTY SZENTESY,
ERIE COUNTY SHERIFF DEPUTY PATTI,
ERIE COUNTY SHERIFF DEPUTY SOWINSKI,
ERIE COUNTY SHERIFF DEPUTY MAJCHROWICZ,
ERIE COUNTY SHERIFF DEPUTY VAUGHN,
ERIE COUNTY SHERIFF DEPUTY MCGAVIS,
ERIE COUNTY SHERIFF DEPUTY EAGLE,
ERIE COUNTY SHERIFF DEPUTY D'ALOISIO,
ERIE COUNTY SHERIFF DEPUTY SALVERSON,
ERIE COUNTY SHERIFF DEPUTY MOSS,
ERIE COUNTY SHERIFF DEPUTY RANICK,
ERIE COUNTY SHERIFF DEPUTY KEE,
ERIE COUNTY SHERIFF DEPUTY BOGGS,
ERIE COUNTY SHERIFF DEPUTY MACIEJEWSKI,
ERIE COUNTY SHERIFF DEPUTY MILES,
ERIE COUNTY SHERIFF DEPUTY OSIKA,
ERIE COUNTY SHERIFF DEPUTY KOZAKIEWICZ,
ERIE COUNTY SHERIFF DEPUTY LANCE THURSTON,
ERIE COUNTY SHERIFF DEPUTY JOHN L. DUNN,
ERIE COUNTY SHERIFF DEPUTY TYSEN A. LINCOLN.

Defendants.

_____

## JURISDICTION

1.     This is a civil action seeking damages for personal injuries and wrongful death pursuant to 42 U.S.C. 1983.

## DOCUMENTS RELIED UPON AND FULLY INCORPORATED BY REFERENCE

2.     Attached and annexed to this Complaint are documents providing in part the basis for allegations in this Complaint.

3.     Attached as Exhibit A to this pleading are Erie County Holding Center Housing Area Log Sheets ("logbook"). This document is referenced and relied upon in this pleading and is incorporated into this pleading in its entirety.

4.     Attached as Exhibit B to this pleading is the New York State Commission of Correction's Final Report In the Matter of the Special Investigation into the Care and Treatment Provided to India Cummings, an inmate of the Erie County Holding Center, dated June 26, 2018. These excerpts document contains substantial redactions. This document is referenced and relied upon in this pleading and is incorporated into this pleading in its entirety.

## PARTIES

5.     The plaintiff, TAWANA R. WYATT, as Administrator of the Estate of INDIA T. CUMMINGS, at all times hereinafter mentioned, was and still is a resident of the City of Rochester located within the County of Monroe and the State of New York.

6.     On or about the 5th day of July 2016, the plaintiff, TAWANA R. WYATT, was appointed Administrator of the Estate of INDIA T. CUMMINGS ("CUMMINGS"), pursuant to an Order of the Surrogate's Court of the County of Erie and the State of New York, and Letters of Administration of the Estate of INDIA T. CUMMINGS were served on the plaintiff, TAWANA

R. WYATT, and the said plaintiff thereupon duly qualified and thereafter acted and is still acting as such Administrator.

7.    ERIE COUNTY SHERIFF'S DEPUTY CATHY WOOD (hereinafter "Deputy Wood") was an Erie County Sheriff's Deputy working in the Erie County Holding Center (hereinafter "ECHC") during the period of CUMMING'S booking and incarceration.  DEPUTY WOOD is sued in her individual capacity. DEPUTY WOOD performed the initial classification of CUMMINGS on February 1, 2016 and classified CUMMINGS to be housed in a non-medical unit "Alpha Long."

8.    ERIE COUNTY SHERIFF'S DEPUTY GOULD was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 1 and 2, 2016. DEPUTY GOULD is sued in his individual capacity.

9.    ERIE COUNTY SHERIFF'S DEPUTY GEARRY was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 1 and 2, 2016.  DEPUTY GEARRY is sued in his individual capacity.

10.    ERIE COUNTY SHERIFF'S DEPUTY FALLETTA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S booking and incarceration, including on February 2, 2016.  DEPUTY FALLETTA is sued in his individual capacity.

11.    ERIE COUNTY SHERIFF'S DEPUTY RIVERA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 2, 2016.  DEPUTY RIVERA is sued in his individual capacity.

12.    ERIE COUNTY SHERIFF'S DEPUTY SANCHEZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 2, 2016.  DEPUTY SANCHEZ is sued in his individual capacity.

4

13. ERIE COUNTY SHERIFF'S DEPUTY HUSSAR was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 2, 2016. DEPUTY HUSSAR is sued in his individual capacity.

14. ERIE COUNTY SHERIFF'S DEPUTY SALTZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S booking and incarceration, including on February 2, 2016. DEPUTY SALTZ is sued in his individual capacity.

15. ERIE COUNTY SHERIFF'S DEPUTY FILIPSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 2, 2016. DEPUTY FILIPSKI is sued in his individual capacity.

16. ERIE COUNTY SHERIFF'S DEPUTY WEGRYN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 1 and 2, 2016. DEPUTY WEGRYN is sued in his individual capacity.

17. ERIE COUNTY SHERIFF'S DEPUTY SCHUBERT was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration, including on February 1 and 2, 2016. DEPUTY SCHUBERT is sued in his individual capacity.

18. ERIE COUNTY SHERIFF'S DEPUTY M. MILLER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, including on February 2, 14, and 15, 2016. DEPUTY M. MILLER is sued in his individual capacity.

19. ERIE COUNTY SHERIFF'S DEPUTY LUGO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, including on February 2 and 3, 2016. DEPUTY LUGO is sued in her individual capacity.

20.     ERIE COUNTY SHERIFF'S DEPUTY CASTOIRE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, including February 2, 2016.  DEPUTY CASTOIRE is sued in his individual capacity.

21.     ERIE COUNTY SHERIFF'S DEPUTY GILLETTE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, including on February 2 and 3, 2016.  GILLETTE is sued in his individual capacity.

22.     ERIE COUNTY SHERIFF'S DEPUTY ESFORD was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, including on February 3, 2016.  DEPUTY ESFORD is sued in his individual capacity.

23.     ERIE COUNTY SHERIFF'S DEPUTY WINDRUM was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, including on February 3, 13, and 16, 2016.  DEPUTY WINDRUM is sued in his individual capacity.

24.     ERIE COUNTY SHERIFF'S DEPUTY HAYES was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg, including on February 3, 4, and 5, 2016.  DEPUTY HAYES is sued in his individual capacity.

25.     ERIE COUNTY SHERIFF'S DEPUTY CASCIO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 3 and 4, 2016.  DEPUTY CASCIO is sued in his individual capacity.

26.     ERIE COUNTY SHERIFF'S DEPUTY ZARCONE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg, including on February 5, 2016.  DEPUTY ZARCONE is sued in his individual capacity.

27.     ERIE COUNTY SHERIFF'S DEPUTY MORABITO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S incarceration in Alpha Seg and

Delta Control, including on February 5 and 11, 2016. DEPUTY MORABITO is sued in her individual capacity.

28.     ERIE COUNTY SHERIFF'S DEPUTY LIBERTI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 5, and 10, 2016. DEPUTY LIBERTI is sued in his individual capacity.

29.     ERIE COUNTY SHERIFF'S DEPUTY BARNES was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 6, 2016. DEPUTY BARNES is sued in his individual capacity.

30.     ERIE COUNTY SHERIFF'S DEPUTY SENGBUSCH was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 6 and 7, 2016. DEPUTY SENGBUSCH is sued in his individual capacity.

31.     ERIE COUNTY SHERIFF'S DEPUTY SZRAMA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 6, 2016. DEPUTY SZRAMA is sued in his individual capacity.

32.     ERIE COUNTY SHERIFF'S DEPUTY WHYTE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 7, 2016. DEPUTY WHYTE is sued in his individual capacity.

33.     ERIE COUNTY SHERIFF'S DEPUTY SCIBILIA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 7, 2016. DEPUTY SCIBILIA is sued in his individual capacity.

34.     ERIE COUNTY SHERIFF'S DEPUTY HOLDER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, February 7 and 8, 2016. DEPUTY HOLDER is sued in his individual capacity.

7

35.     ERIE COUNTY SHERIFF'S DEPUTY STISSER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, February 8, 2016.  DEPUTY STISSER is sued in his individual capacity.

36.     ERIE COUNTY SHERIFF'S DEPUTY SZENTESY was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 5 and 8, 2016.  DEPUTY SZENTESY is sued in his individual capacity.

37.     ERIE COUNTY SHERIFF'S DEPUTY PATTI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 8 and 10, 2016.  DEPUTY PATTI is sued in his individual capacity.

38.     ERIE COUNTY SHERIFF'S DEPUTY SOWINSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 9, 2016.  DEPUTY SOWINSKI is sued in his individual capacity.

39.     ERIE COUNTY SHERIFF'S DEPUTY MAJCHROWICZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 9, 2016.   DEPUTY MAJCHROWICZ is sued in his individual capacity.

40.     ERIE COUNTY SHERIFF'S DEPUTY VAUGHN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 10, 2016.  DEPUTY VAUGHN is sued in his individual capacity.

41.     ERIE COUNTY SHERIFF'S DEPUTY MCGAVIS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 10, 2016.  DEPUTY MCGAVIS is sued in his individual capacity.

42.     ERIE COUNTY SHERIFF'S DEPUTY EAGLE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 10 and 11, 2016.  DEPUTY EAGLE is sued in his individual capacity.

43.     ERIE COUNTY SHERIFF'S DEPUTY D'ALOISIO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 11, 2016. DEPUTY D'ALOISIO is sued in his individual capacity.

44.     ERIE COUNTY SHERIFF'S DEPUTY SALVERSON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 11, 2016.  DEPUTY SALVERSON is sued in his individual capacity.

45.     ERIE COUNTY SHERIFF'S DEPUTY MOSS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 11, 12, 13, 14, 15, and 16, 2016. DEPUTY MOSS is sued in his individual capacity.

46.     ERIE COUNTY SHERIFF'S DEPUTY RANICK was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 12, 13, and 15, 2016. DEPUTY RANICK is sued in his individual capacity.

47.     ERIE COUNTY SHERIFF'S DEPUTY KEE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 12, 2016. DEPUTY KEE is sued in her individual capacity.

48.     ERIE COUNTY SHERIFF'S DEPUTY BOGGS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 12, 13, 14, and 15, 2016. DEPUTY BOGGS is sued in his individual capacity.

49.     ERIE COUNTY SHERIFF'S DEPUTY MACIEJEWSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta

Female, including on February 13, 2016.  DEPUTY MACIEJEWSKI is sued in his individual capacity.

50.    ERIE COUNTY SHERIFF'S DEPUTY MILES was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 14, 2016.  DEPUTY MILES is sued in his individual capacity.

51.    ERIE COUNTY SHERIFF'S DEPUTY OSIKA was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 15, 2016.  DEPUTY OSIKA is sued in his individual capacity.

52.    ERIE COUNTY SHERIFF'S DEPUTY KOZAKIEWICZ was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 12, 16, and 17, 2016.  DEPUTY KOZAKIEWICZ is sued in his individual capacity.

53.    ERIE COUNTY SHERIFF'S LIEUTENANT FRANKLIN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMING'S booking and incarceration in Alpha Long, Alpha Seg, Delta Control and Delta Female, including on February 1, 2, 3, 4, 5, 6, and 8, 2016.  LIEUTENANT FRANKLIN is sued in his individual capacity.

54.    ERIE COUNTY SHERIFF'S LIEUTENANT ISCH was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration in Alpha Long, Delta Female, including on February 2, 3, 4, 12, 13, 14, 15, and 16, 2016.  LIEUTENANT ISCH is sued in his individual capacity.

55.    ERIE COUNTY SHERIFF'S LIEUTENANT LODESTRO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration

in Alpa Seg, Delta Control, Delta Female and Buffalo General Hospital, including on February 2, 5, 6, 8, 9, 10, 11, and 16, 2016. LIEUTENANT LODESTRO is sued in his individual capacity.

56.   ERIE COUNTY SHERIFF'S LIEUTENANT BRYMAN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Alpha Seg, Delta Female and Delta Control, including on February 2, 3, 4, 5, 7, 10, 11, 12, 14, 15, 16, and 17, 2016. LIEUTENANT BRYMAN is sued in his individual capacity.

57.   ERIE COUNTY SHERIFF'S LIEUTENANT GLINSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Alpha Seg, Delta Control, Delta Female and Buffalo General Hospital, including on February 3, 4, 5, 9, 11, 12, 15, and 16, 2016. LIEUTENANT GLINSKI is sued in his individual capacity.

58.   ERIE COUNTY SHERIFF'S CAPTAIN WHALEN was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control and Delta Female, including on February 5, 7 and 14, 2016. CAPTAIN WHALEN is sued in his individual capacity.

59.   ERIE COUNTY SHERIFF'S SERGEANT WEYAND-GARRETT was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking, including on February 1 and 2, 2016.   SERGEANT WYAND-GARRETT is sued in his individual capacity.

60.   ERIE COUNTY SHERIFF'S SERGEANT KOZLOWSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking and incarceration in Delta Control and Delta Female, including on February 1, 2, 3, 4, 5, 11, 15, and 16, 2016. SERGEANT KOZLOWSKI is sued in his individual capacity.

11

61.     ERIE COUNTY SHERIFF'S SERGEANT DIAMOND was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' booking, including on February 2, 2016.  SERGEANT DIAMOND is sued in his individual capacity.

62.     ERIE COUNTY SHERIFF'S SERGEANT LIGHTCAP was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Delta Female and Delta Control, including on February 2, 6, 7, 9, 10, 13, 14, 16, and 17, 2016.  SERGEANT LIGHTCAP is sued in his individual capacity.

63.     ERIE COUNTY SHERIFF'S SERGEANT SCANLON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long and Alpha Seg, including on February 2, 3, and 4, 2016.  SERGEANT SCANLON is sued in his individual capacity.

64.     ERIE COUNTY SHERIFF'S SERGEANT CARNEY was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Alpha Seg and Delta Female, including on February 2, 3, 4, and 8, 2016.  SERGEANT CARNEY is sued in his individual capacity.

65.     ERIE COUNTY SHERIFF'S SERGEANT FORERO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Long, Delta Control, Delta Female, including on February 2, 3, 10, 11, 12, and 13, 2018.  SERGEANT FORERO is sued in his individual capacity.

66.     ERIE COUNTY SHERIFF'S SERGEANT WEIG was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg and Alpha Female, including on February 4, 5, 14, and 15, 2016.  SERGEANT WEIG is sued in his individual capacity.

67.     ERIE COUNTY SHERIFF'S SERGEANT EVANS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg, including on February 5, 2016.  SERGEANT EVANS is sued in his individual capacity.

68.     ERIE COUNTY SHERIFF'S SERGEANT KNEZEVIC was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Alpha Seg, Delta Control and Alpha Female, including on February 4, 5, 6, 9, 10, 12, and 16, 2016.  SERGEANT KNEZEVIC is sued in his individual capacity.

69.     ERIE COUNTY SHERIFF'S SERGEANT ROBINSON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control and Delta Female, including on February 2, 7, and 12, 2016.  SERGEANT ROBINSON is sued in his individual capacity.

70.     ERIE COUNTY SHERIFF'S SERGEANT BALYS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 6, 2016.  SERGEANT BALYS is sued in his individual capacity.

71.     ERIE COUNTY SHERIFF'S SERGEANT WEBSTER was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration at Buffalo General Hospital, including on February 5 and 7, 2016.  SERGEANT WEBSTER is sued in his individual capacity.

72.     ERIE COUNTY SHERIFF'S SERGEANT PERKINS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female and Delta Control, including on February 7, 8, 9, 10, 11, 14, 15, and 16, 2016.  SERGEANT PERKINS is sued in his individual capacity.

73.      ERIE COUNTY SHERIFF'S SERGEANT GLINSKI was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 3, 4, 5, 9, 11, 12, 15, and 16, 2016. SERGEANT GLINSKI is sued in his individual capacity.

74.      ERIE COUNTY SHERIFF'S SERGEANT A. LODESTRO was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Control, including on February 11, 2016.  SERGEANT A. LODESTRO is sued in his individual capacity.

75.      ERIE COUNTY SHERIFF'S SERGEANT CROSS was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 13, 2016.  SERGEANT CROSS is sued in his individual capacity.

76.      ERIE COUNTY SHERIFF'S SERGEANT WADE was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 15, 2016.  SERGEANT WADE is sued in his individual capacity.

77.      ERIE COUNTY SHERIFF'S DEPUTY LANCE THURSTON was an Erie County Sheriff's Deputy working in the ECHC during the period of CUMMINGS' incarceration in Delta Female, including on February 3, 2016. DEPUTY THURSTON is sued in his individual capacity.

78.  ERIE COUNTY SHERIFF'S DEPUTY JOHN L. DUNN was an Erie County Sheriff's Deputy and did transport CUMMINGS to ERIE COUNTY MEDICAL CENTER on February 2, 2016. DEPUTY DUNN is sued in his individual capacity.

79.  ERIE COUNTY SHERIFF'S DEPUTY TYSEN A. LINCOLN was an Erie County Sheriff's Deputy and did transport CUMMINGS to ERIE COUNTY MEDICAL CENTER on February 2, 2016. DEPUTY LINCOLN is sued in his individual capacity.

80.     As a point of note, there were three shifts for the Defendants at ECHC on each day during this February 1, 2016 to February 17, 2016 period, for 24-hour, around-the-clock monitoring and supervision of inmates including CUMMINGS. The three shifts ran from 2300 to 0700 hours, 0700 to 1500 hours, and 1500 to 2300 hours on each and every day from February 1, 2016 to February 17, 2016.

## STATEMENT OF FACTS

81.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 82" of this Complaint with the same force and effect as if fully set forth herein.

82.     CUMMINGS, a 27-year-old woman, entered into the ECHC on February 1, 2016. She had no known medical history, no record of treatment, and no known medications being previously prescribed. Under the watch, care, and supervision of the Defendants, by February 17, 2016, CUMMINGS became unable to stand and "became unconscious." After days of not eating, not receiving medical treatment, and lying on the floor in her own waste and garbage at the ECHC, she died of complications stemming from dehydration, a poorly healing fracture of the humerus, thrombosis of leg veins, rhabdomyolysis, and terminal acute renal failure.

83.     The New York State Commission of Correction subsequently conducted a Special Investigation into the death of India Cummings concerning her inmate status at the ECHC, and issued its Final Report on June 26, 2018. See Ex. B. The Commission of Correction's Medical Review Board, whose investigation focused primarily on the medical treatment, or lack thereof, that CUMMINGS received at the ECHC. The Commission of Correction's Medical Review Board determined that CUMMINGS' death should be ruled as a homicide due to medical neglect. See Ex. B at Finding #2.

84.     The Commission of Correction's investigation also found actions of Defendants in this action to be "unconscionable," see Ex. B at Finding #68, and it also found that Defendants repeatedly violated New York statutes and regulations concerning the treatment of CUMMINGS and cell sanitation. See Ex. B.

85.     Prior to CUMMINGS detention at the ECHC, on February 1, 2016, decedent CUMMINGS was arrested in the City of Lackawanna by members of the Lackawanna Police Department.

86.     While in the custody of the Lackawanna Police, CUMMINGS sustained a spiral fracture of the left humerus.

87.     On February 1, 2016 CUMMINGS was transported to the ECHC and placed in the custody of the County of Erie, Erie County Sheriff's Office, and Erie County Sheriff Timothy Howard.

88.     While CUMMINGS was housed at the ECHC between February 1, 2016 and February 17, 2017, each and every of the above-captioned Defendants were working at the ECHC at different times and shifts as stated in paragraphs 6 through 81.   Accordingly, and upon information and belief, each one of the above-captioned Defendants observed, monitored, and or supervised CUMMINGS, and each and every Defendant was aware of CUMMINGS' serious medical conditions. Each Defendant recklessly, unreasonably, with gross negligence, and/or with deliberate indifference failed to act and take steps to secure CUMMINGS' adequate medical care during this period while incarcerated at the ECHC notwithstanding the seriousness of her medical needs, and their awareness of those needs and her serious condition.

89.     At various times set forth in greater detail below, the Defendants permitted CUMMINGS' cell and housing conditions at the ECHC to degenerate to a condition of squalor

and filth that remained uncleaned by any of the Defendants, notwithstanding their awareness of these deplorable conditions. These conditions began immediately upon CUMMINGS' misclassification, and continued, worsening, until her departure from the ECHC.

90.     Upon information and belief, for every working shift assigned to CUMMINGS' cell and cell block, there was at least one Lieutenant, one Sergeant, and one Deputy present and monitoring CUMMINGS. On at least one occasion, Defendant Captain WHALEN substituted the place of a Lieutenant.

91.     During the course of her detention, CUMMINGS was not rendered adequate medical care by ECHC RN staff and Forensic Mental Health Services, whom recklessly did nothing more provide inadequate or grossly incompetent assessments of CUMMINGS. Upon information and belief, this staff either did not enter CUMMINGS' cell to assess her or did so under such conditions as to make any assessments or evaluations of little value. These individuals often merely document CUMMINGS' repeated refusals of treatment, and advised her to self refer as needed.

92.     Upon information and belief, during CUMMINGS' period of confinement, numerous inmates, at various times, made efforts to convince many of the defendants to transport CUMMINGS to the hospital, which went unheeded.

93.     Upon information and belief, Defendant Deputies working on February 1, 2016 through February 17, 2016 were tasked with physically monitoring, maintaining posts, reporting upon, and recording in the logbook the activities of inmates, including CUMMINGS at and within the non-medical and medical housing units at the ECHC. The Deputy Defendants were assigned to inmates' housing units, including the housing unit of CUMMMINGS, by Lieutenants and Captain Defendants.

94.    Upon information and belief, on each shift, Sergeants supervised the Deputies assigned to CUMMINGS, would conduct supervisory tours of CUMMINGS' cell, notated or initialed the logbook upon review of it, and otherwise observed and monitored CUMMINGS.

95.    Upon information and belief, Lieutenants supervised the Sergeants and Deputies, monitored, toured, a determined CUMMINGS' detention conditions, and were otherwise aware fo the same, during her period of detention at the ECHC

96.    The logbook concerning, and Commission of Corrections Report of CUMMINGS reveal a steady decline of health from February 1, 2016 to February 17, 2016, and a callous, deliberate disregard for the well-being of CUMMINGS whose agony was meticulously documented and observed by Defendants, but for whom none of these Defendants took any action to aid or assist in spite of the fact they knew or should have known of the grave risks posed to CUMMINGS' health and safety by their actions and inactions.

97.    Upon intake at ECHC, on February 1, 2016 at approximately 1650 hours, Defendants Lieutenant FRANKLIN, Sergeant WEYAND-GARRETT, and Deputy WEGRYN noted, observed  and were otherwise aware that CUMMINGS presented with bizarre behavior, which required emergent psychiatric care, and further that CUMMINGS had obvious physical injuries, including a broken left arm, requiring of emergent medical care.

98.    On February 1, 2016, Defendant Deputy WOOD processed CUMMINGS at intake, determining CUMMINGS' classification. Notwithstanding CUMMINGS' evident displays of bizarre mental disorder and need for immediate mental health treatment, together with her demonstrated need for medical treatment and care concerning her broken arm, Defendant WOOD, classified CUMMINGS to be housed in a non-medical unit.

18

99.     On February 1, 2016, CUMMINGS stated to ECHC medical staff that she was worried about her health, and reported to medical staff the injury to her left arm, which included redness to bilateral wrists and puncture wound noted by the treating medical personnel to her anterior right wrist, as well as large bruise to left forearm. During this medical evaluation, it was noted by medical staff that CUMMINGS was making "bizarre" statements. CUMMINGS stated "I cannot move my arm."

100.     Between February 1 and 2, 2016 Defendants FRANKLIN, ISCH, DIAMOND, WEYAND-GARRETT, KOZLOWSKI, WEGRYN, SCHUBERT, GOULD and GEARRY, CUMMINGS noted, observed and were otherwise aware that CUMMINGS was classified to be housed in "Alpha Long," a non-medical housing unit in ECHC. No mental health referral for CUMMINGS was made by Defendants FRANKLIN, ISCH, WEYAND-GARRETT, KOZLOWSKI, WEGRYN, SCHUBERT, GOULD and GEARRY. Instead, upon information and belief, February 1, 2016 Defendant WEYAND-GARRETT noted in the logbook that India Cummings had "no issues" at 1650 hours, an action endorsed by Defendants FRANKLIN, ISCH, KOZLOWSKI, WEGRYN, SCHUBERT, GOULD and GEARRY between February 1 and 2, 2016. See Ex. A at pg. 1.

101.     On February 2, 2016, at booking, Defendants Lieutenant LODESTRO, Sergeant DIAMOND, and Deputies FALLETTA, RIVERA, SANCHEZ, HUSSAR, SALTZ, and FILIPSKI observed, noted, and were otherwise aware that CUMMINGS presented with serious medical conditions including mental health issues and a broken arm. These Defendants were additionally required to ask and ascertain a detainee's behavior and if any detainees had any "suicidal ideations." None of these Defendants took any steps to ensure that CUMMINGS was properly booked and housed at the ECHC in accordance with her medical needs.

102.    On February 2, 2016, Defendants ISCH, KOZLOWSKI, LIGHTCAP, GOULD, GEARY, and MILLER observed CUMMINGS' classification and placement into Alpha Long, a non-medical housing cell area within ECHC, notwithstanding her obvious mental altered status, observable broken arm, and the fact that Defendants ISCH, KOZLOWSKI, GOULD, and GEARY knew she had been recently transported to and back from Erie County Medical Center ("ECMC") treatment concerning her fractured arm.

103.    On February 2, 2016, Defendants Lieutenants LODESTRO, FRANKLIN, BRYMAN, Sergeants SCANLON, ROBINSON, CARNEY, FORERO, and Deputies LUGO, CASTOIRE, and GILLETTE observed, noted and were otherwise aware that CUMMINGS, while housed in Alpha Long, a non-medical housing unit, presented with serious medical and mental health problems, and none of these Defendants took any action to effect or cause medical treatment of CUMMINGS or to cause her classification to a medical housing unit.

104.    On February 2, 2016, Deputies DUNN, and LINCOLN, while transporting CUMMINGS back to the ECHC from Erie County Medical Center, decided to charge CUMMINGS with various crimes and violations of the New York Penal Law, even though it was evident and these Defendants were aware that CUMMINGS was suffering from severe mental health issues, and additionally was suffering from a broken arm. None of these Defendants took any action to secure her medical treatment following these actions or to ensure that she was housed in a medical unit at the ECHC.

105.    On February 3, 2016, CUMMINGS was given an urgent referral to mental health services. Concurrently, she was designated to "ASeg," meaning Administrative Segregation, another non-medical disciplinary housing unit.

106. On February 3, 2016, as a result of the physical altercation with the deputies, CUMMINGS was again charged with various criminal acts, by Defendant Deputy THURSTON. Defendant Deputy THURSTON took no action to ensure CUMMINGS received medical treatment or was housed in a medical housing unit at the ECHC.

107. The February 3, 2016 Defendants HAYES, GLINSKI, and SCANLON took note, observed, and were aware that CUMMINGS had a plastic brace on her left arm, and were also aware of her serious mental health problems. See Ex. A at pg. 9.

108. On February 3, 2016, CUMMINGS was involved in an incident concerning Defendant LUGO, an incident that none of Defendants BRYMAN, GLINSKI, FRANKLIN, ISCH; FORERO, SCANLON, CARNEY, KOZLOWSKI , GILLETTE, ESFORD, HAYES, WINDRUM, CASCIO, and THURSTON reported to the Commission of Correction within 24 hours as was required as per New York regulation. See Ex. B at Finding #12. None of these Defendants saw to or caused a reclassification of CUMMINGS following this incident, even though her documented presentation of bizarre behavior, mental health issues and a broken arm warranted such review and reclassification. Further, Defendants BRYMAN, GLINSKI, FRANKLIN, ISCH; FORERO, SCANLON, CARNEY, KOZLOWSKI , GILLETTE, ESFORD, HAYES, WINDRUM, and CASCIO noted and observed and were otherwise aware that CUMMINGS had an urgent referral for mental health treatment due to an acute change in behavior and the incident concerning Defendant Deputy LUGO. Nevertheless, none of Defendants BRYMAN, GLINSKI, FRANKLIN, ISCH; FORERO, SCANLON, CARNEY, KOZLOWSKI , GILETTE, ESFORD, HAYES, WINDRUM, and CASCIO reviewed or caused to be reviewed her classification status in response to this physical altercation incident despite awareness of these

Defendants of the altercation and CUMMINGS obvious and apparent serious need for medical treatment.

109.    On February 4, 2016, Defendants Lieutenant GLINSKI, Sergeant SCANLON, and Deputy HAYES observed that CUMMINGS continued to remain in Alpha Seg, a non-medical unit, while she continued to exhibit mental health symptoms requiring emergent medical care, and continued to suffer from a broken arm.  Defendants SCANLON, GLINSKI, and HAYES were aware of these facts and did not take any action to effect or cause to be effected medical treatment of CUMMINGS.

110.    On February 4, 2016, Defendants CARNEY, FRANKLIN, and HAYES observed, noted and were aware that maintenance was scheduled for CUMMINGS sink in Alpha Seg cell unit, and that "Cummings refused to push sink button." See Ex. A at pg. 13. Defendants CARNEY, FRANKLIN, and HAYES observed this bizarre behavior and broken arm yet did nothing more than passively observe and notate the same.

111.    CUMMINGS was arrested on February 4, 2016 as a result of the February 3, 2016 incident involving Defendant LUGO, and none of the February 4, 2016 Defendants including GLINSKI, ISCH, FRANKLIN, BRYMAN, SCANLON, KOZLOWSKI, CARNEY, WEIG, CASCIO, HAYES, and KNEZEVIC saw to or caused her classification review, in violation of New York regulations. Each of these Defendants noted or observed and was aware of CUMMINGS' serious medical condition including mental health symptoms and a broken arm, and each Defendant failed to act to secure CUMMINGS access to medical care or to be placed or cause her to be placed in a medical housing unit.

112.    On February 5, 2016, CUMMINGS was observed to be delusional, minimally engaged, disorganized and responding to internal stimuli by Defendants Deputy ZARCONE,

Sergeant WEIG, and Lieutenant BRYMAN. Later in the morning, CUMMINGS left the ECHC for a Lackawanna City Court appearance. The court ordered that CUMMINGS was to undergo a CPL § 730 examination prior to being indicted. See Ex. B at Finding 17. Defendants ZARCONE, WEIG, EVANS, BRYMAN, and during the next shift, Defendants Lieutenant LODESTRO, Sergeant WEBSTER, and Deputy SZENTESY noted and observed and were otherwise aware of CUMMINGS before and after her return from Lackawanna City Court on February 5, 2016. None of Defendants ZARCONE, WEIG, BRYMAN, EVANS, LODESTRO, WEBSTER, and SZENTESY took any action to secure CUMMINGS medical care despite their awareness of her serious medical conditions and need for medical care, and for her placement in a medical housing unit at the ECHC.

113.    On February 5, 2016, CUMMINGS was transferred to "Delta Control" which is considered to be a housing unit for inmates with known medical conditions.

114.    Between February 5, 2016 and February 8, 2016 no medical treatment was rendered to CUMMINGS by a medical professional, despite being housed in "Delta Control." Defendants Lieutenants FRANKLIN, GLINSKI, LODESTRO Sergeants KOZLOWSKI, KNEZEVIC, BALYS and Deputy BARNES, SENGBUSCH, and SZRAMA were working on February 6, 2016; Defendants Lieutenant LODESTRO, Sergeants LIGHTCAP, and Deputies WHYTE, and Captain WHALEN were working, monitoring observing and otherwise aware of the medical conditions and cell conditions of CUMMINGS. on February 7, 2016. None of these Defendants took any action to secure or effect the medical treatment of CUMMINGS despite their awareness of her serious medical conditions that were being untreated.

115.    On February 7, 2016, upon information and belief, Defendants Deputy SENGBUSCH noted, with Defendants Sergeant WEBSTER and Captain WHALEN observing

and otherwise aware that CUMMINGS refused her meal at 1115 hours. Defendant Sergeant WEBSTER documented in the logbook, with Defendant Captain WHALEN observing and supervising that the water to CUMMINGS cell was to be monitored, used and turned off where CUMMINGS had been observed to have been "flooding her cell."

116.    Upon information and belief, on February 7, 2016, Defendants Deputy SENGBUSCH, Sergeant WEBSTER, and Captain WHALEN additionally noted and observed that CUMMINGS had been splashing water on herself earlier in this shift on February 7, 2016. Upon information and belief, Deputy SENGBUSCH was advised by Sergeant WEBSTER that the water could not be shut off, despite the flooding in CUMMINGS' cell.

117.    On February 7, 2016, at shift change 1500 hours, Defendants Deputy SCIBILIA, Captain WHALEN, Sergeant PERKINS were present, observed and were otherwise aware that "Cummings ripped up vinyl part of mattress. Sgt. to be notified." During this time, CUMMINGS continued to have a broken arm and was continuing to display symptoms requiring of emergent medical mental healthcare. Neither Defendants SCIBILIA, WHALEN, nor PERKINS took any action to secure CUMMINGS medical care despite their awareness of her serious medical conditions and need for medical care. Additionally, Defendants Lieutenant BRYMAN, Sergeant ROBINSON, and Deputy HOLDER failed to take any action despite their awareness of same between February 7 and February 8, 2016.

118.    Upon information and belief, between February 7, 2016 and February 11, 2016 the water to CUMMINGS' toilet in her cell was turned off, without a documented administrative deprivation order, and no indication or record of the period of times the water was turned off and on. See Ex. B at Finding # 25.

24

119. On February 8, 2016, CUMMINGS was scheduled to be transported to ECMC for an evaluation of her severely fractured left arm. Erie County Sherriff Deputy Walter J. Halady failed to transport CUMMINGS. Instead, Halady merely stated that she refused transportation. Defendants Lieutenant LODESTRO, Sergeant CARNEY, and Deputy STISSER took note, observed and were aware of this refusal. As previously stated, and acknowledged by ECHC staff and medical providers, CUMMINGS was not of sound mind and it was evident at this time to these Defendants that CUMMINGS was unable to make medical decisions for herself.

120. On February 8, 2016, CUMMINGS was not transported to ECMC and CUMMINGS received no noted medical treatment until a consultation with Forensic Mental Health Physician, Elizabeth Coggins, M.D. on February 11, 2016.

121. On February 8, 2016, CUMMINGS was transferred from Delta Control to Delta Female. Defendants Deputy STISSER, Sergeant CARNEY, and Lieutenant LODESTRO observed, noted or were otherwise aware that CUMMINGS also refused to go to a disciplinary hearing, to go to Buffalo City Court and to an Orthopaedic appointment, and refused a visit. These Defendants were aware of her severely compromised mental state and broken arm, and did not seek medical assistance for CUMMINGS.

122. On February 8, 2016, upon information and belief, at shift change, Defendants Deputy PATTI, Sergeant LIGHTCAP, and Lieutenant FRANKLIN observed and noted that CUMMINGS' "mattress [is] ripped, stuffing pulled out and room in disarray as noted in previous log." None of these Defendants took any steps to seek or secure medical assistance for CUMMINGS, notwithstanding they made these observations. The previous shift Defendants Lieutenants LODESTRO, Sergeant PERKINS, and Deputy SZENTESY did nothing. Further,

nothing in the logbook indicated that the mattress was replaced, and upon information and belief, it was not replaced.

123.    By February 9, 2016, upon information and belief, Defendants Deputy SOWINSKI, Sergeant KNEZEVIC, and Lieutenant GLINSKI observed that CUMMINGS was urinating on the floor and not showering. Upon information and belief, these Defendants were aware of CUMMINGS serious medical conditions, that she had refused medical treatment repeatedly, that she was in need of medical treatment, and they took no action to secure medical care for her, or to clean her cell of urine, garbage, and other accumulating waste.

124.    On February 9, 2016 Defendants Deputy MAJCHROWICZ, Sergeant PERKINS, and Lieutenant LODESTRO observed, noted and were otherwise aware that CUMMINGS refused her meal. None of these Defendants took any action to effect medical care for CUMMINGS, to ensure that she eat food, or to clean or to cause her cell to be cleaned.

125.    On February 10, 2016, notwithstanding an LPN was on the unit for medications, none of the Defendants including Lieutenants BRYMAN, LODESTRO, Sergeants LIGHTCAP, KNEZEVIC, PERKINS, FORERO, and Deputies PATTI, VAUGHN, MCGAVIS or LIBERTI noted CUMMINGS refusal of medication or took any action to secure medical care or to clean or cause her cell to be cleaned.

126.    On February 11, 2016, Dr. Coggins made an assessment at the urging of the Buffalo City Court who worried something was "terribly wrong" with CUMMINGS and "expressed concerns about her health."  CUMMINGS' need for medical treatment and evaluation was noted by both Lackawanna City Court and the Buffalo City Court, whom, upon information and belief, observed CUMMINGS for a significantly shorter period of time than Defendants in expressing these concerns.

127.    Prior to February 11, 2016, security (presumably Sheriff's Deputies) stated to Dr. Coggins that CUMMINGS appeared "increasingly confused" and had not been eating or drinking. Dr. Coggins opined CUMMINGS may need hospital care, recognizing a serious medical need. Nevertheless, CUMMINGS was never transported to a hospital.

128.    On February 11, 2016, Amy Jordan, R.N. attempted to make an assessment of CUMMINGS to differentiate psychotic disorder versus a general medical concern. No licensed medical doctor was dispatched to make this assessment or diagnosis. Nurse Jordan observed CUMMINGS disheveled, with poor hygiene, her left forearm unsupported and discolored. Nurse Jordan observed "[a] reddish hue [to the left arm] from approx. [sic] 10 feet away."

129.    On February 11, 2016, medical records reflect that Hollani Goltz, a counselor with Erie County Department of Forensic Mental Health, recognized that CUMMINGS "appeared to be decompensated. She is disengaged and her behavior is bizarre." CUMMINGS was not transported to a hospital despite Goltz's inability to assess CUMMINGS.

130.    On February 11, 2016, meal monitoring of CUMMINGS began, as CUMMINGS was not receiving sufficient food or hydration for approximately 10 days. Despite the commencement of meal monitoring, CUMMINGS still did not receive adequate food or hydration and continued to refuse meals, and CUMMINGS was suffering from malnutrition and dehydration.

131.    On February 11, 2016, CUMMINGS was placed on "constant observation" "Delta female 1:1." Between February 11, 2016 and February 17, 2016, all Defendants Deputies working on these days noted, reviewed, observed and where otherwise aware of CUMMINGS' actions every 15 minutes, beginning at 1825 hours. Each and every single Defendant working on these days were aware of CUMMINGS' need for medical and mental health care, as well as the need of

her cell to be cleaned, access to a shower, and the dirty conditions of her cell that were not cleaned, and not one of these Defendants took action to remedy inhumane conditions.

132.    Defendants Deputies between February 11, 2016 and February 17, 2016 noted CUMMINGS lying on the floor or the bunk, and for nearly six straight days, CUMMINGS was observed not to have consumed adequate food, not to have consumed adequate hydration, and she was observed to be often naked, urinating, and defecating in her cell. Despite this, no attempt was made by any of the above-captioned Defendants on any of these days to assist CUMMINGS, to have her transported to a hospital, or otherwise tend to her serious medical needs until February 17, 2017 when her health had deteriorated to the point that she died a few days later.

133.    On February 11, 2016 at 0120 hours, upon information and belief, Defendants Deputy EAGLE, Sergeant FORERO, and Lieutenant BRYAMN observed, noted and were otherwise aware that CUMMINGS was "pounding on door yelling help – I went to see what was wrong and she stated she needed to go downstairs and get out of here – I explained it was after 1:00 in the morning and she said she couldn't breathe – notified Sgt. Forero." Ex. A at pg. 30. Upon information and belief, none of these Defendants took any action to secure CUMMINGS medical care in response to this incident.

134.    On February 11, 2016, Defendants MORIBITO, Lieutenants GLINSKI and LODESTRO, and Sergeant KOZLOWSKI observed, noted and were otherwise aware that CUMMINGS' cell was still prone to flooding, that CUMMINGS asked for water but was unable to push the button for water on her sink.

135.    On February 11, 2016, the CUMMINGS' toilet was again flooded.

136.    On February 11, 2016, upon information and belief, Defendants Deputy D'ALOSIO, Sergeant PERKINS, and Lieutenant LODESTRO noted, observed and were

otherwise aware that CUMMINGS refused medical after being asked through a speaker in CUMMINGS' cell if she would see medical. See Ex. B at Finding #39. There was still no treatment for CUMMINGS' fractured arm as of this time. None of these Defendants took any action to secure her medical treatment, although they were each aware of her serious medical conditions, and the increasingly squalid and deplorable conditions of her cell.

137.    On February 11, 2016, the visiting RN assessment of CUMMINGS was done from without her cell, was inadequate, and did not facilitate a proper medical assessment. See Ex. B at Finding # 39. Hollani Goltz noted that CUMMINGS "appears to by decompensated. She is disengaged and behavior is bizarre" and that CUMMINGS refused to engage. Goltz noted that she "is unable to assess as IM will not engage. IM presents as decompensated, erratic, disengaged and behavior is bizarre." Goltz also noted that CUMMINGS "refused to allow medical to access her," CUMMINGS "presents as groggy, disengaged, disoriented, and bizarre. Thoughts are loose. She has difficulty getting up from her bed. She does not make eye contact." Having observed these severe mental health and medical problems, Goltz simply directed CUMMINGS to "self-refer as needed."

138.    On February 11, 2016 Defendants MORABITO, GLINSKI, A. LODESTRO, KOXLOWSKI, PERKINS, SALVERSON, BRYMAN, FARERO, and MOSS noted, observed, and were otherwise aware of CUMMINGS' multiple refusals of medical treatment and dirty conditions of her cell. Despite their awareness of same, not one of these Defendants took any action to secure medical treatment for CUMMINGS or clean or cause to be cleaned and remedied the conditions of her cell.

139.    On February 12, 2016, upon information and belief, Defendants Deputy MOSS, Sergeant FORERO, and Lieutenant BRYMAN noted, observed, and were otherwise aware that

CUMMINGS was on a two-to-one watch (two guards to one inmate), with no restriction as per Defendant Sergeant PERKINS and Hollani Goltz. Deputy MOSS offered CUMMINGS a dry shirt, and CUMMINGS refused a meal.

140.    On February 12, 2016, Defendant KOZAKIEWICZ temporarily relieved Defendant Deputy MOSS for lunch at 0051 hours. During this time, Defendant Deputy KOZAKIEWICZ was observing CUMMINGS on a 2:1 watch, every 15 minutes, and noting CUMMINGS' conditions. (Defendant Deputy KOZAKIEWICZ would monitor and observe CUMMINGS again on February 16, and February 17, 2016 when CUMMINGS became unable to stand and was transported to Buffalo General Hospital, noting with detail every 15 minutes CUMMINGS' moaning in pain, lying on the floor naked unable to stand, and doing nothing more than document in the logbook CUMMINGS' demise). Defendant Sergeant FORERO conducted a supervisory tour of CUMMINGS' cell following the conclusion of Defendant Deputy KOZAKIEWICZ's relief of Defendant Deputy MOSS.

141.    On February 12, 2016, Defendants Deputy MOSS and RANICK, Sergeants FORERO and KNEZEVIC, and Lieutenants BRYMAN and GLINSKI noted, observed and were aware that CUMMINGS was "washing shirt at sink," and CUMMINGS refused a dry shirt, she appeared asleep in her shirt. These Defendants were aware of CUMMINGS serious medical conditions, and the conditions of her cell, and took no action.

142.    On February 12, 2016, upon information and belief, Defendants Deputy RANICK, Sergeant KNEZEVIC, and Lieutenant GLINSKI noted, observed and were otherwise aware that CUMMINGS was walking around naked, knocking on the door saying "let me out" turning her sink on and off for no apparent reason, putting her wet tshirt on, and walking around her cell, walking around yelling, "knocking and pointing" and "playing with water in the sink," and

"spitting water on the floor." During this period of detention, upon information and belief, from February 12, 2016 to February 16, 2016, CUMMINGS was only offered one shower, in violation of New York regulations. See Ex. B at Finding # 78. During an interview with Commission of Correction staff concerning February 12, 2016, upon information and belief, Defendant Deputy RANICK stated that during this period CUMMINGS "seemed out of it, didn't act like she knew she was in jail." See Ex. B at Finding #45. None of these Defendants took any action to secure or effect the medical treatment of CUMMINGS despite their awareness of her serious medical condition that was being untreated, and they further failed to take any action to rectify the deplorable conditions of her cell and confinement.

143.    On February 12, 2016, Defendants Deputy KEE, Sergeant ROBINSON, and Lieutenant ISCH observed, noted, and were otherwise aware that CUMMINGS' toilet water was shut off and by 3:00 p.m., that CUMMINGS had not urinated in 16 hours, a critical issue suggestive of dehydration and potential renal failure. In addition to refusing her breakfast meal on February 12, 2016, CUMMINGS also refused her lunch meal, facts noted and aware of by these Defendants and none of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

144.    Upon information and belief, on February 12, 2016, Defendants KEE, ROBINSON, and ISCH continued to deny CUMMINGS access to a shower, with KEE noting "Cummings asked to clean up, advised I will need to ask Sgt. whether she can shower." See also Ex. B at Finding #78. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen. On February 12, 2016, CUMMINGS requested leave to shower, but was refused because ECHC was on lockdown. A few hours, upon information and belief, Sergeant ROBINSON offered

a shower and CUMMINGS refused to take a shower at that time. CUMMINGS was not afforded a shower on this shift after her request. See Ex. B at Finding #49. Upon information and belief, this is the only time CUMMINGS was offered a shower from February 12, 2016 and February 17, 2016. Given CUMMINGS' bizarre and afflicted behavior, the increasingly squalid and filthy conditions of her cell which she would come to lay and roll around in, facts of which all Defendants were aware. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

145.    On February 12, 2016, during the 1500 to 2300 hours shift, Defendants Deputy KEE, Sergeant ROBINSON, and Lieutenant ISCH noted, observed, and were aware that CUMMINGS refused dinner, and was asked by Defendant KEE to clean her cell; logbook notations at this time further reveal a mattress was brought to ECHC cell area but not given to CUMMINGS "today, wait to see if behaviors continue to improve so this one is not destroyed." Nothing in the logbook indicates she urinated within the last 24 hours as of 2130 hours on February 12, 2016. Defendant Deputy KEE noted "Cummings asked to clean up advised I will need to ask Sgt whether she can shower" and also noted that CUMMINGs again refused medical.  None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

146.    On February 12, 2016, Tom Chapin NP evaluated CUMMINGS, noting that CUMMINGS refused her lunch tray, that she looked disorganized had a flat affect "mumbling incoherently and waling up to the cell door and staring. She is redirectable. She is refusing meds."

147.    On February 13, 2016, Defendants Deputy BOGGS, Sergeant FORERO, and Lieutenant ISCH observed, noted and otherwise were aware that CUMMINGS was urinating on

the floor with her head placed underwater. Defendant Deputy KOZAKIEWICZ also observed and was aware, together with Defendants Sergeant FORERO, and Lieutenant ISCH, that CUMMINGS "moaning" and "groaning" on this shift. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

148.    On February 13, 2016, CUMMINGS also stated to Hollani Goltz that she had not been eating and stated "I am dying." Goltz also noted that CUMMINGS orientation was that of "severely impaired," speech was "mumbled" and thought process was that of "loose associations, vague." Following these observations, Goltz's advice to CUMMINGS was to "self-refer as needed." None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

149.    On February 13, 2016, Defendants Deputy BOGGS, Sergeant FORERO, and Lieutenant ISCH observed, noted and were otherwise aware that CUMMINGS again refused a meal. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

150.    For February 13, 2016, upon information and belief, the February 13, 2016, CUMMINGS cell had not been cleaned, nor was it ever cleaned by any staff, Defendants, nor did any of the Defendants cause CUMMINGS' cell to be cleaned. It was the finding of the Commission of Corrections that, on and by February 13, 2016, the inaction of staff, including the February 13, 2016 Defendants "allow[ed] the cell to degrade to a deplorable condition" constituting multiple State law and regulatory violations including cell sanitation and treatment of inmates. See Ex. B at Finding #50.

151.    ON February 13, 2016, during Defendants Lieutenant LODESTRO, Sergeant KNEZEVIC, and Deputy RANICK's shift, these Defendants noted, observed and were otherwise aware that CUMMINGS was  on her bunk "making noises," "standing at the door urinating." None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

152.    On February 13, 2016, upon information and belief, Defendant Deputies MACIEJEWSKI and WINDRUM, Sergeant CROSS, and Lieutenant ISCH observed, noted and were otherwise aware that CUMMINGS refused a meal; that hours later, CUMMINGS was observed naked at times, and   "sitting in front of door peeing." See Ex. A at pg. 40. Upon information and belief, none of these Defendants cleaned or caused to be cleaned, CUMMINGS cell. The Commission of Corrections found this state of CUMMINGS' cell and confinement constituted New York statutory and regulatory violations. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

153.    Upon information and belief, Defendants Lieutenant ISCH, Sergeant CROSS, and Deputy MACIEJEWSKI noted, observed, and were otherwise aware that CUMMINGS placed her clothes in the toilet and then attempted to put them back on again, that CUMMINGS was lying in bed "mumbling."  None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

154.    Defendant MACIEJEWSKI informed the Commission of Correction in an interview that on February 13, 2016, during his or her shift, CUMMINGS was naked the whole time, talking to herself, hard to understand, and babbling. See Ex. B at Finding # 54. Deputy

MACIEJEWSKI additionally stated that on his February 13, 2016 shift, CUMMINGS refused medications, and that "urine came out of [CUMMINGS] cell door" into, presumably, the hall area of the ECHC. See Ex. B at Finding #54.

155.    Upon information and belief, in the coming days, the deplorable cell conditions in which CUMMINGS was confined continued to worsen, with, upon information and belief, feces and urine, and accumulating garbage and food being strewn about the cell by CUMMINGS, an inmate incompetent to understand, comprehend, and much less clean her cell, while she suffered from a worsening broken arm, and other health problems, including dehydration and inadequate nutrition. Each Defendant was aware of CUMMINGS' health problems, and none of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

156.    On February 14, 2016, Defendants Deputy MOSS, Sergeant LIGHTCAP, and Lieutenant ISCH observed, noted and were otherwise aware that CUMMINGS was naked all night, laying down on the floor of the bunk, and occasionally moaning; that CUMMINGS was laying on the floor naked and ripping up her cup; that CUMMINGS refused another meal, breakfast. During the shift, along with the other Defendants above in this paragraph, Defendant BOGGS additionally observed and was aware that at 0645 hours, CUMMINGS "urinated all over herself naked." Upon information and belief, at this time, the Defendants did not clean or cause to be cleaned the deplorable cell which they documented observed and were aware was deplorable and filthy, constituting additional instances of the above stated State Law violations. Furthermore, upon information and belief, Defendant BOGGS later informed the Commission of Correction, during its investigation, that CUMMINGS made moaning noises frequently, on this date. See Ex. B at Finding # 55. None of these Defendants took any action to secure medical treatment for

CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

157.    On February 14, 2016, Defendants Deputy MILES, Sergeant LIGHTCAP, and Captain WHALEN observed, noted and were otherwise aware that CUMMINGS was "mumbling," lying on the floor which was then in a state of filth, eating lunch on the same floor, and "lying on bunk crying." There is no indication CUMMINGS urinated during this time. CUMMINGS continued to suffer from severe mental health problems at this time, including decompensation, dehydration, and she still had a broken that continued to worsen and become more displaced. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

158.    On February 14, 2016, Defendants Deputy BOGGS, Sergeant PERKINS, and (continuing) Captain WHALEN observed, noted and were otherwise aware that CUMMINGS was "laying on the floor, eyes closed, nude";  CUMMINGS refused her dinner meal, and there was no indication by Defendant BOGGS that the RN assessed CUMMINGS' meal monitoring form; CUMMINGS was moaning, laying on the bunk and floor which was by then filthy, making noises, refusing medical, mumbling, and nude. Upon information and belief, CUMMINGS' "moaning" as notated in the logbook was an expression of pain as a result of her physical injuries, mental torment, and deplorable conditions of confinement. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

159.    On February 14, 2016, at 2300 hours shift into February 15, 2016, Defendants BOGGS and MILLER, Sergeant WIEG, and Lieutenant BRYMAN noted, observed and were

otherwise aware of "Cummings lying on floor in her food, nude" and "Cummings laying on floor kicking door and floor"; "I/M refuses to wear clothing and has clutter or trash on floor." Upon information and belief, during this shift, Defendant Sergeant PERKINS was making rounds and observed that CUMMINGS refused to wear clothes, and "had trash and clutter all over her cell floor." See Ex. B at Finding #59. Defendants BOGGS and MILLER, Sergeant WEIG, and Lieutenant BRYMAN were aware of Defendant PERKINS observations. None of these Defendants ever cleaned or caused to be cleaned CUMMINGS' cell of trash, food, or urine. See Ex. B. at Finding #59. Moreover, from 3:00 p.m. to 7:00 a.m. on the February 14, 2016 to February 15, 2016 shifts, there was no indication CUMMINGS urinated, suggesting a serious medical condition, being potential dehydration or renal failure while she was being meal monitored, on a two-to-one watch, and being recorded in the logbook by Defendants BOGGS, PERKINS and other February 14, and 15, 2016 Defendants, every 15 minutes.

160.    On February 15, 2016, CUMMINGS continued to be monitored on a two-to-one basis, instead of being taken to a hospital. Defendants Deputy RANICK, Sergeant WADE, and Lieutenant GLINSKI noted, observed and were otherwise aware that CUMMINGS was laying on the floor naked with food and a tray scattered about the cell, making noises, and later playing with her food tray, and yelling. Defendant Sergeant WADE was supervising, and signed the logbook at 0819 hours, apparently noting that CUMMINGS appeared secure. Defendant RANICK continued noting throughout the morning, and Defendants WADE and GLINSKI were aware, that CUMMINGS was "laying naked on the floor quietly," "playing with her tray", "babbling", "rolling around on the floor," "pushing things under door."  See Ex. A at pg. 46. Upon information and belief, none of the February 15, 2016 Defendants cleaned or caused to be cleaned CUMMINGS' cell of food and urine. Further, the 0700 to 1600 hours shift marks 24 hours that CUMMINGS had

37

not urinated. See Ex. B at Finding #60. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

161.    On February 15, 2016, at 1500 hours, Defendants Deputy OSIKA, Sergeant PERKINS, and Lieutenant ISCH monitored, observed and were otherwise aware that CUMMINGS was still lying on the floor naked, and she was pushing scattered food under the door. At 1632 hours, CUMMINGS did not accept her meal tray or eat any food. Defendant Deputy OSIKA's notes reveal that CUMMINGS spent the entire shift laying on the bunk or floor, and at 2245 hours, Cummings was "laying by the door babbling." In an interview with the Commission of Correction, a Defendant Deputy likely working this shift stated that CUMMINGS "seemed out in space with a glazed look in her face." See Ex. B at Finding #61. Further, upon information and belief, no RN visited CUMMINGS, and the end of this shift at 2300 hours marked 32 hours in which CUMMINGS did not urinate. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

162.    On February 15 to 16, 2016 from the 2300 to 0700 hours shift, Defendants Deputy MOSS, Sergeant KOZLOWSKI, and Lieutenant ISCH monitored, supervised, and were otherwise aware that  CUMMINGS continued to be naked and that at 0445 hours CUMMINGS was "laying in front of the door hyperventilating"; at 0645 hours, they observed and were aware that CUMMINGS continued to be "laying on floor, hyperventilating." No action was taken by these Defendants to secure medical care or to clean her cell. Furthermore, these Defendants MOSS, KOZLOWSKI, and ISCH were aware or should have been aware that CUMMINGS had not urinated in 40 hours as of the end of Defendants MOSS, KOZLOWSKI, and ISCH's shift. The

Commission of Correction found, in its investigation that on this date "deputies conducting supervision failed to make immediate notification to medical staff of multiple observations that Cummings was suffering from acute illness." See Ex. B at finding # 62. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

163.    On February 16, 2016 during the 0700 to 1500 hours shift, Defendants Deputy KOZAKIEWICZ, Sergeant KNEZEVIC, and Lieutenant GLINSKI observed noted and were otherwise aware that at 0700 hours "Cummings [is] lying on floor naked, excess trash thrown all over I/M refuses to throw out." Furthermore, Defendants KOZAKIEWICZ, KNEZEVIC, and GLINSKI observed "Cummings lying on floor making noises," "Cummings lying on floor naked." And yet, these Defendants did nothing to clean her cell or seek medical care in violation of New York statutes and regulations. See Ex. B at Finding # 63.

164.    On February 16, 2016, Defendants KOZAKIEWICZ, KNEZEVIC, and GLINSKI noted, observed, and were otherwise aware that at 0800 hours CUMMINGS was "kneeling by door, having a bowel movement" in her increasingly deplorable cell, while she remained decompensated and unbathed, and with a broken arm observable from at least 10 feet away. Further activities notated by KOZAKIEWICZ during her shift included lying on the floor, standing at the door, at 1000 hours CUMMINGS was "pushing garbage under the door when asked by [KOZAKIEWICZ] to throw out, I/M laid back on the floor." Immediately following this entry, Defendant Sergeant KNEZEVIC inspected CUMMINGS' cell and notated the same at 1005 hours. None of the Defendants took any action to have CUMMINGS' cell cleaned of feces, garbage, food, urine or other trash, or secure medical care despite their awareness of the deplorable confinement conditions of CUMMINGS and her serious medical needs.

165.    On February 16, 2016, while still on Defendants KOZAKIEWICZ, KNEZEVIC, and GLINSKI's shift, CUMMINGS was lying on the floor naked at 1030 hours, did not eat her lunch, pushing the lunch tray out of the cell; at 1200 hours, CUMMINGS was "playing in garbage; at 1230 hours, CUMMINGS was "smashing cereal all over her body and floor"; at 1245 hours, CUMMINGS was lying on the floor screaming "I have a sister"; and she continued to remain naked. See Ex. A at pg. 50; Ex. B at Finding #63. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

166.    On February 16, 2016, at approximately 1445 hours, Defendant KOZAKIEWICZ, KNEZEVIC, and GLINSKI noted, observed and were aware V. Tom Chapin, N.P. visited CUMMINGS, and that CUMMINGS refused to speak with Chapin and that CUMMINGS "did not acknowledge." V. Tom Chapin noted that CUMMINGS was defecating on the floor of her cell, rubbing cereal on her body, and throwing food on the floor.  It was noted that she "drank a little milk today" but refused food.  CUMMINGS stated "I don't trust" when food was encouraged.  V. Tom Chapin, N.P. noted CUMMINGS "needs inpatient" but CUMMINGS was never transported to a hospital. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

167.    At 1450 hours on February 16, 2016, KOZAKIEWICZ, KNEZEVIC, and GLINSKI observed, noted and were aware that "Cummings urinated on the floor, does not respond to verbal communication." None of these Defendants summoned medical or cleaned her cell following these observations. None of these Defendants took any action to secure medical

treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

168.    On February 16, 2016 at 1500 hours, Defendants Deputy WINDRUM, Sergeant PERKINS, and Lieutenant LODESTRO relieved Defendants KOZAKIEWICZ, KNEZEVIC, and Lieutenant GLINSKI. Defendant WINDRUM noted "Posted orders on the unit as follows: #87 Cummings, India ICN #146495 2:1 by orders of Sgt. Perkins and Dr. Coggins/FMH; no restrictions and meal monitoring. Cummings currently lying quietly on her bunk." Defendants WINDRUM, PERKINS, and LODESTRO observed, noted and were aware that CUMMINGS was lying on the bunk and floor "moaning" ; that CUMMINGS did not eat her dinner; later, by 1845 hours, CUMMINGS was trying to put her pants on but they were too small, CUMMINGS "appears asleep," and 15 minutes later "lying on bunk moaning."; CUMMINGS lay on the floor and bunk, and then naked having taken her shirt off, staring at the door, moaning; more moaning and lying in front of the door. Upon information and belief, at no time did any of the February 16, 2016 Defendants, including WINDRUM, PERKINS, or LODESTRO clean or cause to be cleaned the urine, food, feces, garbage, food, and other filth in which CUMMINGS was in. Furthermore, a clinical record from this period reported that CUMMINGS' cell was "deplorable." See Ex. B at Finding # 67. Upon information and belief, CUMMINGS did not once stand during this entire shift as a result of her grave medical conditions. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

169.    On February 16, 2016, at 2300 hours, Defendants Deputy KOZAKIEWICZ, Sergeant LIGHTCAP, and Lieutenant BRYMAN started their February 16, 2016 to February 2017 shifts, with KOZAKIEWICZ reviewing the previous log and noting that all was secure and that

CUMMINGS was lying naked at the door, "Cell is dirty, food and garbage all over the floor, I/M refuses to throw out or clean. All appears secure." Deputy KOZAKIEWICZ noted that from 2315 hours until 0000 hours, CUMMINGS was lying on the floor and bunk crying. Defendant LIGHTCAP conducted his supervisory tour and signed the logbook at 0025 hours. Defendant Deputy KOZAKIEWICZ next noted at 0030 to 0047 hours that CUMMINGS was lying on the floor, moaning. None of these Defendants took any action to secure medical treatment for CUMMINGS or to rectify and address her cell and confinement conditions which continued to worsen.

170.     On February 17, 2016, upon information and belief, after days of CUMMINGS lying in filth and deplorable squalor, Defendant KOZAKIEWICZ, who did also work a shift on the previous day of February 16, 2016 and observed the squalid conditions of CUMMINGS' confinement then and severely compromised health, did deign to summon a cleaning crew and Defendant Sergeant LIGHTCAP. Once Defendants KOZAKIEWICZ and LIGHTCAP entered CUMMINGS' cell, they observed CUMMINGS lying on the floor. Defendants KOZAKIEWICZ and LIGHTCAP then asked CUMMINGS to stand so that they could apply mechanical restraints to CUMMINGS. Defendants KOZAKIEWICZ and LIGHTCAP observed that CUMMINGS had difficulty standing and was unable to get into a wheelchair on her own.

171.     On February 17, 2016, CUMMINGS "became unconscious" as per ECHC notes, and had no observable heart rate or respirations.  CUMMINGS was then transported to Buffalo General Hospital where she remained until her death on February 21, 2016.

172.     At Buffalo General Hospital, CUMMINGS was found to be critically ill, having experienced, among other things, cardiac arrest, severe dehydration, malnutrition, and organ failure.

173.    On February 21, 2016, after being hospitalized as a result of injuries sustained in the ECHC, INDIA T. CUMMINGS died.

## CAUSES OF ACTION 1 THROUGH 72 AGAINST EACH DEFENDANT, INDIVIDUALLY NAMED, FOR VIOLATING CUMMINGS' RIGHT TO A MINIMUM STANDARD OF MEDICAL CARE AS GUARANTEED TO HER BY THE FOURTEENTH AMENDMENT

(42  U.S.C. §1983)

174.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "173" of this Complaint with the same force and effect as if fully set forth herein.

175.    For sake of brevity, and mindful of Fed R. Civ. P. Rules 8(a)(2) and Rule 8(d)(1), paragraphs 1 through 174 ("paragraphs above" and "above paragraphs") are incorporated herein and realleged as if stated in their entirety herein, as to each cause of action against each and every one of the 72 individual defendants.

176.    Plaintiff alleges one cause of action of 42 U.S.C. § 1983 for violating CUMMINGS' 14th Amendment right to adequate medical treatment, i.e., one claim per Defendant, totaling 72 causes of action for violating CUMMINGS' right to a minimum standard of medical care. Notice of the personal involvement and particular facts giving rise to each individual Defendant's liability and misconduct is stated in detail in the above paragraphs 1 through 174.

177.The order of causes of action is as it is ordered in the caption. Thus, the first Cause of Action for violating CUMMINGS' right to a minimum standard of medical care is stated against Defendant KOZLOWSKI, the second for the same Cause is against Defendant DIAMOND, et seq.

and continuing in order of the caption to this complaint until the 72nd Cause of Action for the same against Defendant LINCOLN.

178.    Each and every Defendant's actions, in and of themselves, and without reliance upon the allegations concerning the actions of any other Defendant, each one of the 72 Defendants' sole actions, individually and by themselves, violated CUMMINGS' Fourteenth Amendment right to adequate medical treatment. While some Defendants' violations of CUMMINGS' constitutional rights were more egregious than others, all Defendants did individually, severally, and or collectively, at different times and on different days from February 1, 2016 to February 17, 2016 violate CUMMINGS' constitutional right to medical treatment.

179.    As more fully explained in the paragraphs above, as a result of the alleged incident hereinbefore described, the plaintiff's decedent, CUMMINGS, sustained severe bodily injuries which ultimately led to her death on the 21st day of February 2016, and CUMMINGS, prior to her death, sustained great pain, suffering, and physical anguish.

180.    Each and every one of the Defendants were state actors acting under color of law of a statute, ordinance, regulation, custom, or usage of the laws of New York State with respect to the incarceration of, medical care and treatment of CUMMINGS while an inmate in the ECHC.

181.    Defendants, individually and/or jointly and severally deprived adequate medical treatment to the decedent; had knowledge and knew of decedent's condition and consciously disregarded the same; inflicted severe bodily harm and physical injuries without due process, deprived adequate and proper nutrition, nourishment and hydration to the decedent; failed and omitted to provide reasonable and adequate protection for the lives, health, and safety of decedent at the Erie County Holding Center and allowed and permitted the Erie County Holding Center to be and remain in an unsafe, hazardous and dangerous condition as to inflict cruel and inhuman punishment

44

upon plaintiff's decedent, and unconstitutionally deprive plaintiff's decedent of due process under the law.

182.   Each and every Defendant, as specified and described in the above paragraphs, had sufficient time to, and did, properly observe and or was aware of CUMMINGS, who presented at all times described in this Complaint as an individual in desperate need of medical attention.  Since CUMMINGS was in custody, each and every Defendant had a duty to ensure that CUMMINGS' basic needs, including a minimum standard of medical care, were met.  Each and every Defendant showed a deliberate indifference to CUMMINGS' dire physical and mental state.   Such indifference to CUMMINGS' serious medical needs was a proximate cause to her death.

183.   Each and every Defendant was aware of one or more of CUMMINGS' serious medical conditions that included, but not limited to, acute psychosis, decompensation, a broken arm, dehydration, inability to stand, and malnourishment, among other serious medical conditions.

184.   Each and every Defendant acted with objective unreasonableness by failing to act and doing nothing when confronted with and aware of one or more of CUMMINGS' serious medical conditions, which presented upon her arrival at the ECHC, and worsened during the course of her custody within the ECHC to the point where she could no longer stand, and did decease as a result of Defendants' individual and collective failure to act to secure medical care for CUMMINGS.

185.   By failing to act and doing nothing, each and every Defendant individually and at various times between February 1, 2016 and February 17, 2016, caused and perpetuated CUMMINGS' pain and suffering.

186.   By failing to act and doing nothing, each and every Defendant individually and at various times between February 1, 2016 and February 17, 2016, manifested a deliberate

indifference where Defendants knew or should have known of the serious risks to CUMMINGS' health and safety posed by each and every Defendant's failure to act.

187.    Upon information and belief, the aforementioned actions of the Defendants constituted deprivation of the rights and privileges of the decedent, CUMMINGS, secured and protected to her by the Fourteenth Amendment of the Constitution and Laws of the United States. As a result of the aforesaid actions, the decedent, INDIA T. CUMMINGS, was unlawfully subject to cruel and inhuman treatment, was deprived of due process and otherwise tortuously and maliciously harmed by the actions of the defendants, in violation of her Fourteenth Amendment rights as guaranteed in the United States Constitution and actionable under Title 42 of the United States Code § 1983.

188.    Upon information and belief, the incident hereinbefore described and the resultant injuries and damages were caused as a result of the careless, reckless, deliberately indifferent and/or unlawful conduct on the part of each and every Defendant, by inflicting serious physical injury upon plaintiff's decedent, in failing to appropriately supervise and observe plaintiff's decedent while she was incarcerated; in failing and omitting to make and undertake proper safeguards for care and protection of the decedent; in failing and omitting to ensure decedent was provided and supplied with necessary and proper medical care; in failing and omitting to ensure decedent was provided with adequate sustenance and hydration, in failing and omitting to have comprehensive policies, procedures and/or guidelines established and in place to prevent deaths of inmates and in failing to properly train and monitor their agents, servants and/or employees with respect to the proper handling, supervision and monitoring of inmates.

189.    Said violations were done with intent, recklessness, gross negligence, and or deliberate disregard in causing great bodily harm and death and was tantamount to torture. Each

Defendant acted objectively unreasonably, with a lack of professional judgment, and with deliberate indifference to CUMMINGS' serious medical and mental health needs. Each defendant was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS unnecessary wrongful death.

190.    The individual defendants are liable under 42 U.S.C. § 1983 for violating CUMMINGS Fourteenth Amendment rights by depriving her of the minimal civilized measure of life's necessities, including ensuring she consumed drinking water, edible food, had sufficient bedding, a mattress, time out of her cell, and a sanitary living environment. Each of these defendants was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS' unnecessary suffering and death. They acted objectively unreasonably from the standpoint of a reasonable police officer, and with deliberate indifference to those risks.

191.    The actions and inactions of all individual Defendants described in this complaint were committed with intent, malice, recklessness, gross negligence, and/or deliberate indifference to CUMMINGS' federal constitutional rights, justifying an award of punitive damages of every defendant.

192.    As a result of the alleged incident hereinbefore described, the plaintiff's decedent, INDIA T. CUMMINGS, sustained severe bodily injuries, including but not limited to terminal acute renal failure, rhabdomylosis, dehydration, thrombosis of leg veins, and a poorly healing fracture of the humerus, which ultimately led to her death on the 21st day of February, 2016, and plaintiff's decedent, prior to her death, sustained great pain, suffering, and physical anguish.

SEVENTY-THIRD THROUGH ONE HUNDRED FOURTY-FOURTH  CAUSES OF ACTION AGAINST EACH DEFENDANT FOR THE INHUMANE CONDITIONS DURING THE COURSE OF CUMMINGS' CONFINMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

(42 U.S.C. §1983)

193. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "192" of this Complaint with the same force and effect as if fully set forth herein.

194. For sake of brevity, and mindful of Fed R. Civ. P. Rules 8(a)(2) and Rule 8(d)(1), the above paragraphs 1 through 190 ("paragraphs above" and "above paragraphs") are incorporated herein as if restated in their entirety as to each cause of action against each and every one of the 72 individual defendants. There are thus 72 causes of action, (one cause of action per Defendant, based on the various allegations concerning each individual defendant in the above paragraphs), for violations of CUMMINGS' Fourteenth Amendment right to be confined under humane conditions, actionable under 42. U.S.C. § 1983.

195. The order of causes of action is as it is ordered in the caption. Thus, the 73rd Cause of Action for the subjection of CUMMINGS to inhumane conditions of confinement is against Defendant KOZLOWSKI, the 74th for the same Cause is against Defendant DIAMOND, et seq. and continuing in the order of the caption of this complaint until the 144th Cause of Action against Defendant LINCOLN.

196. Collectively, jointly, severally, and or individually, the actions of each Defendants state a cause of action for deliberate indifference to inhumane conditions of CUMMINGS' confinement.

197. At various times as stated above, the individual defendants deprived CUMMINGS of the minimal civilized measure of life's necessities, including ensuring she consumed drinking water, edible food, had sufficient bedding, a mattress, time out of her cell, and a sanitary living environment. Defendants identified and described above, aware of CUMMINGS' mental decompensation and or severe mental health conditions and broken arm permitted CUMMINGS to defecate and urinate on the floor of her cell, and to lay and roll around in it and or garbage, food and other filth, while Defendants' observed, noted and were otherwise aware but took no action to remedy these inhumane conditions.

198. Each of these defendants was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS' unnecessary suffering and death. They acted objectively unreasonably from the standpoint of a reasonable police officer, and with deliberate indifference to those risks.

199. Each and every Defendant's actions, in and of themselves, and without reliance upon the allegations concerning the actions of any other Defendant, violated CUMMINGS' Fourteenth Amendment right to be free of inhumane conditions of confinement, at different times and on different days from February 1, 2016 to February 17, 2016, as stated in the above paragraphs, and that each and every Defendant acted with deliberate indifference to these needs and caused these deprivations through acting or failing to act.

200. Each and every Defendant, prior to her transfer to a medical housing unit, did idly observe and was aware that CUMMINGS presented with severe medical and mental health problems, and nevertheless, these Defendants, who are named and described with particularity in the above paragraphs, did nothing to ensure her transfer to a medical housing unit where she could receive medical care for her injuries and mental disorder.

201. Defendants described in the above paragraphs observed were otherwise aware and documented CUMMINGS groaning, screaming, and crying while frequently naked and lying in her cell, often in garbage, feces, urine, food and other waste for extended periods of time while she suffered from severe mental illness and disorder, a broken arm that worsened under these conditions, dehydration, inadequate nutrition and other illnesses. Aware of these deplorable conditions of CUMMINGS' confinement, Defendants recklessly did nothing.

202. By denying CUMMINGS access to a shower or bathing facilities to ensure hygiene, the Defendants described in the above paragraphs contributed to and created an unhealthy, unsafe, unhygienic, and unconstitutional conditions of confinement. Defendants' failure to act in granting her access to shower and bathe under these conditions constituted inhume treatment.

203. The failure to intervene and ensure CUMMINGS was contained in humane conditions amounts to the Defendants seeking to punish her. CUMMINGS, through no fault of her own due to her incapacitated state, broken arm, and other medical complications that existed upon intake on February 1, 2016 and worsened during her stay at the ECHC, was unable to clean her cell; notwithstanding these infirmities known to Defendants as described above, each Defendant as described above took no action to abate, clean or cause to be cleaned her cell, and some Defendants

204. Such actions, and inactions, by Defendants amount to punishment under the Fourteenth Amendment of the United States Constitution and actionable under 42 U.S.C.§1983.

205. Said violations were done with recklessness causing and or contributing to great bodily harm, suffering and indignity, and ultimately death, and was tantamount to torture. Each defendant acted objectively and subjectively unreasonably, with a lack of professional judgment, and with deliberate indifference to CUMMINGS' serious medical and mental health needs. Each defendant

was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS unnecessary wrongful death.

206. Each and every Defendant is thus liable under 42 U.S.C. § 1983 for violating CUMMINGS' Fourteenth Amendment rights by depriving her of the minimal civilized measure of life's necessities. Each Defendant was aware or should have been aware of the foreseeable risks associated with his or her actions and inactions, which resulted in CUMMINGS' unnecessary suffering and death. They acted objectively unreasonably and with deliberate indifference to those risks.

207. The actions and inactions of all individual defendants described in this complaint were committed with intent, malice, recklessness, gross negligence, and/or deliberate indifference to CUMMINGS' Federal Constitutional rights, justifying an award of punitive damages against each and every Defendant.

208. As a result of the alleged incidents hereinbefore described, the plaintiff's decedent, INDIA T. CUMMINGS, sustained severe bodily injuries which ultimately led to her death on the 21st day of February, 2016, and plaintiff's decedent, prior to her death, sustained great pain and suffering and physical anguish.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum according to proof;

2. For special damages in a sum according to proof;

3. For punitive damages against the individual named Defendants in a sum according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5. For any and all statutory damages allowed by law;

6. For costs of suit herein incurred; and

7. For such other and further relief as this Court deems just and proper.


DATED:    January 15, 2021
            Buffalo, New York                          VANDETTE PENBERTHY LLP


                                      By:   <u>s/ James M. VanDette</u>
                                          JAMES M. VANDETTE, ESQ.
                                          Co-Counsel for Plaintiff
                                          Office and P.O. Address
                                          227 Niagara St.
                                          Buffalo, New York 14203
                                          (716) 803-8400


                          LAW OFFICE OF MATTHEW ALBERT, ESQ.


                                      By:   <u>s/ Matthew Albert</u>
                                          MATTHEW ALBERT, ESQ.
                                          Co-Counsel for Plaintiff
                                          Office and P.O. Address
                                          254 Richmond Ave.
                                          Buffalo, New York 14222
                                          (716) 445-4119



50

15⁰⁵-23⁰⁰  Booking          Monday (2-1-16)   Lt. Franklin (Sgt Weyand   con't

15⁴⁸  I m niacounty Loyd, Brandon - no Issues

15⁴⁹  I m nia county Sawyer, Richard - no Issues

15⁵⁴  I m nia county Hill, Cabrina - no Issues

16⁰⁴  I m Doss collins C.F. Shawer, Robert - no medical paperwork & meds from camusef

~~1640  4 F BCC  CAPOZZI, DIONA~~   returned → sent to medical

1640   4   F  BCC. CAPOZZI, DIONA - NO ISSUES

                    GLENN, JESSICA - NO ISSUES

                    SWIANTEK, MARIAH - NO ISSUES

                    JOHNSON, TERRALISH - NO ISSUES

16⁵⁰  I F LoK cummings, India - no Issues

16⁵³  I F THm coopwood, Dakkla - no Issues

17¹⁵  I m BCC Barclay, Gerald no Issues

17²⁰  3 m BCC Sanders, Dawain - no Issues

          Sanders, Jamail - no Issues

          martin, Judge - no Issues

1816  I-M- CHE- MORRIS, JENON -  NO ISSUES@

18²²  I m che Johnson, John - no Issues

18²⁵  I m che Keller, George - no Issues

18²⁷  I m che walsh, Kevin - no Issues

1833  I M CHE THOMAS, PETER. NO ISSUES

1936  I M CHK SCALES, NIGEL- NO ISSUES

1839  I M CHK GORDON, ALBERT - NO ISSUES

18⁴⁴  I M F che smith, Dana- no Issues

1845  Sgt Weyand - Jarrett #67 ————

2059  I- M- CHE- ECKEL, BRIAN - NO ISSUES @

21²⁶  I m ECS Lopez, Luis - no Issues

2300 -
0700  BOOKING          TUESDAY          FEB 2, 2016          50

          LT. ISCH      SGT. KOZLOWSKI      DEP GOULD (B) GEARY (C)

          ALL DEPTS WILL BE ASKED ① HOWS DETAINEE ACTING ② ANY BIZARRE

          BEHAVIOR ③ ANY VERBAL SUICIDAL IDEATIONS - RM 1142

0037  ANDREWS, STEVEN  RETURNED FROM ECMC - RM6 1142

0041  Sgt Kozlowski Supervisory Tour Ø

0245  CUMMINGS, INDIA  RETURNED FROM ECMC - RM6 1142

0346  JOHNSON TERRY came IM TTO - QUESTIONS ASKED No Issues

.0558  Sgt Kozlowski Supervisory Tour Ø

0700-1500 BOOKING. TUESDAY   FEBURARY 2ND 2016

          LT LODESTRO. SGT DIAMOND  DEP FANETTA,

          RIVERA, SANCHEZ,  HUSSAR, SALTZ, FILIPSKI

          All DEPARTMENTS WILL BE ASKED HOW WAS THE

          DETAINEE BEEN ACTING ANY BIZARRE BEHAVIOR SUICIAL

          IDEATIONS

INTAKE CONTROL     MONDAY, FEB 1, 201_

1500-2300 CON'T  Dep. G. WEGRYN     LT. FRANKLIN     SGT. WEYAND-GARRET

1746 1-M-ECMC RTN ⓖⓡ

1771 2-M-EVANS CT ⓖⓡ

1756 1-F- TO BRANT CT ⓖⓡ

1806 Dep. WEGRYN 10/8 ⓖⱳ

1811 7-M NEW CHEEK   5-M RETURN CHEEK ⓖⱳ

1840 2-Fe RETURN CHEEK   1-Fe NEW CHEEK ⓖⱳ

1901 1-Fe RETURN ELMA ⓖⱳ

1925 PORTER JEFF MOPPING CONTROL AND SALLYPORT ⓖⱳ

1933 2-M RETURN EVANS ⓖⱳ

1951 1-Fe RETURN BRANT/EVANS ⓖⱳ

2003 1-M TO ECMC ⓖⱳ

2017 1-M TO ECCF   5-Fe TO ECCF ⓖⱳ

2023 1-M RETURN ECMC ⓖⱳ

2025 1-Fe TO ECMC ⓖⱳ

2053 1-M NEW CHEEK ⓖⱳ

2116 1-M NEW ECSO ⓖⱳ

2130 1-Fe BAIL ECCF   1-M BAIL ECCF ⓖⱳ

2139 10-M TO ECCF ⓖⱳ

2255 ALL APPEARS SECURE, 12 KEYS, 3 RADIO   Dep. G. Wegryn ⓑ45

INTAKE CONTROL TUESDAY FEB 2ND, 2016

YAND-GAR 2300-0700 DEP. SCHUBERT LT. ISCH   SGT

2255 ALL APPEARS SECURE ⑫ SETS OF KEYS ③ RADIOS ⑧⑧

0040 1-M. FR ELMC ⑧⑧

0100 Dep Russo on for lunch relief ⓔ

0115 DEP SCHUBERT BK FR LUNCH ⑧⑧

0245 1-F- RTN FR ECMC ⑧⑧

0335 1-M-NEW TOWN OF TON. ⑧⑧

0700-1500 2/2/16 Tuesday - Lt Glinski, Dep Russo, Sgt.
Fire + Safety chk complete - all appears safe secure +
operable ITT ⓔ

0707 ⑭ M out BCC ⓢ

0710 1m → A/P Elmira ⓔ

0720 24 mdw in for ECCF ⓔ

0740 5m → ECCF ⓔ
       6f → ECCF ⓔ

0741 Sgt Cross on for Sup hours ⑧1

0750 7 f → BCL ⓔ

0810 1 mw probation ⓔ

0810 1) m to BCC ⓔ

114

2300-0700   ALPHA LONG          TUESDAY 2-2-16              H/C = 24

LT. ISCH              SGT, LIGHTCAP            DEP. M. MILLER

2300   GST. H/C VERIFIED. REC'D ① RADIO ① SCANNER ① C/D/K ⓑ KEYS. FIRE
       SAFETY AND SECURITY CHECK COMPLETE. PREVIOUS LOGS READ. THIS DEPUTY
       ANNOUNCED "MALE WORKING ON UNIT TONIGHT." ALL APPEARS SAFE
       AND SECURE. ⊚

2315   GST. 10-59 ~ 10-2. ⊚

2330   GST. SCANNER EXCHANGE. ⊚

2345   GST. ⊚

0000   GST. ⊚

0005   N/1 SMITH, DANA ICN# 138462 TO ALPHA LONG #16       H/C = 25

0015   GST. NURSE ON UNIT TO COLLECT SICK CALL SLIPS. ⊚

0030   GST. ⊛

0045   STARTED GST, THEN HAD TO ASSIST WITH AN INMATE WHO WOULD NOT
       CHANGE INTO A SMOCK ON THE SEG BLOCK. WAS ABLE TO FINISH
       GST AFTER ASSISTING WITH THE PROBLEM ON ALPHA SEG.

0100   GST.   GST WAS COMBINED WITH THE 0045 GST. ⊚

0115   CIWA fell Lorene A.1

0119   GST LATE DUE TO CIWA NURSE TALKING TO INMATE. ⊚

0127   Lt hghtf speedway tour →17

0130   GST. DEP. MILLER 10-10 LUNCH. ⊚

0145   GST. Le

0200   GST. DEP. MILLER 10-8. ⊚

0215   GST. ⊚

0230   GST. ⊚

0245   GST. ⊚

0300   GST. ⊚

0309   N/1 CUMMINGS, INDIA ICN# 146495 TO ALPHA LONG #18   H/C = 26 ⊚

0315   GST. ⊚

0330   GST. ⊚

0345   GST. ⊚

0400   GST. ⊚

0415   GST. ⊚

0430   GST. ⊚

0445   GST. ⊚

0454   Meds f Frank → ⊚

0500   GST. ⊚

0515   GST. CHOW ON UNIT, ALL OFFERED. #20 SPRATZ, #24 CARTER, #28 BENNETT REFUSED. ⊚

0530   GST. ⊚

0545   GST. TRASH AND TRAYS OFF UNIT. ⊚

0555   #3 JOHNSON, TERRALISHA ICN# 65395 TO B.C.C.   H/C = 25+1 ⊚

0300-0700  ALPHA LONG                TUESDAY 2·2·16                    H/C = 25+1
CONT  LT. ISCH                      SGT. LIGHTCAP                  DEP. M. MILLER
0555  *11 WEEVIE, DAWN ICN# 146271 TO B.C.C.                      H/C = 24+2
      *9 HAYNES-THOMAS, DEBRA ICN# 145945   A/P ECCF              H/C = 23+2
      *10 WASHINGTON, MELINDA ICN# 132009   A/P ECCF              H/C = 22+2
0600  GST.
      *19 HUNTER, RONECIA ICN# 113309 TO B.C.C.                   H/C = 21+3
      *23 MALONADO, LAURA ICN# 146468   A/P ECCF                  H/C = 20+3
      *25 MARTI, THERESA ICN# 146477   A/P ECCF                   H/C = 19+3
0612  Sgt Lighting supervisory tour ~ ins
0615  GST.
0630  GST.
0645  GST.
0655  END OF TOUR. ALL EQUIPMENT TO RELIEF.   H/C = 19+3 . M. Mill 1941.
0700-1500  Alpha Long   Tue. Feb 2 2016   H/C 19+3
Conf. Lt. Lodestro  Sgt. Scanlon  Dep. Lugo
0700 gst, H/C = 19+3  verified, rec'd ①radio, ⑥keys,
① ① CIDIK, ① scanner, flslt completed, previous log:
① read, all appears secure ✱
0712  10-59, 10.2  ✱
0715  gst ✱
0720  C/u gear inspected, ② mops, ② brooms, ② dustpans,
① toilet C/u, ③ spray bottles, ① spray shower scrub
brush ✱
0730 gst, Unit on release ✱
0735  226-Drexinger to Hamb. Ct.  H/C = 18+4  ✱
0738 Razor box on unit ②0 blades intact ✱
Scanner exchange ✱
0800 Ast ✱
0810 28-Bennett Refused WCHOB OB Clinic-
booking notified ✱
0823 12W/A begins ✱
0829 Sgt Scanlon in unit for Sup T
0836  Ast ✱
0855 N/I Simon, Jennifer (ICN 130682) Alog 9  H/C = 19+4  ✱
0900 Ast ✱
0905 9 Simon to Forensics ✱
0920 AP ✱
0943 Med pass Amy P nurse LPN
1000 Ast, Razor box off unit ③ used,
⑰ new and ② cans of shaving cream ✱

116

0700-1500 Alpha long    TW. Feb. 2 2016  [H/c=19.4]
Cont. lt. Lodestro  Sgt Scanlon Dep. Lugo
1015 Sgt. Robinson on unit w/ tour ✓
1018 tour off unit ✓
1030 Ast, Cina ends ✓
1035 c/u gear inspected + off unit ✓
1036 A. Jonson Sch Crw PV
1100 Ast ✗
1103 18-Cummings + 27 ACC to medical ✓
1120 3- Johnson Roed at Court [H/c=19+3] ✓
      Chow on unit, All fed ✓
1123 11-Beenie back from BCC [H/c=20+2]
      19-Hunter back from BCC [H/c=21(+1)]
1130 Ast ✗
1140 18-Cummings escorted back from medical ✓
1145 Chow trays + garbage off unit ✗
1146 Chy+Dawn on unit
1158 4-Willard 9/p ASz 45 [H/c=20+1] ✓
1202 Sst Unit 4/0
1215 6st ✓
1230 Gst ✓
1243 8-Deal to Amh ct [H/c=19+2] ✓
      9-Eernshaw to Amh ct [H/c=18+3] ✓
      14-Makos to Amh ct [H/c=17+4] ✓
1245 Gst ✓
1246 26-Drexinger back from Hamb. Ct [H/c=18+3] ✓
1300 Gst 4/0 lifted ✓ ✗
1304 6-Rios to visit ✗
1322 Library Called @Attend ✓
1330 Ast ✓
1332 ② escorted to library ✗
1343 N/I Whitbeck, Kimberly FMH Alg 2 [H/c=19+3]
      11-Beenie to Forensros ✗
1400 Ast ✓
1405 Sgt Jinelm on unit for Sup Tc
1418 N/I Golden, Dawn (1CW 72735) FMH Delta
      Housing only Alg 3 [H/c=20+3] ✓
1420 3-Golden 9/p DPM 85 [H/c=19+3] ✓
1430 Gst ✓
1445 Gst ✓
1455 End of tour, All equipment to relief [H/c=19.5]

Case 1:19-cv-00139-HEA-VLIG? Document 34-2 Filed 01/25/21? Page 59 of 140

1450/1300 Alpha Long Tue. Feb 2 2016
Unit. Lt                     Sgt.                    Dep.
1500 GST
1500/1330 Alpha Long          Tuesday 2-1-16              [H/c 19+3]
LT Franklin            Sgt Carney          Dep Castoire
1500 GST, H/c verified, rec'd radio, 1 scanner, 1 CUA knife, 6 keys, PrP on unit, fire safety check completed, kiosk, phones, smoke detectors, cvgear and tv's inspected, previous logs read, "Male on unit" announced, all appears safe and secure at this time awc
1515 GST awc
1523 10-59, 10-2 awc
1530 GST, unit on release, AST's to begin, rec offered to unit, #6 Rios, #7 Fuller, #9 Simon, #10 Redeye, #11 Weevie, #13 Dixon, #19 Hunter, #20 Spratz, #23 McClellen, #24 Carter, #25 Smith and #27 Kloc attend awc
1535 Scanner exchange awc
1551 Sgt Carney on Unit Supervisory tour Q
1600 AST awc
1615 Chow on unit, all offered, no refusals awc
1630 AST #12 Earnshaw and #14 Mikos return from court [H/c 21+]
1 #8 Deal Lisa ICN 142684 ROR'd from court per Ann Marie/Records [H/c 21]
1700 AST awc Trash and trays off unit awc
1730 GST, unit on C/D, [H/c 21] awc
1745 GST awc
1800 GST, Dep Castoire 10-10 awc
1815 GST, Dep. Liebig 10-8, "male on unit" announced Q
1830 GST, unit on release, AST's to resume, Dep Castoire 10-8 awc
1833 A Susan ~ A JU ~
1900 AST awc
1914 A Junson w PW
1930 AST awc
1938 Sgt Carney on unit Supervisory tour Q
1944 Meds Thobu
1950 #23 McClellen, Justine ICN 61421 A/P Bail per Liz/Records [H/c 20] awc
2000 AST awc
2010 N/I Hairston, Tamara ICN 146505 to A Long 23 [H/c 21] awc
2030 AST awc
2100 AST awc
2130 AST awc
2200 AST awc
2230 GST, unit on C/D, N/I Bevilacqua, Cheryanne ICN 146506 to A long 23 [H/c 22] awc
2245 GST awc
2256 End of tour awc

118

2366-0700 ALPHA LONG          WEDNESDAY 2-3-16          HVC 22

1    LT. BRYMAN          SGT. FORERO          DEP GILLETTE

2300    GST. RECEIVED ①RADIO, ①SCANNER, ① CID KNIFE AND ② KEYS. F/S/S CHECK
|       COMPLETE. ALL APPEARS SAFE & SECURE. ②

2301    N/I MONGIARANE, JENNIFER (60833) TO A-LG 15. HIC 23

2315    GST ∅

2330    GST. ∅

2345    GST. ∅

0000    GST. ∅

0015    GST ∅

0030    GST. ∅

0045    GST. ∅

0101    GST ∅

0115    GST ∅  1506

117    SGT. FORERO, SUPERVISION TOUR. M∟∟○

0130    GST. ∅

0145    GST. COMMISSARY PASSED, ⑧ BAGS ∅

0200    GST ∅

0215    GST. ∅

0224    N/I ALTMAN, CHRISTINE (140940) TO A-LG 3   HIC 24
|       N/I RUTTY, ERICA (114628) TO A-LG 4   HIC 25
|       N/I GALANUTO, JULIE (145496) TO A-LG 5   HIC 26

0230    GST. ∅

0245    GST ∅

0300    GST. ∅

0315    GST ∅

0330    GST ∅

0344    GST ∅

0400    GST. ∅

0415    GST. ∅

0430    GST. ∅

0449    GST ∅

0459    meds white back refussed  grace 1Hbalow—

0500    GST. ∅

0515    GST. (Nof SERVED. ∅

0530    GST. ∅

|       19 HUNTER, RONELLA  AIP ECCF. HIC 25
|       20 SPRATT, KAREN  AIP ECCF. HIC 24
|       26 DREXINGER, ASHLEY AIP ECCF  HIC 23

0545    GST 19 MILES, SAMANTHA AIP ECCF. HIC 22
|       7 FILLER, BROOKE TO BCC. HIC 21+1

Case 1:19-cv-00164-JAW Document 24-2 Filed 03/25/19 Page 61 of 140

119

Alpha Long                    Wednesday 2-3-16                    HVC 214
Lt. Bryman                         Sgt.                          Dep Gillette

0645  10. Redeye, Emily  To BCC. HVC 2042

846  Settlezed, Supervisory Tour  TALKED

0650  GST. ∅
0655  GST. ∅
0700  Good
0705  GST ∅
0705  End of Tour ∅

0600/1500  Alpha Long          Wednesday February 3, 2016
Mielinski     Sgt. Scanlon     Dep Esford 1375

0700  GST. HVC=2042 Rec'd radio, (1) keys, (1)
(3)  O/B Knife. 7x15 check complete. Previous
logs read. Razorbox on unit w/ (20)
razors (2) cans of cream. Laundry list
on unit for 4/m csignup. BE
0715  GST. BE
0720  10.59/10.2. BE
0730  GST. Unit released. GST resume. Rec
called @ attend. BE
0735  m list on unit for 4/m csignup. BE
0750  #2 Whitebeck, #9 Simon, #25 Smith
to Check/Amh Ct. HVC=17+5 BE
#28 Bennett, Ashley A1P T15 HVC=16+5 BE
0800  GST. BE
0810  P.A. Art on unit to assess detoxing 4/m
in Alpha atrium. BE
0815  Vol Troiden on unit for Supt
0820  GST. BE
0900  Nurse Lupe on unit
0900  GST. BE
0915  Rec'd (1) NI: Mcintosh, Tausa (131153) to
Along 20. HVC=1715  #5 Cialatoto to
ming 14 per Dep Burdey class. BE
0920  BE
0955  #15 Cummings, Maria to Med & ZMH. BE
1000  GST. BE
1010  #18 Cummings A1P A Seg. HVC=16+5 BE
1050  GST. BE
1048  meds passed VMG
1100  GST. BE

82

7:00 3:00   Wednesday - Feb. 3. 2016   Alpha Seg
7:00   Naeps   Lt Glaski   Sgt Scanion
7:00   Wrp all appear secure 4e5 Radio
(6) Keys 1-40 Knife (1.1) 1-Scanner #124
Fire Safety equip / first aid kit / T.V. Touch
Pads / Plexiglass - intact. "31 Robinson, Al-Shariyfa
(1.1).
7:10 AOT begin
7:25 C/o clean in
8:10 #31 Robinson, Al-Shariyfa @ Med
7:35 - Narris Myweh @ Med
8:18 #34 Vucetic, Margaret @ Co.ct       @c 2/+1
0837 Sgt Scanlon on unit for Sap T-
0930 Meds passed   Marable   Refused x3 4MG
(P) 1010 N/±29 Cummings, India (1216-495) - Plaster. Brace on left Arm
→ Assaultive. Dep / Sup - Cocked       @c 5 +1
11:20 34 Vucetic back from ct   @e 6
(P) 1:30 lunch Served
1:00 Trays + Trash out
4- 12:00 Locken Gurp
12:15 ct & &
12:20 C/st. POE
12:45 C/st. POE
13:00 Wrp
13:05 AOT begin - all Cocked all relieved
1340 So Row n Vet Fe St Tur
13:30 Florence (Sull) on @ Valley w/29 Cummings. Index
1400 locken wsp 4e6
1445 Wrp all appear secure
14:55 Equip to relief Dep -- (Naeps 3-7)
15:00-23:00 ALPHA SEG. WEDNESDAY FEB. 3, 2016 H/C=6
        LT. FRANKLIN   SGT. CARNEY       DEP. WIN DRUM
15:00 GST, H/C=6 VERIFIED. RECEIVED (6) KEYS AND (1) RADE
        AND (1) SCANNER. FIRE/SAFETY/SECURITY CHECK
        COMPLETE. ALL EQUIPMENT APPEARS TO BE IN GOD
        WORKING ORDER. P&P ON THE UNIT, PREVIOS
        LOGS AND CURRENT AD.SEG. CROER REVIEWED
        WAITING TO BE REVIEWED; NOT ON THE UNIT AT
        THIS TIME. ALL APPEARS TO BE SAFE AND
        SECURE AT THIS TIME. @ 1408
15:15 GST @ 1418

83

0600-2300 ALPHA SEG, WEDNESDAY FEB. 3, 2016    H/C = 6
(CONT.) LT. FRANKLIN   SGT. CARNEY.                    DEP. WINDRUM
1430 GST, HIGH SIDE ON RELEASE; GSTs CONTINUE. 1418
1535 SCANNER EXCHANGE. 1418
1541 Sgt Carney on unit Supervisory tour @
1543 AD. SEG. ORDER ON UNIT FOR #29 CUMMINGS; DEP. &
     CUFFED ESCORT. 1418 NO COMINGLE. 1418
1600 GST. 1418
1605 SGT. EVANS ON UNIT FOR LIGHT INSPECTION; 2
     LIGHTBULBS OUT; WORK ORDER TO BE SUBMITTED
1607 CHOW ON THE UNIT, ALL SERVED. 1418
1620 GST. 1418
1636 TRAYS/TRASH OFF THE UNIT. 1418
1639 INDIGENT LETTERHEAD DISTRIBUTED. 1418
1645 WHITE LAUNDRY COLLECTED. 1418
1700 GST. 1418
1732 GST, UNIT ON LOCK-DOWN, H/C=6 VERIFIED. DEPUTY    1418
     WINDRUM 10-10 - LUNCH/RELIEF. 1418
1736 N/I TO #30; LISUAN, PACHECO ICN#104654, 4.7 13y CODE
     OF SGT. CARNEY AND FMH/K. WARD - AD SEG/KUP    H/C
1745 GST. 1418                                         PENDING
1800 GST, DEP WINDRUM 10-10/LUNCH. 1418
1815 GST
1830 GST, HIGH SIDE ON RELEASE, GSTs CONTINUE. 1418
1858 #30 PACHECO ESCORTED TO FMH/MEDICAL. 1418
1900 GST. 1418
1929 Sgt Carney on unit Supervisory tour @
1930 GST. 1418
1940 meds Trouble
2000 GST. 1418
2002 #14 INMATE FROM C.OBS. ON UNIT FOR PHONE CALL. 1418
2010 INMATE OFF UNIT. 1418
2015 INMATE FROM C.OBS. ON UNIT FOR PHONE CALL. 1418
2019 INMATE OFF UNIT. 1418
2030 GST. 1418
2040 INMATE FROM C.OBS. ON UNIT FOR PHONE CALL. 1418
2050 INMATE OFF UNIT. 1418
2100 GST. 1418
2130 #36 MACABLE REFUSED REC. 1418 GST. 1418
2200 GST. 1418
2230 GST, UNIT ON LOCKDOWN, H/C=7 VERIFIED. 1418

84

1500-2300 ALPHA SEG. WEDNESDAY FEB. 3, 2016  [H/C = 7]
(CONT.)  LT. FRANKLIN  SGT. GARNEY      DEP. WINDRUM
2245 GST. ⓧ 1418
2255 END OF TOUR - KEYS TO Z-1 DEPUTY, SCANNER/RADIO
      TO CENTRAL CONTROL - LOG BLOCK TO LONG BLOCK ⓐ

2300-0700 ALPHA SEG        THURSDAY 2/4/16        [H/C = 7]
      LT. ISCH              SGT. KOZLOWSKI      DEP. CASCIO
    2300 GST. RECEIVED ALPHA LONG EQUIPMENT. THIS DEPUTY ANNOUNCED
        "MALE DEPUTY ON UNIT TONIGHT". FIRE, SAFETY + SECURITY
        CHECKED, PREVIOUS LOGS READ. ALL APPEARS SAFE + SECURE. ⓐ
    2320  10-59 / 10-2 ⓐ
    2330 GST. ⓐ
    2345 SCANNER EXCHANGED. RECEIVED # 128. ⓐ
    0000 GST. ⓐ
    0030 GST ⓐ
  ⓐ 0043 Sgt Kozlowski Supervisory Tour ⓐ
    0047 MEDICAL STAFF ON UNIT COLLECTING SICK CALL SLIPS. ⓐ
    0100 GST ⓐ
    0130 GST ⓐ
    0200 GST. ⓐ
    0230 GST ⓐ
    0300 GST ⓐ
    0330 GST ⓐ
    0400 GST ⓐ
    0430 GST ⓐ
    0434 Meds of Evans ⓐ
    0500 GST. ⓐ
    0530 GST. SHOW ON UNIT ⓐ
    0545 GST ⓐ
    0550 TRASH + TRAYS OFF UNIT. ⓐ
    0555 # 35 HARRIS, MYWEH (89884) TO BCC  [H/C = 6+1] ⓐ
    0600 GST ⓐ
    0604 Sgt Kozlowski Supervisory Tour ⓐ
    0615 GST. ⓐ
    0630 GST ⓐ
    0645 GST ⓐ
    0655 END OF TOUR. ALL EQUIPMENT TO RELIEF. ⓐ

Case 1:19-cv-00189-LAW-WLC Document 28-2 Filed 05/25/21 Page 65 of 140

85

300 Thursday - Feb - 4. 2016  Alpha Sis
     Hairs          At Glaski  .  9 of Scanion
700 Cuip All appear secure  c/c 6+1 #35 Harris
    Howard @ ct. Radio (c) keys 1- clip Knife (1.1)
    (c)  1- Scanner +20. Fire Safety equip / Finat Aid Kit/
    T.V. Touch Pads / Plexiglass intact. 29 Cumming
    Media ; 30 Pacheco Liason- Ad Sis order. #31
    Robinson, Al- Shariyfa (1.1).
710 AT begin
700 c/o green in
800 Dic Called - all returned
805 #31 Robinson, Al- Shariyfa - @ Wal
824 30 Pacheco, Wovan @ Wal
904 36 Marable, Beryl in Aco to shower
920 Meds MC
940 Linen Change
1100 Lunch Served- Ou Fed
1130 #32 McKoy, Camille (7-1735) ot.1 - KLWP til 3/5/16
8     Dep/oup- Cuffed behind back - AD sig or sea    @c 7+1
1139 #31 Robinson, Al- Shariyfa @ Wal
1100 Maint on c/h c/o Fix #32 light- Cann't Fix have to call electric
1151 pw Ahead #35 Harris, Howard ROL Front ct    c/c 7
1200 pockin Cuip  @c 7
1015 Cuip
1230 Cuip
1245 Cuip
1300 Cuip
1305 At begin
1320 3 of Scanion on went for Sup T
1320 (2) @ library #33 3rt
1344 Am from Aco on how side using phone
1400 #36 Marable, Beryl @ Amh. ct         c/c 6+1
1430 pockin Cuip   c/c 6+1  #36 @ ct
1445 Cuip All appear secure
1455 Equip to virtul Sep             Hairs 575
1500-24hr Hairs          At          S, t
1500 CUTp All appear secure c/c 6+1  #36 @ ct.
     Radio (c) keys 1- clip Knife (2.1). Fire Safety
     equip / First Aid Kit/ Plexiglass / T.V + Touch Pads
     intact. 29 Cumming  #30 Pacheco - Ad Sis order
     #31 Robinson, #32 McKoy (2.1) McKoy KLWP til 3/5/16

1800-2300   Thursday - Feb. 4/. 2016 Alpha Seg

Nacks     Lt. FRANKIN    Sgt CARNEY

1515   WLP     Ole 641

1516   Dep MANNS 10-8 for reminder of shift ⊖

1530   GST, unit on release, MNO deputy on Unit, ANNOUNCED ⊖

1540   I/M #36 MACABLE RTN From court [H/C 7] ⊖

1547   Sgt Carney on Unit Supervisory tour ℓ

1606   GST ⊙N

1605   Chow on Unit, All Fed ⊖

1630   GST, TRASH & TRAYS off Unit ⊖

1700   GST ⊖

1730   GST, Unit lockdown, Dep MANNS 10-10 To lunch ⊖

1745   GST

1800   GST, Dep MANNS 10-8 From lunch ℓ/

1815   GST

1830   GST, unit on release ⊖

1831   Maintenance on unit to check # 29 sink, Inmate #29 cummings
refused to push sink Button, Maintenance off unit ℓ

1857   Sgt Carney On unit Supervisory tour Q

1900   GST ℓ

½ 1930   GST ℓ

1932   Med Pass, D. Harris LPL

2000   GST ⊖

2030   GST ⊖

2043   Outgoing mail collected ⊖

2050   I/m # 30 Pacheco escorted Ogp/Dep to medical ⊖

2100   GST ⊖

2130   GST, N/I Minnifield, KAREN (72374, DTox, 2:1) N/P Aseg #35
[H/C 8] ⊖

2200   GST, Rec called # 36 MArable (Refused) ⊖

2230   GST, Unit lockdown ⊙N

2255   End of tour, All equipment to relief [H/C 8] ⊖

2300-0700   Alpha Seg      Friday 2-5-16        [H/C 8]

Lt. Bryman          Sgt. Weis         Dep. Zurow

2300   GST. Relieved log book. Previous logs read "Mily on Unit announced. Av
secure at this time ℓ

2330   GST ℓ

0000   GST ℓ

0030   GST ℓ

0100   GST. ① bag of commissary passed & issues ℓ

0123   Sgt White on unit for Sprimy boy

23a.ow Alpha Seg                    Friday 2-5-16              A/c = 8
        Lt. Bryman                  Sgt. Weis                  Dep. Zarcone

0130   GSTO
0200   GSTO
0230   GSTO
0300   GSTO
0330   GSTO
0400   GSTO
0430   GSTO
0500   GSTO
0512   Sgt White on count for [illegible] turn →
0530   GST (how on unit all fed & refusals)
0600   GSTO
0615   GSTO
0630   GSTO
0645   GSTO
0700   300   Harris        Lt. Glinski        Sgt Evans
              OUP All appear secure A/c 8 Radio (6) keys
              1-CO knife 1. Scanner #136. Fire Safety equip/Front
              Aid kit/ T.V & Touch Pads/ Plexi glass - intact: 29
              Cummings, India, 30 Pacheco, Kisvan - Ad seg order.
        E     31 Robinson, Al-Shamyfa, 32 McKoy, Camille (2.1)
              32 McKoy, Camille - KLMP tel 3/5/16. 35 Minnifield
              Karen (2.1)
0710   SGT Evans on unit for Supervisor Tour (E)
       725   ADT begin
       730   C/o Glanin
       800   36 Marable, Beryl in ACO to shower
       851   Med Pass Amy Prieve in
       955   #29 Cummings, India @ hash. it              11/c 7+11
       1012  30 Pacheco, Kisvan @ lap/ Forensic
       1120  Lunch Served - All Fed
       1130  32 McKoy Camille - released bee
       1135  29- Cummings ret from Crt    A/c = 8
       1130  Trays & Trash in C
       1210  OUP
       1215  GST Ⓔ
       1230  CoUP
       1245  GUP
       1300  GUP
       1307  SGT Evans on unit for Supervisor Tour (E)

88

Tier 3rd/cmd        Friday- Feb- 5- 2016    Alpha Ses
        (Nacho)       at Glinski    S.f.
1310  *30 Pacheco broven out to chow cells           4c8
1405  :35 Mannfield, Karen O/p ACO 2                Ckc 7
1406  Forensic in C/o (Walking w) -29 Cummings, Sandra
1430  Lockin Lurp H/c 7
1445  Lurp all appear secure —
1455  Equip to relief Dep — (Nacho o 43)
1500  Alpha Ses      Friday 2-5-16            [H/c = 7]
2300  Lt. LoDestro       Sgt Webster              Dep Szentesy
        Gst, H/c verified, received ⑥ Keys ① scanner ① radio,
        F/s/s check complete previous logs will be redd, "Male on
        Unit" announced, Tvs· phones· Kiosks inspected and appear in
        good orde, All appears safe and secure at this time
 1500  Gst
 1513  10-59, 10-2
 1528  Scanner exchange #120
 1530  Gst, unit on release, Gsts continue due to #29/30 being lock
        ↓ in
 1543  K. Hoover | K. King  Sick Call
 1546  US mail passed
 15⁵²  _____, ___ ____ l___, #w/Locati
        TO BE CORRECTED, D. WEBSTER #5-28
 1600  Gst
 1605  Chow on unit all served ⊗ returned
 1625  trash and trays off unit, #29 Cummings begins time out
 1630  Gst
 1640  #29 Cummings ends time out⊗
 1645  #29 Cummings ICN 146 495  A/p to DFM 87 [H/c = 6]
 1700  Gst
 1730  Gst, Unit on Y/D
 1745  Gst
 1800  Gst, Dep Szentesy 10·10 lunch
 1815  Gst, Dep Castoire 10-8, "Male on unit" announced  time
 1830  Dep 10-8, Gst ⊗ Unit on release ②
 1846  #30 Pacheco begins time out, No Gsts Gsts begin
 1900  Gst.
 1901  #30 Pacheco ends time out
 19¹²  _____ ___ ___ co___, 1°⁴
        __ __ D WEBSTER #5-21 ⊗
 1929  Meds Molkin ⊗

Case 1:13-cv-00155-HSO-WDCF Document 84-2 Filed 06/29/17 Page 69 of 140

Friday Feb 5, 2016

89

1740-1500 Cumprabito                  P. Benski
                          RTS ALodestro          Sgt M. Knezevic.

0825 Sick call in progress H/C 4
0830 AST
0900 AST
0930 AST. T. Chapen begins FMH clinic
1000 AST.
1030 AST
1100 AST
1120 trayp in
1130 AST
1140 trayp out
1200 Lock dn H/c 4 got
1203 got
1211 linen change done
1224 got
1228 got
1243 GST
1258 GST
1300 Lock dn over H/u 5 open AST's resumed
1308 Community mtg held Sgt. Knezevic + Megan
1324 SGT KNEZEVIC ON UNIT - SUP TOUR E82.
1336 mtg over Dr Martin conducting FMH clinic
1330 AST.
1400 AST
1430 Lock dn got. H/c 4
1447 got
1455 Final H/c 4 cum/oralis
1500/2300 Delta Control                Friday 2-5-16
            Lt Lodestro              SGT Robinson        Dep Liberti
1500 GST. Received ① Radio ① 98 Knife ① Scanner ⑬ Keys F/s/s
      check Computer, Prev logs read. All appears secure &
1615 10-59 10-2
1430 Scanner Exchange
1530 GST. Unit on Reserve. AST resume
1535 U/O mail passed out
1540 Treatments begun
1600 AST
1613 SUPERVISORY TOUR SGT. ROBINSON
1650 AST chow on Unit, Sick call starts
1650 N/A Cumming, India (146495) Dep/Sup Ad-seg DFM#87 1/c= 5

90

1500/2300
(Cont)    Delta Control                    Friday 2-5-16        H/C = 5
          Lt Lodestro              Sgt Robinson              Dep Liberti

1700  AST, Trash & Trays off Unit ⊙
1730  GST, Unit on 4/5  H/C = 5  ⊙
1800  GST. Dep. O'Neill 10-8 to DFC ⊙
1815  GST, Lube due to speaking w/ inmate ⊙
1830  GST, Unit on Relive AST rescame ⊙
1900  AST ⊙
1930  AST, Treatments begn ⊙
1939  Meds., N. Adisa LPN
1946  SUPERVISORY TOUR. SGT. ROBINSON ⊙
2000  AST, U.S. mail collected, C/A passed ⊙
2030  AST ⊙
2100  AST ⊙
2150  AST ⊙
2145  Meds, N. Adisa LPN
2200  AST ⊙
2230  GST, Unit on 4/5  H/C = 5  ⊙
2255  End of Tour, Equip. to Relive ⊙

23⁰⁰-07⁰⁰  Delta Control  SATURDAY      2-6-2016
          LT. FRANKLIN    SGT. Kozlowski    Dep BARNES #1117

2300  GST  H/C=5  RECV'D ① RADIO ③ Keys② SCANNER① C/D/R. FTS check
      complete. PREVIOUS logs READ. ALL APPEARS SECURE A.T.T ⊙
2315  10-59, 10-2 ⊙
2330  GST ⊙
0000  GST ⊙
0030  GST ⊙
0031  Sgt Kozowski Supervisory Tour ⊙
0100  GST ⊙
0130  GST ⊙
0200  GST ⊙
0230  GST ⊙
0300  GST ⊙
0330  GST ⊙
0400  GST ⊙
0430  GST ⊙
0500  GST ⊙
0530  GST ⊙ Chow served. ALC F ⊙ ⊙
0553  Sgt Kozlowski Supervisory Tour ⊙
0600  GST ⊙
0615  GST ⊙
0630  GST, H/C=5  ALL APPEARS SECURE A.T.T. ⊙
0645  GST ⊙
0655  END of TOUR Dep Barnes #1117

Case 1:19-cv-00153-AW-LGT Document 34-2 Filed 05/28/20 Page 71 of 140

0700 DELTA CONTROL    SATURDAY - FEBRUARY 6, 2016

(1500) LT. GLINSKI, SGT. KNEZEVIC, DEP. SENGBUSCH

0700 C.S.T. HIC=5 VERIFIED, RECEIVED RADIO, C/D KNIFE 13 KEYS AND SCANNER. PREVIOUS LOGS READ. FIRE, SAFETY, SECURITY CHECK COMP- LETE. ALL APPEARS SAFE AND SECURE AT THIS TIME. Y. Sengbusch 1262

1715 C.S.T. Yao 1262

0722 10-59 / 13-2 Yao 1262

0738 C.S.T. - LOCK/DOWN LIFTED, UNIT ON RELEAS A.S.T'S BEGIN. Yao 1262

0732 SCANNER EXCHANGED. Yao 1262

0800 A.S.T. Yao 1262

0810 SGT KNEZEVIC ON UNIT - SUP TOUR C82

0820 TREATMENTS BEGIN. Yao 1262

0830 A.S.T. Yao 1262

0900 A.S.T. Yao 1262

0914 meds - EDSchroeder Jen (Refusal-Anna Munoz)

0915 #84- MUNOZ, ANNA REFUSED MEDS AND MORNING TREATMENT. Yao 1262

0930 A.S.T. Yao 1262

1000 A.S.T. Yao 1262

1005 TREATMENTS END. Yao 1262

1030 A.S.T. Yao 1262

1045 TREATMENTS BEGIN. Yao 1262

1100 A.S.T Yao 1262 TREATMENTS END. Yao 1262

1115 CHOW ON UNIT, SPECIAL DIETS RECEIVED Yao

1130 A.S.T. Yao 1262

1150 TRASH AND TRAYS OUT. Yao 1262

1200 C.S.T. - LOCK/DOWN ON UNIT → HIC=5 Yao 126

1215 C.S.T. Yao 1262

1230 GST

1245 GST

1300 C.S.T. - LOCK/DOWN LIFTED, UNIT ON RELEASE A.S.T.S. RESUME. Yao 1262

1312 SGT KNEZEVIC ON UNIT - SUP TOUR @C82

1330 A.S.T. Yao 1262

1345 #84-MUNOZ COMPLAING OF FEELING SICK NURSE LISA SEEN HER FOR EVALUATION AND GLUCOSE READING. Yao 1262

1400 A.S.T. Yao 1262

92

(0700 - DELTA CONTROL SATURDAY - FEBRUARY 6, 2016
(1500) LT. GLINSKI   SGT. KNEZEVIC   DEP. SENGBUSCH
1430 C.S.T. - LOCK/DOWN ON UNIT → [H/C = 5] yao11
1445 C.S.T. yao1262
1455 END OF TOUR, EQUIPMENT TO RELIEF: ALL
    APPEARS SAFE AND SECURE AT THIS TIME.
    L. Sengbusch #1262

| 1500 - 2300 | Delta Control | Saturday 2-6-16 | [H/c = 5] |
| | Lt. Lodestro | Sgt. Balys | Dep. Szrama #1459 |

1500   GST. Received ① Radio, ⑬ Keys, ① c/o Knife, ① Tablet. Previous Logs Read
       Fire Safety - Security Check Complete. Kiosks, Phones + TV Inspected.
       All Appears Safe + Secure. ☞

1523   10-59 / 10-2 ☞

1528   Scanner Exchange. ☞

1530   GST. Unit on Release. AST's begin. ☞

1600   AST ☞

1605   # 84 Munoz refuses Medical. ☞

1615   Chow on Unit. All offered. Ø Refusals. ☞

1630   AST ☞

1700   AST. Trash + Trays off Unit. ☞

1730   GST. Unit on Lock Down. [H/c = 5] ☞ Dep Szrama 10-10 ☞

1745   GST ☞

1800   GST ☞ Dep Szrama 10-8 ☞

1815   GST ☞

1830   GST. Unit on Release. AST's Resume. ☞

1900   AST. Rec Called. All Refuse. ☞

1930   AST ☞

1950   Med Pass, D. Ham  JPN

2000   AST ☞

2030   AST ☞

2100   AST ☞

2130   AST ☞

2142   Sgt Balys, Supervisory for ☞

2200   AST ☞

2230   GST. Unit on Lock Down. [H/c = 5] ☞

2245   GST. ☞

2255   End of Tour. All Equip to Relief. L Szrama #1459

| 2300 - 0700 | DELTA CONTROL | SUNDAY 02/07/16 | [H/c = 5] |
| | LT. LODESTRO | SGT. LIGHTCAP | DEP. WHYTE |

2300   GST. M/c verified. Rec'd. ① radio, ① scanner, ⑬ keys, ① c/o knife. P/S/S checks complete
  ↓    Prep on unit, previous logs read. All appears safe and secure at this time. ☞

93

| | DELTA CONTROL | SUNDAY 02/07/16 | |
|---|---|---|---|
| 2200-0700 (LURITH) | LT. LODESTRO | SGT. LIGHTCAP | DEP. WHYTE |

4c = 5

2016
(SC)
'20/16

L
Md.

Read.

2317  10-59/10-2 . ✓

2330  GST. ✓

2341  Scanner exchange. ✓

0000  GST. ✓  Nurse on unit collecting sick call slips. ✓

0030  GST. Dep Whyte 10-10 lunch Dep Barnes 10-8 relief ✓

0100  GST. Dep. Whyte 10-8/Dep. Barnes 10-7. ✓

0110  Lt highlef supervisory tour ∽←↩

0130  GST. ✓

0200  GST. ✓

0230  GST.

0300  GST. ✓

0330  GST. ✓

0400  GST. ✓

0430  GST. ✓

0500  GST. ✓

0516  Chow on unit. All fed, & refusals. ✓

0530  GST. ✓

0543  Lt highlef supervisory tour ∽←↩

0546  Trash and trays off unit. ✓

0600  GST. ✓

0615  GST. ✓

0630  GST. ✓

0645  GST. ✓

0655  End of tour. Equipment to relief. All appears safe and secure at this time. ✓#169

0700: DELTA CONTROL  SUNDAY - FEBRUARY 7, 2016
(1500) CAPTAIN WHALEN, SGT. WEBSTER DEP. SENGBUSCH
0700 G.S.T. - IHIC = 5 VERIFIED, RECEIVED RADIO,
13 KEYS, C/D KNIFE AND SCANNER. PREVIOUS
LOGS READ. FIRE, SAFETY, SECURITY CHECK
COMPLETE. ALL APPEARS SAFE AND SECURE
AT THIS TIME. J. Sengbusch #1262

0713  10-59/10-2 yas#262

0715  G.S.T. yas 7262

0725  SCANNER EXCHANGED. yas #1262

0730  G.S.T. - LOCK/DOWN LIFTED, UNIT ON RELEASE.
A.S.T.'S BEGIN. yas#1262

0800  A.S.T. - TREATMENTS BEGIN. yas#1262

0844  [illegible] #/SUBLDUTS
TO BE CORRECTED. D. WEBSTER #1710

94

(0700-) DELTA CONTROL SUNDAY-FEBRUARY 7, 20__
(1500) CAPTAIN WHALEN SGT. WEBSTER DEP. SENGBU___
0815 #84-MUNOZ REFUSES MEDICAL. ya__
0830 A.S.T. ya0 1262
0850 #84-MUNOZ REFUSES MEDS. meds D.Schroder
0900 A.S.T. ya0 1262
0916 SICK CALL BEGINS. ya0 1262
0930 A.S.T. ya0 1262
1000 A.S.T. ya0 1262
1030 A.S.T. ya0 1262
1046 TREATMENTS BEGIN. ya0 1262
1100 A.S.T. ya0 1262 #84-MUNOZ REFUSES MEDICAL
1116 CHOW IN, SPECIAL DIETS RECEIVED.
      #87-CUMMINGS REFUSED. ya0 1262
1130 A.S.T. ya0 1262
1200 GST UNIT 4D [H/c5] @
1215 GST @
1230 C.S.T. ya0 1262
1246 C.S.T. ya0 1262
1300 C.S.T.-LOCK/DOWN LIFTED, UNIT ON
      RELEASE; A.S.T.'S RESUME. ya0 1262
1345 _____
      #D-87 CHECKING, INDIA FLOODING HOUS__
      AREA - WATER SHUT OFF, HOUSING ARE
      CLEARED OF WATER. ABSORPTION SOCK
      IN PLACE. WATER USAGE TO BE
      MONITORED, USED AND THEN TURNE
      OFF (DS)
1330 A.S.T. ya0 1262
1400 A.S.T. ya0 1262
1430 C.S.T.-LOCK/DOWN ON UNIT → [H/c=5] ya__
1446 C.S.T. ya0 1262
1466 END OF TOUR, EQUIPMENT TO RELIEF. ALL
      APPEARS SAFE AND SECURE AT THIS TIME.
      L. Herschlock 1762
1500- DELTA CONTROL    SUNDAY FEB 7th, 2016      [H/c5]
2300 CAPTAIN WHALEN    SGT. PERKINS    DEP. SCIBILIA
1500 GST, [H/c5], RECEIVED ① RADIO, ⑬ KEYS, ① CUT DOWN KNIFE,
      ① TABLET, FIRE/SAFETY/SECURITY CHECK. PREVIOUS LOGS REVIEWE__
      WHILE PERFORMING 1500 GST, #87-CUMMINGS RIPPED UP VINYL PART
      OF MATTRESS. SGT. TO BE NOTIFIED

95

(CONT)

1500 - DELTA CONTROL                    SUNDAY FEBRUARY 7th, 2016    H/G-S
2300 CAPTAIN WHALEN                          SGT. PERKINS        DEP. SCIBILI

1515 GST Ⓣ
1521 10-59/10-2 Ⓖ
1530 GST, UNIT ON RELEASE, ASTS BEGIN, TABLET EXCHANGE (148), MAINTENANCE
       NOTIFIED OF WATER IN COMMON AREA Ⓟ
1540 TREATMENTS BEGIN, #84- MUNOZ REFUSED MEDICAL Ⓙ
1600 AST Ⓣ
1600 Lt Perkins on area for everything turns a 578 Perkins
1630 AST, CHOW ON UNIT, ALL OFFERED Ⓕ
1700 AST Ⓣ
1730 GST, Mandatory lockdown H/C-S & Dp. Ruckey 10-8
1745 GST J
1800 GST, DEP SCIBILIA 10-8 Ⓡ
1815 GST Ⓣ
1830 GST, FACILITY ON RELEASE, ASTS RESUME Ⓒ Ⓞ
1900 AST Ⓣ Ⓞ
1930 AST, TREATMENT BEGIN, #84- MUNOZ REFUSED MEDICAL Ⓙ
       RECREATION OFFERED, ALL REFUSED Ⓕ
2000 AST Ⓣ
2030 AST Ⓖ
2046 Med Pass, D. Kowalks LPN
2051 Lt Perkins on area H/A appears in good order a 578
2100 AST Ⓣ
2130 AST Ⓣ
2200 AST Ⓖ
2300 GST, UNIT ON LOCKDOWN, H/C-S VERIFIED Ⓖ
2245 GST Ⓖ
2300/0700/      DELTA CONTROL  MONDAY FEB 8, 2016  A/C-S
               LT BRYMAN      SGT.        DEP HOLDER
           RECIEVED 1 SCANNER, 1 RADIO, 1 COK. 13 KEYS,
           FIRE AND SAFETY CHECK AT THIS TIME ALL APPEARS
           OPERABLE. SECURITY CHECK AT THIS TIME ALL APPEARS
           SAFE AND SECURE. GST H/C S Ⓡ
2330 GST Ⓚ Ⓓ
2355 SUPERVISORY TOUR. SGT. ROBINSON JM
0000 GST Ⓚ Ⓣ
0030 GST Ⓚ Ⓡ
0100 GST Ⓡ
0130 GST Ⓡ
0200 GST Ⓡ

96

CON'T   DELTA FEMALE   MONDAY FEB 8 2016 H/C5
LT- BRYMAN      SGT ROBINSON DEP HOLDER

0207   DEP WILK ON FLOOR IN HALL WAY WITH WORKERS
       RUNNING WIRES THRU THE CEELING ⊕

0230   GST ⊕
0300   GST ⊕
0330   GST ⊕
0400   GST ⊕

0400   DEP WILK AND WORKERS ARE FINISHED WITH WORK
       IN HALL, OFF THE FLOOR ⊕

0430   GST ⊕
0500   GST ⊕
0530   GST CHRUSERCO ⊕
0533 ⊙ WOODRILL LPN med PASS
0533 #84 MUNOZ, ANNA, REFUSED HER FINGER STICK ⊕
0558 #84 MUNOZ, ANNA, A/P COURT PROGRAM  [H/C4]
0600   TRAYS COLLECTED AND TRASH OFF UNIT  GST ⊕
0610   SUPERVISORY TOUR. SGT. ROBINSON
0615   GST ⊕
0630   GST
0645   GST
0655   END OF TOUR. EQUIPMENT TURNED OVER TO RELIEF ⊕

0700/   Delta Female        Monday 8 Feb 16         [H/C4]
1500   Lt LoDestro          Sgt Carney          Dep Stisser

0730   GST. Relieved Dep Moss. Recieved Radio@Key. All appears safe and secure
       at this time. ASTs begin. Unit on release

0736   87. cummings refuses to go to Disciplinary hearing ⊕
0756   Sgt Carney on Unit Supervisory tour &
0800   AST
0815   87 Cummings refused ortho clinic and Buffalo city court ⊕

0816   Rec called for Delta Female. All Refused.

0830   AST
0900   AST
0930   AST
1000   AST
1030   AST
1100   AST

1120   Chow on unit. All fed. ∅ refusals. ⊕
1130   AST
1200   Unit on back Down. [H/C4]. GST. ⊕
1215   GST ∅
1230   GST ∅

| | | | |
|---|---|---|---|
| S | 0700/ Delta Female | Monday 8 Feb 16 | H/c=4 |
| | /1500 Lt L. Destro | Sgt Carney | Dep Stisser |

0RK2es

1245 GST ✪

1300 GST. Unit on release. AST's resume. ✪ by

1302 87 Cummings refused visit. ✪

1325 Sgt Carney on Unit Supervisory tour ✪

1430 AST

1430 GST. Unit on Lock. Down. H/c=4.

1455 End of tox. Equipment to relief. H/c=4 ✪

1500 Delta Female          Monday 2-8-16          H/c=4

2300 Lt L. Destro          Sgt Perkins          Dep Szartcs

GST, H/c verified, received ① radio ① key ① scanner, All appears safe and secure at this time ✪

1500 GST ✪

1515 10-59, 10-2, GST ✪

1514 scanner exchange #110 ✪

1530 GST, Unit on release Asts begin, US mail passed ✪

1600 Ast #88 mattress torn apart and sleepins inside sgt notified ✪

1602 #62 Tyes refused Finger Stick, #45 Fisher refused finger stick ✪

1630 Ast, Chow on Unit ⊗ refusals ✪

1635 Sgt Perkins on area for supervisory tour ✪

1640 #129 George Thomas refused finger stick ✪

1700 Ast ✪

1730 GST, Unit on L/D ✪

1745 GST ✪

1800 GST. Dep. O'Neill 10-8 to DFC ✪

1815 GST ✪

1830 GST, Unit on release, Asts begin ✪

1900 Ast, USA Today given out ✪

1930 Ast ✪

1947 Meal, M. Adria LPN

1950 #58 Bordens Michael refused medical ✪

1957 #66 Andres Stephen refused medical ✪

#43 Hicks Josh refused medical ✪

2000 Ast ✪

2030 Ast ✪

2100 Ast ✪

2117 Sgt Perkins on area H/h appears in good order ✪

2130 Ast ✪

2200 Ast ✪

2230 GST, Unit on L/D ✪

98

1500 Delta Female     Monday 2-8-16      H/c4

2300 Lt. Lo Destro      Sgt perkins      Dep Scott

2245 GST

TUESDAY FEBRUARY 9, 2016

2300-0700 LT FRANKLIN    DEP PATTI    SGT LIGHTCAP

2300 GST H/C 4 ALL APPEARS SECURE, REC'D RADIO,
C/O KNIFE, TABLET + (13) KEYS, F/S EQUIP CH
ALL WIRES APPEAR INTACT, P+P ON UNIT, LOG
READ. #87 CUMMINGS, INDIA MATTRESS RIPPED,
STUFFING PULLED OUT + ROOM IN DISARAY AS
NOTED IN PREVIOUS LOG

2311 10-59 LS 10-2

2324 TABLET EXCHANGE

2330 GST

0000 GST

0030 GST

0030 lt lightcap supervisory tour

0100 GST, DEP PATTI 10-10

0120 DEP PATTI 10-8

0130 GST

0200 GST

0230 GST

0300 GST

0330 GST

0400 GST

0430 GST

0500 GST

0530 GST, CHOW SERVED ALL FED #88 FOSTER, DENA
REC'D SPECIAL DIET TRAY

0600 lt lightcap supervisory tour

0600 GST, TRAYS OFF UNIT

0615 GST

0630 GST

0645 GST H/C 4 ALL APPEARS SECURE

0655 ALL EQUIPMENT TO RELIEF - P.T.O 629

0700 Delta Female Thursday 2/9/16 H/C 4

1500 Lt. Glunski    Sgt. Kruzwic    Dep Sowins

0700 GST. rec'd DFm radio (3) keys DC/D/k,
scanner, f/w safety ck temp, TVs
appear intact. previous logs read.
all appear safe/secure

Case 3:16-cv-01102-AVC Document 28-2 Filed 08/25/18 Page 79 of 140

0200

1600 Delta Female Tuesday 2/9/16 — H/C 4

Lt. Glinski    Sgt. Knezevic    Dep. Sowinski

0725 Scanner swap SS

0730 Cst. 4D lifted SS

0740 meds passed CJoyner CPN

0800 out. Txs begin SS

0810 1 Long. Inmate Green on unit to clean SS

0820 out SS

0850 Inmate Green off unit SS

0900 out SS

0930 out SS

0940 87 Cummings out to BCC /H/C 3+1. SS

0949 SGT Knezevic on unit — S/P Tour C82

0955 maint. on unit to clean cell 87. SS

1000 out SS

1013 87 Cummings back from ct. /H/C 4/. SS

1020 out SS

Lists for Coggins/Chapin begin SS

1100 out SS

Txs begin SS

1120 lunch trays up. SS

1130 out. SS

1200 Cst. unit 4D. SS

1215 GST ①

1230 GST ①

1245 GST ①

1300 Cst. 4D lifted. SS

1305 Pub. lib. called, ① attend. SS

1310 Lists for NP and Dr. Malloy started SS

Lib returned SS

1317 SGT Knezevic on unit — S/P Tour

#87 Cummings India Refused Non Contact Visits

1330 out SS

1400 out SS

1430 Cst. unit 4D SS

1455 End of tour. Sowinski #1399

1500-2300 Delta Female    Tuesday 2-9-16    H/C 4

LT. Ladestro    SGT. Perkins    Dep. Majchrowicz

1500 Received Radio, Keys ① cut Down knife, Scanner, previous Logs
Read, Fire safety check, GST H/C 4 All Appears Secure ①

1508 10-59, 10-22 ①

100

1500-2300 Delta Female        Tuesday 2-9-16        $\boxed{H/c\ 4}$
Con't    LT Lodestro    SGT Perkins    Dep. Mejchrowicz

8P869

1540 Fox South #62 Tyes, William Refused Treatment (D) Treatments Begining
1600 AST, E Short # 37 Hill, Derrick at a visit @
1612 Echo South 129 George, Thomas Refused treatment @
1620 Sgt Perkins on area w/h appears in good ord-
1630 AST, Chow on Unit, All served @
1650 #87 Cummings India Refused hormeal, Drank Juice @
1700 AST, Trays off Unit @
1700 Incoming Mail passed @
1730 Unit on Lock Down, GST $\boxed{H/c\ 4}$ All Appears Secure @
1745 GST @
1800 GST. Dep. O'Neill 10-8 to DFC @
1815 GST @
1830 Dep. Mejchrowicz 10-8, GST, Unit on Release @
1840 Indigent Letterhead List taken @
1900 AST @
1924 Med Pass @
1930 AST, #88 Foster, Denay out to a visit, Sick call/Treatment begain @
2008 AST, ENE # 66 Andies, Stephand # 93 Hicks, Josh Refuse treatment @
2014 FS 62 Tyes, William Refused treatment @
2030 AST DSH Walthour, Tyrone called for treatment, A t Court @
2043 Sgt Perkins on area w/h appears in good ord-
2100 AST @
2101 Delta Short #58 Borders, Michael Refused treatment @
2130 AST @
2200 AST @
2230 Unit on Lock Down, GST $\boxed{H/c\ 4}$ All Appears Secure @
2245 GST @
2255 End of tour, Equipment to Relief @

WEDNESDAY    FEBRUARY 10, 2016
2300-0700 LT BRYMAN    DEP PATTI SGT LIGHTCAP
2300 GST $\boxed{H/c\ 4}$ ALL APPEARS SECURE , REC'D
RADIO, c/o KNIFE, TABLET + (13) KEYS, F
EQUIP CK , ALL WIRES APPEAR INTACT, H
ON UNIT , LOG READ @
2320 10-59 IS 10-2 @
2330 GST @
2339 TABLET EXCHANGE @
0000 GST @
0030 GST @

Case 3:13-cv-00326-WHB-JCG Document 234-2 Filed 05/12/2019 Page 81 of 140

WEDNESDAY FEBRUARY 10, 2016 DELTA FEM CONTROL

2300-0700 LT BRYMAN  DEP PATTI  SGT LIGHTCAP  | H/C 4 |

0100 GST, DEP PATTI 10-10 ☐P

0112 Sgt Lightcap supervising tour —☐↲↲

0130 GST, DEP PATTI 10-8 ☐P

0200 GST ☐N

0230 GST ☐L

0300 GST ☐P

0330 GST ☐L

0400 GST ☐P

0430 GST ☐P

0500 GST ☐P

0530 GST, CHOW SERVED - ALL FED ☐N

0600 GST, TRAYS OFF UNIT ☐P

0606 Sgt Lightcap supervising tour ☐↲↲

0615 GST ☐L

0630 GST ☐P

0645 GST | H/C 4 | ALL APPEARS SECURE ☐P

0655 GST ALL EQUIPMENT TO RELIEF - Patti 629

0700-1500 DELTA FEMALE.            WEDNESDAY 2/10/16        | H/C=4 |
        LT. LoDESTRO              SGT.                 DEP. VAIL

0700 GST | H/C=4 | VERIFIED. REC'D (13) KEYS, (1) RADIO, (1) CDK, (1) TABLET. FIRE, SAFETY, SECURITY
      CHECK COMPLETED. ALL APPEARS SAFE & SECURE AT THIS TIME. P+P ON UNIT. PREVIOUS LOGS
      REVIEWED. ✎

0708 10-59, 10-2. ✎

0726 SCANNER EXCHANGE. ✎

0730 GST. ✎ UNIT ON RELEASE. AST'S BEGIN. ✎

0736 ECHO REC OFFERED. ∅ TAKERS. ✎

0746 meds passed Cjailer LPN

0800 AST ✎

0803 Dep. McGavis on unit for relief ☐P

0830 AST ☐P

0900 AST ☐P

0928 SGT KNEZEVIC ON UNIT - SUP TOUR C82

0930 AST ☐P

1000 AST ☐P

1030 AST ☐2

1100 AST ☐P

1115 Chow on unit all fed ☐P

1130 AST ☐L

102

| | | | |
|---|---|---|---|
| 07001500 | Delta Control | Wednesday | Feb. 10, 2016 | H/c 4 |
| | Lt. Lodestro | Sgt Knezevic | Dep M'Gavis |

1215 GST ✓

1230 GST ✓

1245 GST ✓

1300 GST ✓

1330 AST ✓

1359 SGT Knezevic on unit - sup tour CSL

1400 AST ✓

1430 GST - unit LD - ✓

1455 End of Tour - all equipment to relief. ✓

1500/2300  Delta Control          Wends 2-10-16          H/c = 4
           LT Lodestro              SGT Perkins          Dep Liberti

1500 GST, Renewed ① Radio ① + knife ① Scanner ② heavy
     F/S/S check Complete, Prev logs read, Cell appro...
     Secure. Male on Unit announced ✓

1515 10-59 - 10-2 ✓

1525 Scanner Exchange ✓

1530 GST, Unit on Relieve, AST resume ✓

1535 U/S mail passed out ✓

1540 Treatments begin ✓

1600 AST ✓

1630 AST, Chow on Unit ✓ Refuse ✓

1639 Sgt Perkins on area for security tour ✓

1700 GST, Trash & Trays off Unit ✓

1720 N/I Tronolone, Rachel (146538) Diabetic dep/cuff ✓ finish...

1730 GST, Unit on L/S  H/c = 5  ✓

1745 GST.

1800 GST, Dep. O'Neill 10-8 to DFCO ✓ Dep Liberti 10-10 ✓

1815 GST ✓

1850 GST, Unit on Relieve AST resume, Liberti 10-8 ✓

1855 U/S mail collected, USA today passed ✓

1900 AST ✓

1930 AST, Treatments begin ✓

2000 AST ✓

2005 Medr, Nadline LPN

2030 AST ✓

2100 AST ✓

2120 Sgt Perkins on area H/A appears in good order

2130 AST ✓

2700 AST ✓

H/C 4

Delta Control     Wend 2-10-16     H/C = 5

(cont)   LT Loclastro     SGT Perkins     Dep Lihorti

2140 GST- Clout on 2/1   H/C = 5

2145 GST-

2200 End of Tour, Equip to Relief

2300-0700 DELTA CONTROL   THURSDAY FEBRUARY 11, 2016

    LT. BRYMAN     SGT. FORERO     DEP. EAGLE

    RECEIVED (1) RADIO, (13) KEYS & (1) C.D. KNIFE. FIRE & SAFETY

    EQUIPMENT CHECKED   PRIOR LOG ENTRIES REVIEWED - ALL

    APPEARS OPERABLE & SECURE   Eagle 1136

2300 GST- H/c 5

2319 10/59 - 10/2

2330 GST-

0000 GST-

0030 GST- DEP. EAGLE 10-10 CHOW

0040 SCANNER EXCHANGE 161 FOR 164 - Dep. EAGLE 10-8

0100 GST-

101 SGT FORERO, Supervisory Tour

0120 #87 CUMMINGS POUNDING ON DOOR YELLING HELP - I WENT TO SEE

    WHAT WAS WRONG AND SHE STATED SHE NEEDED TO GO DOWNSTAIRS

    AND GET OUT OF HERE - I EXPLAINED IT WAS AFTER 1:00 IN THE

    MORNING AND SHE SAID SHE COULDN'T BREATH - I NOTIFIED

    SGT. FORERO

0130 GST-

0200 GST-

0230 GST-

0300 GST-

0330 GST-

0400 GST-

0430 GST-

0450 J. Waddell LPN med Pass.

0500 GST-

0525 CHOW ON DECK - ALL SERVED-

0530 GST-

0550 TRAYS & TRASH OUT OF Cells

0600 GST-

0615 GST-

615 SGT FORERO. Supervisory Tour

0630 GST-

0645 GST- H/c 5

0655 END OF TOUR - EQUIPMENT TO RELIEF   Eagle 1136

= 4
liberti
eagle
appears

H/C = 5

Delta Control Thursday 2-11-16.

104

0700-1500 C. Mirabito     Lts P. Glinski / Alodestro     Sgts Kozlowski

0701 gpt [H/C 5] Rec'd radio, 13 keys & (1) out door lock
Fire equipmt / first aid Kit & sal ration box done
windows & TV's intact + secure. (CM)

0710 gpt. (CM)

0719 gpr C/U gear ( 1 mop, bucket, broom, DP+
TB) intact + available for use. (CM)

0730 gpr Lock dn over H/u's open AST's initiated
87 Cummings Ad seg out alone. Inmate asking 150
for water, water on. flood dodgers in place
Inmate Cummings prone to flood. (CM)

745 nurse Bellinger D.D meds.

4E 0742 Rec'd TR list. (CM)

0800 AST. (CM)

0818 Treatments started. Nurse Claire (CM)

0830 AST. (CM)

0900 A St (CM)

0930 AST (CM)

0955 Sgt Kozlowski Supervisory Tour &

LIE 0818   87 Cummings offered Rec + refused (CM)

1000 AST. #FHH clinic conducted for C Perry (CM)

1030 AST. A 12 Munnifield off unit clean up (CM)

1100 AST. Laundry list taken & signed up (CM)

1120 lunch trays in (CM)

1130 AST (CM)

1145 trays out (CM)

1200 Lo ch dn gpt H/C 5 (CM)

1215 gpt.

1230 GST (CM)

1245 GST (CM)

1300 gpt C/U gear intact + secured  Lock dn over
H/u's open AST'S resumed. (CM)

1305 Charlie begins FMH clinic (CM)

1306 Dr Coggins begins clinic (CM)

1330 AST (CM)

1335 Jill escorted on unit to see 87 Cummings

1343 Jill off unit. (CM)

1349 Sgt Kozlowski Supervisory Tour &

1400 AST. (CM)

1430 Lock dn gpt Dr Coggins on unit to see
87 Cummings L/E 1427 86 toilet flooding

Case 1:19-cv-00153-EAW-LGF   Document 84-2   Filed 05/29/21   Page 85 of 140

Delta Control Thursday 2-11-16

1020 1500 C. Morabito   Lts. A. Lodestro   Sgt. J. Kozlowski   A. Erinski

1433 [H/C 5] toilet unplugged + clean-up to be done next. called. (cm)

1440 Maint on unit cleaning flooded area on 3 unit side (c)

1442 got. (c)

1450 Maint off unit (c)

1454 got [H/C 5.]   C. Morabito

1500 2300 Delta Control   Thursday February 11, 2016   [H/C 5]

Lt. Lodestro   Sgt. Perkins   Dep. D'Aloisio

1500 GST, [H/C 5], rec'd radio, scanner, c/o knife, keys, f/s/s check complete, previous logs read, unit telephones/commissary kiosks intact, all appears safe & secure at this time

1510 10-59, 10-2

1530 GST. unit on release. AST's begin

1535 Treatments begin

1540 MED PASS RB

1600 AST. U.S. mail passed

1615 Chow on unit. All served. ∅ Refusals Rec offered. ∅ attend

1625 Lt. Perkins on area h/h appears in good order ∅ -78

1630 AST

1645 Trash + trays off unit

1700 AST. Medical on unit for cell side visit to #87 Cummings, India. Inmate refused medical

1730 GST. unit c/o [H/C 5]

1745 GST.

1800 GST. Dep. O'Neill 10-8 to DFC

1805 Dep. Salverson 10-8 (1:1) w/ #87 Cummings, India

1815 GST

1830 GST. unit on release. AST's resume

1900 AST. outgoing mail collected. church lists taken. newspaper passed

1930 AST. Treatments begin

1938 MED PASS RB

2000 AST

2003 Lt. Perkins on area f supervising team ∅ 508

2030 AST. #84 Tronolone, Rachel escorted to medical

2100 AST

2130 AST

2200 AST

2230 GST. unit c/o [H/C 5]

1

Thursday 2-11-16    Delta female 1:1

1500-2300   Lt. Lodestro        Sgt. Perkins      .    Dep. Salverson  [H/C=1]

1825   Post opened . #87 Cummings, India ICN 146495 placed in 1:1 status
No paperwork on unit, to be delivered. safety + security Inspection
completed, all appears safe + secure at this time. @1294

1830   #87 Cummings laying quietly on bunk @1294

1845   #87 Cummings layy on bed ☺

1900   #87 Cummings lay on b——

1915   #87 Cummings laying quietly on bunk @1294

1918   Sgt Perkins on unit for every hour tour o'5-78
Suicidal notification on unit. #87 Cummings c/o per

1918   Sgt. Perkins + FMH Dr. Coggins  2:1 no restrictions @1294

1928   MED refusal - Sergent attempted also LB

1930   #87 Cummings laying quietly on bunk @1294

1935   meal monitoring form on unit. @1294

1945   #87 Cummings laying quietly on bunk @1294

2000   #87 Cummings laying quietly on bunk @1294

2015   #87 Cummings laying quietly on bunk @1294

2030   #87 Cummings laying quietly on bunk @1294

2045   #87 Cummings laying quietly on bunk @1294

2100   #87 Cummings laying quietly on bunk @1294

2115   #87 Cummings laying quietly on bunk @1294

2130   #87 Cummings laying quietly on bunk @1294

2145   #87 Cummings laying quietly on bunk @1294

2200   #87 Cummings laying quietly on bunk @1294

2215   #87 Cummings laying quietly on bunk @1294

2230   #87 Cummings laying quietly on bunk @1294

2245   #87 Cummings laying quietly on bunk @1294

2300   End of tour, all appears secure. [H/C=1] R. Salverson #1294

2300/000   Delta female 1:1    Friday 2-12-16    [H/C=1]
Lt Bryman            Sgt Forero              Dep Moss

2300   Rec'd @ Radio Utility #4, [H/C=1] verified, fire safety security
check complete, all appears safe and secure at this time.
#87 Cummings, India ICN 146495 placed on constant
watch 2:1 See no restrictions per Sgt Perkins and FMH
Goltz. I/M on daily meal monitoring as of 2-12-16. (DM) 1434
I/M is laying quietly on bunk at this time. (DM) 1434

2315   #87 Cummings appears asleep (DM) 1434

2317   10-59/ 10-2 (DM) 1434

2330   #87 Cummings appears asleep (DM) 1434

2345   #87 Cummings appear asleep (DM) 1434

1800/0700
(cont'd)

Delta Female 1:1    Friday 2·12·16    [HC-1]   3764

Lt. Bryman    Sgt Forero    Dep Moss

0000 #87 Cummings appears asleep ⊂D 1484

0015 #87 Cummings appears asleep ⊂D 1484

0030 #87 Cummings appears asleep ⊂D 1484

0051 Dep Kozakiewicz 10·8 for lunch relief, Dep
    Moss 10·10, #87 Cummings appears asleep 1038

0045 #87 Cummings appears asleep on bunk ⊂D

0100 #87 Cummings appears asleep 1030
    Dep. Kozakiewicz 10·4, Dep. Kozakiewicz 10·8 ⊂D

111 Sgt Forero supervisory tour MF 550

0115 #87 Cummings appears asleep ⊂D 1484

0130 #87 Cummings appears asleep ⊂D 1484

0145 #87 Cummings appears asleep ⊂D 1484

0200 #87 Cummings drinking water ⊂D 1484

0215 #87 Cummings appears asleep ⊂D 1484

0230 #87 Cummings appears asleep ⊂D 1484

0245 #87 Cummings appears asleep ⊂D 1484

0300 #87 Cummings appears asleep ⊂D 1484

0315 #87 Cummings appears asleep ⊂D 1484

0330 #87 Cummings appears asleep ⊂D 1484

400 Sgt Forero supervisory tour MF 550

LE 0345 #87 Cummings appears asleep ⊂D 1484

0400 #87 Cummings st/laying in bed quietly ⊂D 1484

0415 #87 Cummings is washing shirt at sink. This deputy
    called for a new shirt from linen room ⊂D 1484

0430 #87 Cummings sitting on bed drinking water ⊂D 1484

0440 offered dry shirt to Cummings in exchange for wet on.
    Cummings refused ⊂D 1484

0445 #87 Cummings sitting on bunk quietly ⊂D 1484

0500 #87 Cummings sitting on bunk quietly ⊂D 1484

0515 #87 Cummings sitting on bunk quietly ⊂D 1484

0520 #87 Chow on unit, all offered ⊂D 1484

0530 #87 laying quietly on bunk. Was not eaten yet ⊂D 1484

0545 #87 laying quietly on bunk ⊂D 1484

0600 #87 Cummings appears asleep ⊂D 1484

0615 #87 Cummings appears asleep ⊂D 1484

0630 #87 Cummings appears asleep ⊂D 1484

0645 #87 Cummings appears asleep ⊂D 1484

0655 all equipment to relief, end of tour ⊂D 1484

Case 1:19-cv-00164-WMR Document 242 Filed 06/03/19 Page 88 of 140

3700-1500 Delta Female 1:1      Friday 2/12/16      HC=1

Lt Glinski      Sgt Knezevic      Dep Ranick

0700   Red (1) radio, F/S/S check completed, previous logs read, all appears safe and secure. # 87 Cummings, India, ICN# 146495, on C/O per Sgt Perkins and FMH Dr. Coggins, 1:1, no restrictions, meal monitoring form in effect 2/12/16. Inmate is walking around naked, knocking on door saying " let me out ". Sgt 1463

0715   # 87 Cummings standing, turning the sink off and on ♀ 1443

0730   # 87 Cummings laying quietly on bunk ♀ 1463

0745   # 87 Cummings put her t-shirt on and is walking around her cell ♀1463

0800   # 87 Cumming put her pants on and is laying quietly on her bunk ♀ 1463

0815   # 87 Cummings laying quietly on bunk ♀ 1463

0830   # 87 Cummings standing at door, knocking and pointing ♀ 1463

0845   # 87 Cummings laying quietly on bunk ♀1463

0900   # 87 Cummings laying quietly on bunk ♀ 1463

0915   # 87 Cummings laying quietly on bunk ♀ 1463

0930   # 87 Cummings walking around cell ♀ 1463

0945   # 87 Cummings walking around yelling ♀ 1443

1000   # 87 Cummings sitting quietly on bunk ♀ 1443

1015   # 87 Cummings laying quietly on bunk ♀ 1463

1030   # 87 Cummings laying on bunk complaining ♀ 1463

1045   # 87 Cummings appears asleep on bunk ♀ 1463

1046   Sgt Knezevic on unit - sup tour ♀ 2

1100   # 87 Cummings walking around cell ♀ 1463

1115   # 87 Cummings laying quietly on bunk ♀ 1463

1125   Chow on unit

1130   # 87 Cummings laying quietly on bunk ♀ 1443

1145   # 87 appears asleep on bunk ♀ 1463

1200   Morabito 10-8 Renik 10-10 lunch. 87 Cummings staring out door window. (CM)

1215   87 Cummings walking around room (CM)

1230   # 87 Cummings laying quietly on bunk ♀ 1463

1245   # 87 Cummings appears asleep on bunk ♀ 1463

1300   # 87 Cummings playing with water in the sink ♀ 1463

1315   # 87 Cummings laying quietly on bunk ♀ 1463

1320   Sgt Knezevic on unit - sup tour ♀2

1320   Cummings. cont 1:1 no restrictions V. ThanClin NP

1330   # 87 Cummings appears asleep on bunk ♀ 1463

1345   # 87 Cummings appears asleep on bunk ♀ 1463

1400   # 87 Cummings laying quietly on bunk ♀ 1463

1415   # 87 Cummings appears asleep on bunk ♀ 1463

4

0700-1500 Delta Female 2:1    Friday 2/12/16    H/C=1
Lt Glinski        Sgt Knezevic    Dep Ranick

1430  # 87 Cummings appears asleep on bunk ≈ 1443

1445  # 87 Cummings spitting water on the floor ≈ 1443

1455  End of tour, all equipment to relief, all appears safe and
      secure  H/C=1  ≈ 1443

1500-2300 Delta Female 1:1    (February) 12/2016    H/C=1
Lt Jbch           Sgt. ROBINSON    Dep Kutt078

Rcvd- Radio- utility#. Read prev logs & initialed.
Reviewed S.I. for for #87 Cummings, India #301
14604175. NO restrictions - meal monitoring sheet, 21 cals.
until cleared by FMH. At present all appears safe + secure.

1500 #87 Cummings lying on bunk quietly

1515 #87 Cummings lying on bunk quietly

1530 #87 Cummings lying on bunk quietly.

1545 #87 Cummings appears on bunk quietly.

1600 #87 Cummings appears on bunk asleep

1615 #87 Cummings appears asleep on bunk

1625 SUPERVISORY TOUR. SGT. ROBINSON

1630 #87 Cummings appears asleep on bunk

1645 #87 Cummings gave me the old tray + I gave her dinner.

1700 #87 Cummings asked to clean up advised I will
     need to ask Sgt whether she can shower.

* This is a dup, sup, cuffed I was told for transport 4 w fac.

1715 #87 Cummings lying on bunk quietly

1730 #87 Cummings appears seated quietly on bunk

1745 #87 Cummings appears resting quietly on bunk

1800 #87 Cummings appears resting quietly on bunk
     DEP WINDRUM 10-8/RELIEF. Dep Lee 10-10 to lunch

1815 #87 CUMMINGS APPEARS RESTING QUIETLY ON BUNK quiet

1830 #87 CUMMINGS APPEARS RESTING QUIETLY ON BUNK quiet

1842 SUPERVISORY TOUR SGT. ROBINSON

1830 Dep Lee 10-8 from lunch Dep windrum 10-10

1845 #87 Cummings given soap + towel to washup with in cell

1900 #87 Cummings up at sink brushing her teeth.

1915 #87 Cummings laying on bunk quietly, given blanket for bunk.

1930 #87 Cummings laying on bunk quietly

1945 #87 Cummings lying on bunk quietly - nurse on 4u
     w/ meds & cummings refused.

2000 #87 Cummings lying on bunk quietly - told
     cops were cops - 2 bras + 1pr underwear from property

5

cont
1500-2300 Delta Female                Friday 2/12/16                    H/c = 1
        Lt. Isch                  Sgt. Robinson            Dep. Kee #1175

2015 #87 Cummings lying on bunk quietly.
2030 #87 Cummings appears asleep on bunk.
2045 #87 Cummings appears asleep on bunk.
2100 #87 Cummings appears asleep on bunk.
2115 #87 Cummings appears asleep on bunk.
2130 #87 Cummings appears asleep on bunk.
    4E Mattress brought up by maintenance & was NOT given to Fm today.
CB - Wait to see that behaviors continue to improve so this one is not destroyed.
    Fm has been co-operative & complied with all directions
    given by Sgt & this deputy on this shift.
2145 #87 Cummings lying on bunk quietly.
2200 #87 Cummings lying on bunk quietly.
2215 #87 Cummings lying on bunk quietly.
2230 #87 Cummings lying on bunk quietly.
2245 #87 Cummings lying on bunk quietly.
2255 End of Tours. All Equipment to relief deputy.

2300  Alphet Seg. 2nd Delta Female 2:1 Sat. Feb 13, 2016        H/c = 1
0100    Lt. Isch                  Sgt. Forero          Dep. Boggs
2300    H/c = 1 verified, received 1 Radio (utility 4) and
        keys. Previous logs read. Orders on post are
        as follows: #87 Cummings, India (ICN 196495)
        2:1 COBS per Sgt Perkins and FMH/Goltz - No
        restrictions, meal monitoring. All appears safe
        and secure at this time. CB
        #87 Cummings appears asleep on bunk.
2315 #87 Cummings is laying on bed restlessly
2316 10-69 /10-2
2330 #87 Cummings laying on bunk restlessly.
2345 #87 Cummings kneeling on bed, humming.
0000 #87 Cummings laying on bunk, eyes closed.
0015 #87 Cummings laying on bunk, groaning.
0020 #87 Cummings laying on bunk, knocking on bunk.
0023 1040 - Dep Boggs 10-10 to lunch. Dep Kozakiewicz 10.8.
0040 Sgt Forero, Supervisory Tour.
0045 #87 Cummings lying on bunk, MOANING.
0100 #87 Cummings lying on bunk, RESTLESS.
0111 Dep. Boggs 10.8. Dep Kozakiewicz 10-7 to ACO f/relief.
0115 #87 Cummings laying on bed, groaning.
0130 #87 Cummings laying on bunk, eyes closed.

6
0300-
0700
(con't)    Delta Female 2:1    Sat. Feb 13, 2016    H/C = 1
           Lt. Isch         Sgt Forero         Dep Boggs

0145  #87 Cummings laying on floor quietly, eyes closed @ 1400
0200  #87 Cummings laying on bunk quietly, eyes closed. @
0215  #87 Cummings laying on bunk quietly, eyes closed. @ 1400
0230  #87 Cummings laying on bunk quietly, eyes closed @ 1400
0245  #87 Cummings laying on bunk quietly, eyes closed @ 1400
0300  #87 Cummings laying on bunk quietly, eyes closed @ 1400
0315  #87 Cummings laying on bunk quietly, eyes closed @ 1400
0330  #87 Cummings laying on bunk quietly, eyes closed @ 1400
0345  #87 Cummings laying on bunk quietly, facing wall @ 1400
0400  #87 Cummings sitting on floor quietly. @ 1400
0415  #87 Cummings standing at sink w/head under water
      while urinating on the floor @ 1400
0430  #87 Cummings laying on bunk, restlessly. @ 1400
0445  #87 Cummings laying on bunk quietly @ 1400
0500  #87 Cummings laying on bunk quietly, staring @ ceiling @
0515  #87 Cummings laying on bunk quietly, facing wall @ 1400
0527  Chow on unit served to #87 Cummings, I/m
      Cummings took her juice then threw her tray out
      on the floor through the pass through yelling
      "I don't fucking want it." @ 1400
0530  #87 Cummings laying on bunk yelling to let
      her out @ 1400
0545  #87 Cummings laying on bunk quietly, facing wall @
0558  Sgt Forero Supervisory Tour - MAC
0600  #87 Cummings laying on bunk quietly, facing wall @
0615  #87 Cummings laying on bunk quietly, eyes closed @
0630  #87 Cummings laying on bunk, quietly, eyes closed @ 1400
0645  #87 Cummings laying on bunk restlessly, eyes closed @
0655  End of tour all all equip to relief. @ 1400

0700-1500  Delta Female 1:2    Saturday 2/13/16    H/C = 1
           Lt Lodestro    Sgt Knazovic    Dep Ranick

0700  Red 2 Keys, 1 radio, FISIs check completed, previous log
      read, all appears safe and secure. # 87 Cummings, Indie
      ICN # 140495, on c/o per FMH Dr Coggins and Sgt Perkins,
      2:1, no restrictions, appears asleep on bunk @ 1403
0710  10/59, 1015 @ 1445
0715  #87 Cummings appears asleep on bunk. @ 1445
0730  #87 Cummings appears asleep on bunk @ 1403
0745  #87 Cummings appears asleep on bunk @ 1440

0700-1500 Delta Female 2:1      Saturday 2/13/16      H/C = 1

Lt Lodestra      Sgt Knezevic      Dep Ranick

0800   #87 Cummings appears asleep on bunk & 1463

0815   #87 Cummings appears asleep on bunk & 1463

0830   #87 Cummings appears asleep on bunk & 1463

0845   #87 Cummings appears asleep on bunk & 1463

0900   #87 Cummings appears asleep on bunk & 1463

0915   #87 Cummings laying on bunk making noises & 1463

0930   #87 Cummings laying on bunk making noises & 1463

0945   #87 Cummings appears asleep on bunk & 1463

1000   #87 Cummings appears asleep on bunk. & 1463

1015   #87 Cummings standing at door urinating & 1463

1022   Round completed on Cummings, maintain 2:1 no restrictions. - Stolarski Perty emer

1030   #87 Cummings laying quietly on bunk & 1463

1045   #87 Cummings appears asleep on bunk & 1463

1100   #87 Cummings appears asleep on bunk & 1463

1115   #87 Cummings laying on bunk making noises & 1463

1120   Chow on unit, given to Cummings & 1463

1130   #87 Cummings drinking water & 1463

1145   #87 Cummings laying quietly on bunk & 1463

1200   #87 Cummings appears asleep on bunk & 1463

Dep Stevens 10-8; Dep Ranick 10-10 - I/m Cummings lying quietly on bunk #5785.

1215   87- Cummings lying quietly on bunk #51385

1217   SGT KNEZEVIC ON UNIT- SUP TOUR @82

1230   #87 Cummings appears asleep on bunk & 1463

1245   #87 Cummings appears asleep on bunk & 1463

1300   #87 Cummings appears asleep on bunk & 1463

1315   #87 Cummings appears asleep on bunk & 1463

1330   #87 Cummings appears asleep on bunk & 1463

1345   #87 Cummings appears asleep on bunk & 1463

1352   SGT KNEZEVIC ON UNIT - SUP TOUR @82

1400   #87 Cummings appears asleep on bunk & 1463

1415   #87 Cummings appears asleep on bunk & 1463

1430   #87 Cummings appears asleep on bunk & 1463

1445   #87 Cummings appears asleep on bunk & 1463

1455   End of tour, all equipment to relief, all appears safe and secure H/C = 1 & 1463

1500-2300 Delta Female 2:1      Saturday 2/13/16      H/C = 1

Lt. Esah /   Sgt. Cross /   Dep. Maciejewski

1500   H/C verified. Rec'd (3) Radio (utility 4) (2) Keys. F/S/S

8

1500-
2300
cont.

Delta Female 2:1 Saturday 2/13/16 H/C=1

1500
cont.

Lt. Isch / Sgt. Cross / Dep. Maciejewski
checks complete. previous log entries read.
all appears safe & secure at this time.
87-Cummings, India ICN: 146475 2:1 COBS,
no restrictions, meal monitoring @1493
87-Cummings appears asleep on bunk, naked @1493

1515 87-Cummings moving around on bunk, naked @1493
10-59/10-2 @1493

1530 87- Cummings appears asleep on bunk, naked @1493

1545 87-Cummings appears asleep on bunk, naked @1493

1550 Sgt Cross in for sgt Isch St1

1600 87-Cummings appears asleep on bunk, naked @1493

1615 87-Cummings appears asleep on bunk @1493

1630 87-Cummings appears asleep on bunk @1493

1635 Chow on unit. 87-Cummings refused tray-
accepted juice @1493

1645 87-Cummings sitting on floor, drinking juice @1493

1700 87-Cummings appears asleep on bunk @1493

1715 87-Cummings appears asleep on bunk @1493

1730 87-Cummings appears asleep on bunk @1493
Dep WINDRUM 10-8/RELIEF @1448

1745 87-CUMMINGS LYING QUIETLY ON HER BUNK @1448

1800 87-CUMMINGS LYING QUIETLY ON HER BUNK @1448
Dep. Maciejewski 10-8 @1493

1815 87-Cummings appears asleep on floor @1493

1830 87-Cummings appears asleep on floor @1493

1845 87-Cummings appears asleep on floor @1493

1900 87-Cummings appears asleep on bunk @1493

1915 87-Cummings appears asleep on bunk @1493

1930 87-Cummings appears asleep on bunk @1493

1945 87-Cummings appears asleep on bunk @1493

2000 87-Cummings appears asleep on bunk @1493

2011 Sgt Cross in for sgt Isch S-57

2015 87-Cummings sitting in front of door, peeing @1493

2030 87-Cummings appears asleep on bunk @1493

2035 Med Pass, Cumming Refused meds, D. Harris Lt

2045 87-Cummings appears asleep on bunk @1493

2100 87-Cummings appears asleep on bunk @1493

2115 87-Cummings appears asleep on bunk @1493

2130 8-7 Cummings appears asleep on bunk @1493

Document ID 2fe101ceb3ec29c0

9

1500–2300
Cont.

Delta Female 2:1   Saturday 2/13/16   [H/C=1]
Lt. Isch / Sgt. Cross / Dep. Maciejewski

2145  87-Cummings laying on floor in front of door, talking to self @ 1493

2200  87-Cummings appears asleep on floor @ 1493

2215  87-Cummings appears asleep on floor @ 1493

2230  87-Cummings appears asleep on bunk @ 1493

2245  87-Cummings appears asleep on bunk @ 1493

2255  End of tour, equipment to relief. All appears safe and secure at this time @ 1493

2300/0000  Delta Female 2:1   Sunday 2·14·16   [H/C=1]
Lt. Isch   Sgt. Lightcap   Dep. Moss

2300  AST, [H/C=1] verified, Rec'd ① Radio (utility #4), ② keys, fire/safety/security check complete, previous logs read. All appears to be safe and secure at this time.
#87 Cummings, India ICN 146475 on 2:1 OBS - no restrictions, meal monitoring. IIM is laying on floor naked @

2315  #87 Cummings laying on floor naked - in front of door @

2328  10-59, 10-2

2330  #87 Cummings laying naked on bunk, appears asleep @ 1434

2345  #87 Cummings laying on bed naked, appears asleep @ 1434

2357  Sgt Lightcap appears in on tour DRS

0000  #87 Cummings laying on bed moaning - naked @ 1434

0015  #87 Cummings laying quietly on bunk, naked @ 1434

0030  #87 Cummings laying on bunk moaning, naked @ 1434

0045  #87 Cummings laying quietly on bunk, naked @ 1434

0100  #87 Cummings appears asleep on bunk, naked @ 1434

0115  #87 Cummings laying on floor in front of door, naked @ 1434

0130  #87 Cummings laying on floor, appears asleep, naked @

0145  #87 Cummings appears asleep on floor, naked @ 1434

0200  #87 Cummings appears asleep   Dep Moss 10-10 lunch, Dep Bettinger 10-8 @ 1434

0215  #87 Cummings lying on bed moaning
Dep Moss 10-8, Dep Bettinger 10-10 @ 1434

0230  #87 Cummings laying on floor moaning and ripping up cup, naked @ 1434

0245  #87 Cummings is laying on floor, naked @ 1434

0300  #87 Cummings appears asleep on floor, naked @ 1434

0315  #87 Cummings kicking door while lying on ground uni

0330  #87 Cummings appears asleep @ 1434

0345  #87 Cummings appears asleep on floor @ 1434

10

2300 (cont'd)

Delta Female 2:1     Sunday 2.14.16     [HCET]

Lt Isch          Sgt. Lightcap      Dep. Moss

0400 #87 cummings on bunk, appears asleep (CM) 1484

0415 #87 cummings on bunk, appears asleep (CM) 1484

0430 #87 Cummings appears asleep on bunk - naked (CM) 15cc

0445 #87 Cummings sitting in front of door knocking, naked (CM)Nc

0500 #87 cummings laying on bunk quietly (CM) 1484

0515 #87 Cummings laying on bunk moaning (CM) 1484

0530 #87 cummings laying on bunk moaning (CM) 1484
      Chow or writ, cummings refused (CM) 1484

0534 Lt. Lightcap supervisory tour → D 143

0545 #87 cummings laying on bunk quietly (CM) 1484

0600 #87 Cummings appears asleep (CM) 1484

0615 #87 Cummings appears asleep on bunk (CM) 1484

0630 #87 Cummings laying on floor (CM) 1484

0645 #87 Cummings laying on floor, urinated all
      over herself - naked (CM) 1484

0655 End of tour, all equipment to relief (CM) 1484

0700-1500 Dep. Niles     Capt. Whalen     Sgt. Lightcap

0700 Rec'd ① radio ① key. All other equip w/
      Delta Control Deputy. Previous logs read.
      I'm Cummings, India 146495 2:1 Cobs ø restrictions
      per FMH (N)
      87-Cummings is lying on bunk nude. (N)

0715 87-Cummings lying on bunk. (N)

0730 87-Cummings lying on bunk (N)

0745 87-Cummings lying on bunk (CM)

0800 87-Cummings lying on bunk (N)

0815 87-Cummings lying on bunk (CM)

0830 87-Cummings lying on bunk. (CM)

0836 Lt. Whalen supervisory tour → D 143

0845 87-Cummings lying on bunk (N)

0900 87-Cummings lying on bunk. (CM)

0915 87-Cummings lying on floor mumbling ①

0930 87-Cummings lying on floor (N)

0945 87-Cummings lying on floor (N)

1000 87-Cummings lying on bunk. (N)

1015 87-Cummings lying on bunk (N)

1030 87-Cummings lying on bunk (N)

10³⁵ Cummings ~~to/crossed~~ 2:1 COBS No Rest. [signature]

1045 87-Cummings lying on bunk. (N)

11

0100-
1500

Delta Female 2:1          Sunday 2·14·16      #7c=1
Dep. Miles       Capt. Whalen    .Sgt. Lightcap
1100  87-Cummings  lying on bunk. Ⓦ
1115  87-Cummings  lying on floor Ⓦ
1130  87-Cummings  lging on floor Ⓦ
       Lunch served. Ⓦ
1145  87-Cummings  on floor  eating lunch Ⓦ
1200  87-Cummings  lying on bunk. ⓦ
1215  87-Cummings  lying on bunk ⓦ
1230  87-Cummings  lging on floor ⓦ
⑬   Dep Caraballo  10-8 for lunch Ⓖ
1245  #87 Cummings lying on bunk crying Ⓖ
1300  #87 Cummings lying on bunk Ⓖ
1313  [illegible] supervisory tour [illegible]
1315  87-Cummings  lging on bunk ⓦ
1330  87-Cummings  lging on bunk ⓦ
1345  87-Cummings  lying on bunk ⓦ
1400  87-Cummings  lying on bunk ⓦ
1415  87-Cummings  lging on bunk ⓦ
1430  87-Cummings  lying on bunk ⓦ
1445  87-Cummings  lging on bunk. ⓦ
1455  End of tour  all equip to relief. ⓦ
1500-  Delta Female 2:1 Sunday Feb. 14, 2016    H/c=1
2300  Capt. Whalen    Sgt. Perkins        Dep Boggs
1500  H/c=1 , verified. received ① radio (utility 4) and ② keys
       Previous logs read. Orders on Post are as follows:
       Cummings, India (ICN. 1464195) #87 COBS: 1 per
       Sgt. Perkins and FMH/Goltz - No restrictions,
       meal monitoring. All appears safe + secure @ this time.
       #87 Cummings laying on floor, eyes closed, nude Ⓑ
1511  10-59 /10-2 Ⓑ 1400
1515  #87 Cummings laying on bunk quietly, nude Ⓑ 1400
1530  #87 Cummings laying on bunk moaning, nude Ⓑ
1545  #87 Cummings laying on bunk quietly, nude Ⓑ 1400
1600  #87 Cummings laying on floor quietly, nude Ⓑ 1400
1615  #87 Cummings laying on bunk, quietly, eyes closed, nude Ⓑ
1630  #87 Cummings laying on bunk quietly facing wall, nude Ⓑ
       Chow served to #87 Cummings. Ⓑ 1400
1645  #87 Cummings laying on bunk facing wall moaning, nude Ⓑ
1655  Sgt Perkins on area for supervisory tour @ 1500
1700  #87 Cummings laying on bunk quietly, eyes open - nude Ⓑ 1400

12

1500-
2300  Delta Female 2:1  Sunday Feb. 14, 2016   H/c=1
(cont)  Capt Whalen   Sgt Perkins   Dep Boggs
1715  #87 Cummings laying on bunk quietly, eyes closed SB
1725  Dep Boggs 10-10 tinen SB, Dep Tuckey 10-8
1730  87-Cummings is laying on bunk making noise T
1745  87-Cummings is laying quietly on bunk T
1800  87-Cummings is laying quietly on bunk T
      Dep Tuckey off unit, Dep Boggs 10-8 SB
1815  #87 Cummings laying on bunk quietly facing wall, nude SB
1830  #87 Cummings laying on bunk quietly, facing wall, nude SB
1845  #87 Cummings laying on bunk quietly, facing wall, nude SB
1900  #87 Cummings laying on bunk quietly, facing wall, nude SB
1915  #87 Cummings laying on bunk quietly, eyes closed, nude SB
1930  #87 Cummings laying on bunk quietly, eyes closed, nude SB
1945  #87 Cummings laying on bunk eyes closed, nude SB
2000  #87 Cummings laying on bunk, eyes closed, nude SB
2015  87 CUMMINGS LYING ON FLOOR SB
2030  #87 Cummings laying on bunk quietly, eyes open, nude SB
2045  87 Cummings laying on bunk quietly, eyes closed, nude SB
2100  #87 Cummings laying on bunk quietly, eyes closed, nude SB
2113  Med pass, Cummings refuse Med, D.Hu...
2115  #87 Cummings laying on floor nude, mumbling SB
2130  #87 Cummings laying on bunk eyes closed, mumbling SB
2143  Lt Perkins on ...
2145  87 Cummings laying on floor quietly, eyes closed, nude SB
2200  87 Cummings laying on bunk, eyes closed, nude SB
2215  87 Cummings laying on bunk, eyes closed, nude SB
2230  #87 Cummings laying on bunk quietly, eyes closed, nude SB
2245  #87 Cummings laying on bunk quietly, eyes closed, nude SB
2255  Continuing tour at this post SB
2300-  Delta Female 2:1 Monday Feb.15,2016  H/c=1
0700  Lt Bryman   Sgt.Wier   Dep Boggs
2300  H/c=1 verified, held onto Radio (utility 4) and key.
      Previous logs known. Orders on post are as follows:
      #87 Cummings, India (ICN:146495) 2:1 OBS per Sgt
      Perkins and FM Heoltz-No restrictions, meal
      monitoring. All appears safe & secure at this time. SB
      #87 Cummings laying on floor in her food, nude. SB
2315  #87 Cummings laying on floor nude in her food SB
2318  10-59 / 10-2 SB
2330  #87 Cummings laying on floor kicking door and floor SB

2300
0700 Delta Female 2:1 Monday Feb 15, 2016   [HC = 1]
(cont) Lt. Beyman    Sgt Wier .           Dep Boggs

2345 #87 Cummings laying on floor nude, mumbling
0000 #87 Cummings laying on bunk quietly, eyes closed CB
0015 #87 Cummings laying on bunk quietly, eyes closed, nude CB
0030 #87 Cummings laying on bunk quietly, eyes closed, nude CB
0045 #87 Cummings laying on bunk quietly, nude. CB
0100 #87 Cummings laying on bunk quietly, eyes open, nude CB
0114 Sgt Write on unit for security tour ...I/m
(P) refuses to wear clothing and has clutter a trash on floor
0115 #87 Cummings laying on bunk quietly, eyes closed, nude
0130 #87 Cummings laying on floor quietly, nude CB
0144 Dep Miller 10-8  Dep Boggs 10-10 CM
0145 #87 Cummings laying on floor quietly CB
0200 #87 Cummings laying on floor quietly P
0215 #87 Cummings laying on bunk appear sleeps P
        Dep Boggs 10-8, Dep Miller 10-10 CB
0230 #87 Cummings laying on bunk quietly, eyes open, nude CB
0245 #87 Cummings laying on bunk, eyes closed. CB
0300 #87 Cummings laying on bunk, eyes closed. CB
0315 #87 Cummings laying on bunk, eyes closed. CB
0330 #87 Cummings laying on bunk, eyes closed CB
0345 #87 Cummings laying on floor quietly, eyes closed CB
0400 #87 Cummings laying on floor quietly, eyes closed. CB
0415 #87 Cummings laying on floor quietly, eyes closed. CB
0430 #87 Cummings laying on floor quietly, eyes closed CB
0445 #87 Cummings laying on bunk quietly, eyes closed CB
0500 #87 Cummings laying on bunk quietly, eyes closed CB
0515 #87 Cummings laying on bunk quietly, still nude CB
0530 #87 Cummings laying on bunk facing wall CB
0534 Chow offered to #87 Cummings, I/m refused tray C
0512 Sgt Write on unit for security tour. I/m cumming
 └ still naked refusing to cover up from trashed and needs
 └ thorough cleaning CB
0545 #87 Cummings laying on bunk facing wall CB
0600 #87 Cummings laying on bunk facing wall, nude CB
0615 #87 Cummings laying on bunk staring @ ceiling, nude CB
0630 #87 Cummings laying on floor moaning, nude CB
0645 #87 Cummings laying on floor under blanket, facing wall CB
0655 End of tour, all equip. to relief CB HOO

x - 1500   Delta Female 2:1        Monday 2/15/16          [HKJ]
           Lt Glinski              Sgt Wade                Dep Ranick

0700    Rec'd ① radio, ② Keys, F/S/S check completed, previous logs read,
        all appears safe and secure. # 87 Cummings, India, ICN #
        146495, on C/O per FMH Dr Coggins and Sgt Perkins, 2:1, no
        restrictions, meal monitoring in effect. Dep'l Sup cuffed for all
        movement, inmate is laying on the floor naked with food and
        a tray scattered about the cell, appears asleep ☜ 1463

0710    10/59, 10/2 ☜ 1463

0715    # 87 Cummings laying on the floor naked making noises ☜ 1463

0730    # 87 Cummings appears asleep naked on the floor ☜ 1463

0745    # 87 Cummings laying naked on the floor playing with her tray ☜ 1463

0800    # 87 Cummings laying naked on the floor making noises ☜ 1463

0815    # 87 Cummings laying naked on floor yelling ☜ 1463

0817    Sgt Wade on unit suptour. Appears secure ☜ B

0830    # 87 Cummings laying naked on floor quietly ☜ 1463

0845    # 87 Cummings laying naked on floor playing with her tray ☜ 1463

0900    # 87 Cummings appears asleep naked on floor ☜ 1463

0915    # 87 Cummings appears asleep naked on floor ☜ 1463

0930    # 87 Cummings naked on floor babbling ☜ 1463

0945    # 87 Cummings naked, rolling around on floor ☜ 1463

1000    # 87 Cummings appears asleep on bunk naked ☜ 1463

1015    # 87 Cummings naked on bunk making noises ☜ 1463

1030    # 87 Cummings naked on bunk making noises ☜ 1463

1045    # 87 Cummings appears asleep on floor naked ☜ 1463

1100    # 87 Cummings appears asleep on floor naked ☜ 1463

1115    # 87 Cummings refused lunch tray ☜ 1463

1130    # 87 Cummings appears asleep on bunk naked ☜ 1463

1145    Marabito 10-8 Ranick 10-10 lunch  87 Cummings is
        laying on bunk naked. ☜

1200    87 Cummings on bunk naked ☜

1215    87 Cummings on bunk naked ☜
        Pass thru Key is added to 1:1 post key ring for a
        total of 3 keys.

1230    # 87 Cummings laying naked on bunk making noises ☜ 1463

1245    # 87 Cummings laying naked on bunk making noises ☜ 1463

1300    # 87 Cummings laying naked on floor in front of door ☜ 1463

1315    # 87 Cumming sleeping naked on the floor ☜ 1463

1321    Sgt Wade on unit suptour. Appears secure ☜ B

1330    # 87 Cummings, laying on floor, pushing things under her door ☜ 1463

1345    # 87 Cummings laying on the floor, naked making noises ☜ 1463

0700-1500 Delta Female 1:1      Monday 2/15/16      H/C=1

     Lt Glinski      Sgt Wade .      Dep Ranick

1400 #87 Cummings naked laying on the floor, pushing things under door.

1415 #87 Cummings naked laying quietly on the floor ≈ 1403

1430 #87 Cummings naked, appears asleep on bunk ≈ 1403

1445 #87 Cummings appears asleep, naked on bunk ≈ 1403

1455 End of tour, all equipment to relief, all appears safe and secure [H/C=1] ≈ 1403

1500/2300 DELTA FEMALE 1:1    MONDAY 2/15/16      H/C = 1

     LT. ISCH      SGT. PERKINS      DEP. OSJKA

1500 AST, H/C=1 VERIFIED. REC'D ③ KEYS, ① RADIO. FIRE/
SAFETY / SECURITY CHECK COMPLETE. PREVIOUS LOG READ.
ALL APPEARS SAFE AND SECURE.

#87 CUMMINGS, INDFA, ICN #146495, ON C/W PER
SGT. PERKINS AND DR. COGGINS (FMH), 2:1, NO
RESTRICTIONS, MEAL MONITORING IN EFFECT, DEP/SUP
CUFFED FOR ALL MOVEMENT. IM IS LAYING NAKED
ON FLOOR PUSHING SCATTERED FOOD UNDER THE DOOR.

1509 10-59, 10-2.

1515 #87 CUMMINGS LAYING NAKED ON FLOOR BY DOOR.

1530 #87 CUMMINGS LAYING NAKED ON BUNK.

1545 #87 CUMMINGS LAYING QUIETLY ON BUNK.

1600 #87 CUMMINGS APPEARS TO BE ASLEEP.

1615 #87 CUMMINGS APPEARS TO BE ASLEEP.

1630 #87 CUMMINGS LAYING ON BUNK MAKING NOISES.

1632 CHOW ON UNIT, #87 CUMMINGS OFFERED, CURRENTLY
LAYING ON HER BUNK QUIETLY.

1637 87 Perkins on call for approving tour a 518

1645 #87 CUMMINGS LAYING ON BUNK MAKING NOISES.

1700 #87 Cummings layn on floor by door

1715 #87 Cummings layn on floor by door

1730 #87 Cummings layn on floor by door
DEP. KARZOUN 10-10 LUNCH RELIEF. DEP. OSJKA 10-8.

1745 #87 CUMMINGS LAYING ON FLOOR BY DOOR.

1800 #87 CUMMINGS LAYING ON BUNK SLEEPING.

1815 #87 CUMMINGS LAYING AWAKE ON BUNK.

1830 #87 CUMMINGS MOVING AROUND ON BUNK.

1845 #87 CUMMINGS LAYING AWAKE ON BUNK.

1900 #87 CUMMINGS MOVING AROUND ON BUNK.

1915 #87 CUMMINGS APPEARS TO BE ASLEEP ON BUNK.

1930 #87 CUMMINGS APPEARS TO BE ASLEEP ON BUNK.

1945 #87 CUMMINGS APPEARS TO BE ASLEEP ON BUNK.

CONT.
16
1500

/2300   DELTA FEMALE 1:1   MONDAY 2/15/16   [HIC=1]
        LT. ISCH          SGT. PERKINS      DEP. OSIKA

2000   #87 CUMMINGS MOVING AROUND ON BUNK. (PO)
2015   #87 CUMMINGS LAYING ON BUNK QUIETLY. (PO)
2030   #87 CUMMINGS LAYING ON BUNK QUIETLY. (PO)
2045   #87 CUMMINGS SITTING BY DOOR. (PO)
2100   #87 CUMMINGS LAYING ON FLOOR BY DOOR. (PO)
2115   #87 CUMMINGS LAYING ON BUNK. (PO)
2125   Sgt. Perkins on cell for supervisory tour 8:08
2130   #87 CUMMINGS MOVING AROUND ON BUNK. (PO)
2145   #87 CUMMINGS APPEARS TO BE ASLEEP ON BUNK. (PO)
2200   #87 CUMMINGS LAYING AWAKE ON BUNK. (PO)
2215   #87 CUMMINGS LAYING BY DOOR. (PO)
2230   #87 CUMMINGS LAYING BY DOOR. (PO)
2245   #87 CUMMINGS LAYING BY DOOR BABBLING. (PO)
2255   END OF TOUR, EQUIPMENT TO RELIEF. (PO)

2300/0700  Delta Female 1:1   Tuesday 2-16-16   [HIC=1]
           Lt. Isch          Sgt Rozlowski       Dep. Moss

2300   AST, [HIC=1] verified, Rec'd ① Radio, ③ keys, fire/safety/
       security check complete, previous logs read. All
       appears safe and secure at this time.
       #87 Cummings, India ICN 146475 on CW 2:1
       no restrictions per Sgt Perkins and Dr. Coggins
       (CFMH), meal monitoring, Dep-Sup cuffed for all
       movement. I/M is laying on bunk, naked at this
       time (PO) 1484

2315   #87 Cummings laying on bunk (PO) 1484
2318   10-59 / 10-2 (PO) 1484
2330   #87 Cummings laying on bunk (PO) 1484
2845   #87 Cummings laying on bunk (PO) 1484
0000   #87 Cummings appears asleep (PO) 1484
0015   #87 Cummings appears asleep (PO) 1484
0030   #87 Cummings appears asleep (PO) 1484
0040   Dep Moss 10-10
0045   #87 Cumming lying on bed
0100   #87 Cumming lying on bed
0115   #87 Cumming lying on bed
0130   #87 Cummings appears asleep (PO) 1484
0145   #87 Cummings appears asleep (PO) 1484
0200   #87 Cummings laying on bed (PO) 1484
0215   #87 Cummings appears asleep (PO) 1484

2300/0700
(cont'd) Delta Female 1:1    Tuesday 2·16·16     H/C-1
Lt. Isch     Sgt Kozlowski     Dep. Moss

0230 #87 Cummings is laying on bunk, awake (M)1434
0245 #87 Cummings is laying on floor (M)1434
0300 #87 Cummings is laying on bunk, appears asleep (M)1434
0315 #87 Cummings laying on bunk (M)1434
0330 #87 Cummings appears asleep (M)1434
0345 #87 Cummings appears asleep (M)1434
0400 #87 Cummings appears asleep (M)1434
0415 #87 Cummings is laying on floor (M)1434
0430 #87 Cummings is laying by door moaning (M)1434
0445 #87 Cummings laying in front of door hyperventilating (M)1434
0500 #87 Cummings laying in front of door (M)1434
0515 #87 Cummings laying on bunk (M)1434
0525 Chow on unit, can't open pass-thru door, waiting for assistance (M)
0530 #87 Cummings laying naked on bunk (M)1434
0537 Got pass-thru open, food accepted but not eaten (M)1434
0545 #87 Cummings laying on bed awake (M)1434
0557 I/M observed eating some dry cereal + drank juice (M)1434
0600 #87 Cummings laying on floor in front of door,
    picking at/ eating some of breakfast (M)1434
0605 Sgt Kozlowski Supervisory Tour (M)
0615 #87 Cummings laying on floor in front of door (M)1434
0630 #87 Cummings laying in front of door (M)1434
0645 #87 Cummings laying on floor, hyperventilating (M)1434
0655 End of tour, all equipment to relief (M)1434
0700/1500 Delta Female 1:1 Tuesday February 16, 2016
    M. Giordino Sgt: Knezevic Dep. Kozakiewicz
0700 IXCI verified, Bee's utility #1 radio, 3 keys, pelas
    top recd. All doors secure #87
    Cummings, India cell 1434.95, 1:1 constant.
    No restrictions per Lt Corbett, FMOH. Meal
    monitor ok, NROT, Dep Sup out for movement.
    As-sec in control booth. I/M Cummings lying
    on floor naked, excess trash thrown all
    over. I/M refuses to throw out, G1038
0715 #87 Cummings on floor making noises G1038
0716 10:59/10·2 G1038
0730 #87 Cummings lying on floor, making noises G1038
0745 #87 Cummings lying on floor naked. 1038
0800 #87 Cummings kneeling by door, having a bite/breakfast

5/00/1500 Delta Female 2:1 (Tuesday) February 16, 2016

@ Colombi [illegible] Medical Hozalice Ice

0815 #87 Cummings lying on bunk G038

0830 #87 Cummings lying on floor G038

0845 #87 Cummings lying on bunk w/ blanket

0900 #87 Cummings lying on bunk G038

0915 #87 Cummings standing at the door G038

0930 #87 Cummings lying on floor in front of door

0945 #87 Cummings lying on blanket in front of door

1000 #87 Cummings pushing garbage under door. When asked by this deputy to get garbage to throw out. I/M lays back on floor G038

1005 Sgt Knezevic on unit - Sup tour G038

1015 #87 Cummings lying on floor G038

1030 #87 Cummings lying on floor, remains naked G038

1045 #87 Cummings lying on her bunk G038

1100 #87 Cummings lying on the floor G038

1115 #87 Cummings lying on floor G038

1130 #87 Cummings officers lunch tray G038

1135 #87 Cummings refused tray to be out G038

1145 #87 Cummings had breakfast tray, spreading wet cereal on floor G038

1200 #87 Cummings laying in garbage & food in cell on floor G038

1215 #87 Cummings lying on bunk G038

1230 #87 Cummings smearing cereal all over her body & floor G038

1245 #87 Cummings lying on floor screaming "I have a sister" G038

1300 #87 Cummings rolling around on floor G038

1315 #87 Cummings lying on bunk, remains naked G038

1330 #87 Cummings lying on bunk, restless G038

1345 #87 Cummings lying on bunk, yelling & moaning G038

1400 #87 Cummings lying on floor in front of door G038

1415 #87 Cummings on floor, drinking milk G038

1430 #87 Cummings on bunk covered herself w/ blanket G038

1430 Cummings can't 2:1 no restriction. V. Then clear no [illegible]

1445 #87 Cummings lying on bunk G038

4/e 1435 #87 Cummings refused to speak with T. Chania FMH. I/M did not acknowledge FMH present G035

1450 #87 Cummings urinates on floor, does not respond to verbal communication G038

0700-1500 Delta Female 2:1 Tuesday February 16, 2016
LT. Gelinski SGT. Krezejc DEP. Breakewick
1455 End of tour, equip to relief, all appears secure. #87 Cummings lying on bunk.
DEP. Kom #1038

1500-2300 DELTA FEMALE 2:1 TUESDAY FEB. 16, 2016
LT. LODESTRO   SGT. PERKINS          DEP. WINDRUM
1500 RECEIVED (1) RADIO, UTILITY 4 AND (3) KEYS. EQUIPMENT APPEARS TO BE IN GOOD WORKING ORDER. PREVIOUS LOGS REVIEWED. POSTED ORDERS ON THE UNIT AS FOLLOWS: #87 CUMMINGS, INDIA 1CW# 146495 2:1 BY ORDERS OF SGT. PERKINS AND DR. COGGINS/FMH - NO RESTRICTIONS AND MEAL MONITORING. CUMMINGS CURRENTLY LYING QUIETLY ON HER BUNK. 1418
1515 #87 CUMMINGS LYING ON BUNK, UNDER BLANKET. 1418
1519 REQUESTED 10-59 – 10-2. 1418
1530 #87 CUMMINGS LYING ON BUNK, FACING THE WALL. 1418
1545 #87 CUMMINGS LYING ON BUNK, MOANING. 1418
1600 #87 CUMMINGS LYING ON BUNK, YAWNING. 1418
1615 #87 CUMMINGS LYING ON THE FLOOR. 1418
1625 Sgt Perkins on area for supervisory tour. s-8
1630 #87 CUMMING LYING QUIETLY ON HER BUNK. 1418
1635 CHOW ON THE UNIT, DINNER SITTING ON THE PASS-THROUGH. 1418
1645 #87 CUMMINGS LYING ON BUNK, MEAL NOT TOUCHED. 1418
1700 #87 CUMMINGS LYING ON BUNK, STARING. 1418
1715 #87 CUMMINGS LYING QUIETLY ON BUNK. PASS-THROUGH CLOSED, DINNER NOT EATEN, JUICE WAS CONSUMED.
1730 DEP JACKSON 10-8, DEP WINDRUM 10-10 1191
1038 87 - CUMMINGS APPEARS ASLEEP ON BUNK
1745 87 - CUMMINGS APPEARS ASLEEP ON BUNK
1750 DEP JACKSON 10-10, DEP WINDRUM 10-8
1800 #87 CUMMINGS APPEARS ASLEEP ON BUNK. 1418
1815 #87 CUMMINGS APPEARS ASLEEP ON BUNK. 1418
1830 #87 CUMMINGS LYING ON BUNK, GROANING. 1418
1845 #87 CUMMINGS LYING ON FLOOR, TRYING TO PUT ON PANTS. 1418
1900 #87 CUMMINGS LYING ON BUNK WITH ORANGES ON BUT PANTS APPEAR TOO SMALL. 1418
1915 #87 CUMMINGS APPEARS ASLEEP ON BUNK. 1418
1930 #87 CUMMINGS LYING ON BUNK, MOANING. 1418

CONT. ON PAGE 20

20

1500-2300 DELTA FEMALE 2:1 TUESDAY FEB. 16, 2016
(CONT.)   LT. LODESTRO   SGT. PERIATUS         DEP. WINGRUM
1945 #87 CUMMINGS LYING QUIETLY ON THE FLOOR. @1418
2000 #87 CUMMINGS SITTING ON FLOOR IN FRONT OF DOOR @1418
2015 #87 CUMMINGS LYING QUIETLY ON HER BUNK @1418
2030 #87 CUMMINGS LYING ON BUNK TAKING OFF T-SHIRT @1418
2045 #87 CUMMINGS LYING ON BUNK, NAKED. @1418
2100 #87 CUMMINGS LYING ON BUNK, STARING AT DOOR @1418
2115 #87 CUMMINGS LYING ON BUNK, MOANING.. @1418
2130 #87 CUMMINGS LYING ON BUNK, FACING THE WALL @1418
2141 Sgt Perkins on area for supervisory tour 0538
2145 #87 CUMMINGS LYING ON FLOOR IN FRONT OF DOOR @1418
2200 #87 CUMMINGS LYING ON BUNK, MOANING @1418
2215 #87 CUMMINGS LYING ON FLOOR IN FRONT OF DOOR @1418
2230 #87 CUMMINGS SITTING ON FLOOR LEANING AGAINST DOOR @1418
2245 #87 CUMMINGS LYING ON THE FLOOR IN FRONT OF DOOR @1418
2255 END OF TOUR, EQUIPMENT TO RELIEF @1418

2300 0700 DELTA FEMALE 2:1 WEDNESDAY February 17, 2016
LT. BAYRON       SGT. LIGHTCAP      DEP. KOZALKEWICZ
2300 TACU VERIFIED, Rec's UNITY 4 PATIO, @ REP front
DELTA Control. All appears secure, #87 Cummings,
INDIA ICU/14U #495, 2:1 const. obs per T. Chasino
De Loggins, NO Restrictions. I/M Cummings
lying NAKED at the door, cell is dirty, food
& garbage all over floor, I/M refuses to
throw out or clean. All appears secure
Dep Koz @ 1038
2315 #87 Cummings lying on floor, crying 1038
2316 Receivers Logs read 1038
2317 10:59/10:10 1038
2330 #87 Cummings CRAWLING on floor to the bunk 1038
2345 #87 Cummings Lying on Bunk, crying 1038
0000 #87 Cummings lying on bunk, crying 1038
0015 #87 Cummings lying on bunk 1038
0025 Sgt highted supervisory tour, excess trash on floor
0040 #87 Cummings lying on bunk, MOANING 1038
0045 #87 Cummings lying on floor, MOANING 1038
0047 Sgt. Lightcap with PTA, on way to clean
cell 1038
0168 #87 Cummings escorted to MEDICAL 1038
0152 #87 Cummings out to Bflo Gen Hospital 1038

21

3/16/16  Delta Female W:1  Wednesday  February 17, 2016
        Lt. Bryman   Sgt. Lightcap   Dep. Koakiewicz
0210  Post closed. Radio ref's to Central (Critical)
      with log book. 3 keys to 5th Central.
      All appears secure. Dep. Koakiewicz

      Wednesday February 17, 2016    H|C|1
0700  Buffalo General Hospital  6TH Floor  MICU #30
1500  Lt. Glinski    Sgt. Webster    Dep. Marth
      Received 1 log book, 1 radio, 1 waist chain, 1 shackle,
      2 cuffs.  Inmate Cummings India ICN 146495
1240  Nurses + Dr. in Room for procedure
1252  2-Drs in Room for legs exam
1300  Aide in Restocking medical supplies
1305  Father, Mother + Aunt on unit for visit. Father
      (Paul Cummings) signing consent forms for additional tests.
1310  Tech in for Doppler of legs
1350  Nurse in - Meds
1355  Mother + Aunt in unit for visit
1420  Nurse in checking pupils
1430  Dr + Nurse in putting line in Right Wrist
1455  End of tour. All to Relief.

      Wednesday 2/17/16    H|C|1
1500/ Buffalo General 4th Floor. MICU #30
2300
      Lt. Lodestro      Dep. Widebeck
      Rec'd ① Logbook, ① Radio, ① waste chain. ② cuff. ①
      shackle. I/m Cummings, India (146495)
1510  2 drs, 2 nurses in Room
1615  Father and mother on unit for visit.
1630  Notified by Sgt Scanio. I/m Cummings Roff'd. Post
      closed. All equipment returned to ECHC.

0700-1500 Alpha Seg 2:1      Saturday, March 5, 2016    H|C|1
      Lt. Lodestro        Sgt. Knezevic        Deputy Stevens
1355  Post opened. Received utility 7 radio. W1-Park, Lisa
      ICN 00454 - 2:1 per Sgt Cress| Fmh Holani -
      Smock|Smock blanket - no utensils - to A Seg 35
      H|C|1 - AS1385
1400  35-Park sitting on bunk talking to herself AS1385
1410  35-Park Lisa A|P ASeg 29-2:1 - Post closed
      per Sgt Knezevic. H|C|1 utility 7 radio to
      central control — Stevens 1385

B



## Final Report of the
## New York State Commission of Correction:


In the Matter of the Special Investigation into the Care and Treatment Provided to


India Cummings,
an inmate of the
Erie County Holding Center


June 26, 2018


To: Sheriff Timothy Howard
Erie County Holding Center
40 Delaware Avenue
Buffalo, New York 14202


**Allen Riley**
*Chairman*


**Thomas J. Loughren**
*Commissioner*

GREETINGS:

   WHEREAS, the Medical Review Board has reported to the NYS Commission of Correction pursuant to Correction Law, section 47(1)(e), regarding the care and treatment provided to India Cummings which occurred while an inmate in the custody of the Erie County Sheriff at the Erie County Holding Center, the Commission has determined that the following final report be issued.

FINDINGS:

1.   India Cummings was a 27-year-old female who died on 2/21/16 of acute renal failure that resulted in a cardiac arrest while at the Buffalo General Hospital. Cummings had been in the custody of the Erie County Sheriff at the Erie County Holding Center from 2/1/16 to 2/17/16 after her arrest by the Lackawana Police Department. Cummings was released from custody while hospitalized following a cardiac arrest that occurred at the Holding Center on 2/17/16. The Medical Review Board has found that the medical and mental health care provided to Cummings by Erie County during her course of incarceration and her care, custody, and safekeeping by Erie County Sheriff Deputies was so grossly incompetent and inadequate as to shock the conscience. Had Cummings received adequate and appropriate medical and mental health care and supervision and intervention from the beginning of her incarceration, her death would have been prevented. As Cummings' deteriorating health began after receiving traumatic injury to her arm during her arrest and then being subject to continued neglect during her incarceration, the Medical Review Board opines that her death should be ruled as a homicide due to medical neglect.

2.   On 2/1/16, Lackawanna Police Officers were dispatched to assist the Lackawanna Fire Department on a mental health Emergency Medical Services (EMS) call. The Lackawanna Fire Chief reported that they were dispatched at 1:20 p.m. for an EMS call for an unconscious subject. Lackawanna Police Officers responded to 62 Knowlton to assist the Fire Department. Cummings was reported to be acting disorderly. While the police were checking the back of the residence, Cummings ran out the front door and approached a vehicle waving her arms. The driver believed that Cummings needed assistance and rolled down the window. Cummings opened the car door, punched the driver in the nose, and forced the driver from the vehicle. Cummings then fled the scene with the vehicle. Police officers pursued Cummings. Cummings struck a vehicle and refused to stop despite police instruction. She then struck a school bus and again refused to stop. Cummings struck another vehicle that was stopped at a red light. Cummings' vehicle was stopped and she was commanded to exit the vehicle. She did not comply with the instructions to exit the vehicle. Officers used a baton to break the glass on the passenger side window of the vehicle. Cummings then tried to exit the vehicle on the driver's side. She was forced out of the vehicle, continued to behave in an irate and uncooperative manner, and refused to comply with the officer's directions. Cummings refused to put her hands behind her back and was then forced to the ground by police to be taken into custody. Cummings refused to be placed in the back of the police vehicle and attempted to kick the officers. Cummings was placed under arrest by the Lackawanna Police Department at approximately 2:17 p.m. During the transport to the Police Department Cummings continued to act in an unruly manner. Cummings was placed in a cell at the Lackawanna Police Department awaiting a 4:00 p.m. court arraignment. Cummings was arraigned by Judge F.M. and

was transported to the Holding Center at 4:28 p.m. Cummings bail was set at $15,000. Given Cummings erratic behavior at the scene and during her arrest, and based on that a call for emergency medical care was made on her behalf for altered mental status, the Medical Review Board opines that Cummings should have been transported to a hospital for evaluation prior to incarceration.

3. Cummings had no known medical history and was not prescribed any medications. She had no known mental health history or record of treatment in the community. Other than prior vehicle and traffic infractions, Cummings had no other known criminal history or police contact.

4. On 2/1/16 at 4:50 p.m., Cummings was admitted into the Holding Center.



The Medical Review Board finds that given her obvious mental status and lack of cooperation in the screening process, a Mental Health referral for ECMC would have been appropriate.

5.



The Medical Review Board finds that the discrepancy in the cause of the injury and the multiple car accidents prior to her arrest with the altered mental status should have alerted the ECMC medical staff to perform a further workup including a chest x-ray and Mental Health referral. While Cummings was being transported from ECMC to the Holding Center she had an altercation with the deputies and bit one of them. Cummings also refused to get into the patrol car and was combative. Cummings was charged with Disorderly Conduct, Harassment 2nd Degree, and Obstructing Governmental Administration 2nd Degree.

6.   On 2/2/16, per the Holding Center Booking log book, Cummings returned to the Holding Center at 2:45 a.m. Per the Alpha Long log book, at 3:09 a.m., Cummings was placed into Alpha Long cell #18.

7.

8.

The Medical Review Board finds
that the lack of examination of Cummings' injury and the lack of documentation was
grossly negligent medical care.

9.  On 2/2/16 from 9:10 p.m. until 10:10 p.m., Cummings had a contact visit with ▮▮▮ This
    was the only visit Cummings attended. On 2/8/16, 2/9/16, and 2/10/16, Cummings
    refused her visits and would not comply with directions to get dressed for a visit. There
    was no documentation in the Delta Control logbook of her refusal of the visit on 2/10/16.
    This refusal was located on the visitation log.

10.

At 10:10 a.m., per the Alpha log book, Cummings was designated "A/P
Ad seg and was Dep/Sup cuffed." This meant that Cummings was on Administrative
Segregation and was required to be handcuffed and transported with a Deputy and a
Supervisor present.

The Medical Review Board finds that the finding of
elevated blood pressure at the ECMC and the Holding Center should have prompted an
order for monitoring with vital signs more checked more frequently.

11. On 2/3/16, following Cummings' assault incident with staff, her classification was not
    reviewed. Commission staff interviewed facility staff and reviewed classification records
    and noted that Cummings' classification was not reviewed as required by 9 NYCRR
    §7013.9. Pursuant to 9 NYCRR §7013.9 (a)(1), an inmate's classification status shall be

reviewed and revised as necessary if the inmate is involved in a serious unusual incident or exhibits adjustment problems which threaten her safety or the safety, security, or good order of the facility. Cummings was involved in several serious events that met the criteria outlined within the Standard including the assault on staff incident that occurred on 2/3/16. This is a violation of 9 NYCRR §7013.9 (a)(1) Classification Review.

12. Commission staff interviewed facility staff and reviewed facility records and noted that on 2/3/16, Cummings was involved in an assault on personnel that resulted in injuries to a facility staff member. Pursuant to 9 NYCRR §7022.3(a)(2), this incident should have been reported to the Commission within 24 hours of occurrence or discovery. The failure to report this incident constitutes a violation of 9 NYCRR §7022.3 (a)(2) Reportable Incidents. Cummings was charged with Assault: Intentionally Inflicting Physical Injury Upon a Staff Member, Disorderly Conduct- that results in injury or threatens the safety, security, or order of the facility, Harassment, and Failure to Obey Any Order from Staff Immediately. Per the disciplinary report, Cummings struck one deputy in the jaw and caused cuts and scratches to another deputy.

13. 

The Medical Review Board finds that given Cummings' documented presentation, an immediate psychiatric referral should have been made. Additionally, the Medical Review Board finds that LMHC ▇ failed to properly inform the Erie County Holding Center staff of her condition and questions the clinical decision as to how if Cummings was documented as "not oriented to place or time" how could she function in general population with other inmates.

14. On 2/4/16, Cummings was arrested for Assault on a Police Officer/Fireman/EMT, Assault 2nd Degree, Assault 3rd Degree, and Obstructing Government Administration 2nd Degree due to the incident that occurred on 2/3/16. Following her arrest, Cummings' classification was not reviewed. This is a violation of 9 NYCRR §7013.9 (a)(1) Classification Review.

15.

The Medical Review
Board opines that had Cummings been seen in a timely manner when the records were
obtained and examined by a physician, her serious medical conditions could have been
identified and treated.

16. On 2/4/16 at 6:31 p.m., per the Alpha Seg log book, maintenance was on the unit to
check Cummings' sink in her cell. "Cummings refused to push the sink button.
Maintenance left the unit." was documented in the logbook. There was no indication in
the log book of a problem with the sink.

17. On 2/5/16 at 9:55 a.m., per the Alpha Seg log, book Cummings was brought to
Lackawanna City Court and returned at 11:35 a.m. Per the transcript of the court
appearance, Cummings was to undergo a 730 examination prior to being indicted. This
request came from Judge N.L. and was requested to be completed prior to her return to
court date of 2/24/16. Cummings was represented by assigned attorney J.K.

18.

The Director stated that it could take one
to two weeks as a 730 examination required two psychiatrists to complete. During an
interview with Commission staff, Dr. stated that a 730 examination can be
completed by a psychiatrist or psychologist. In February 2016, the Erie County Forensic
Mental Health had two psychiatrists and three psychologists on staff that could do the
730 examinations. Dr. stated that it usually takes approximately two weeks to
complete and The
Medical Review Board finds that Erie County Forensic Mental Health failed to properly
initiate and expedite a competency evaluation on Cummings.

19.





20. The Holding Center has an Interdisciplinary team that meets daily to discuss those inmates who are on observation, have behavior problems, are on meal monitoring, or refusing medications. The members of the team include an RN, a sergeant, and a mental health staff member. ███████████████████████████████

    ███████████████████████████████████████████████████████████

    The reports from the meeting are emailed to a specified list of recipients to include other medical staff and mental health staff as well as security staff. However, during the investigation, Dr. ███ stated that he does not receive the Interdisciplinary Team report minutes and it was also discovered that this report is not emailed to the facility medical director or the other psychiatric providers. Dr. ███ is the only psychiatrist who receives the report. The Medical Review Board finds that the lack of communication among the mental health staff and the lack of information available to mental health staff hinders the comprehensive psychiatric care that is required for comprehensive mental health care.

21. On 2/5/16 at 4:25 p.m., per the Alpha Seg log book, Cummings was allowed time out of her cell and was returned at 4:45 p.m. During an interview with Commission staff, Deputy ███ stated that this indicated the time Cummings was allowed out of her cell for shower access and phone use.

22. On 2/5/16 at 4:50 p.m., per the Delta Female Control log book, Cummings was moved to the unit in cell 87 and was "Dep/Sup" (supervised escort). At 7:39 p.m. and 9:45 p.m., there was documentation in the Delta Control log book of the LPN doing medications with no refusals indicated. ██████████████████████████

    This is a violation of the Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication

Management Medication Administration ECSO CHD: 11-01-00 which states:
 a- the inmate will refuse medication face to face with the nurse and report the rationale for refusal,
b- all inmate medications refusals will be documented within the EMAR,
c- the nurse assigned to passing medications is responsible for notifying the medical or FMH provider via the EMR, when a medication is missed for three (3) consecutive doses, or missed 50% of the scheduled doses in a one-week period.
d- the inmate refusing medication will sign a medical refusal form, the signed refusal form will be signed by two medical staff members and scanned into the inmates EMAR,
e- if the inmate refuses to sign the form, the form will be witnessed as to refusal to sign and scanned into the EMAR, and
f- at the time of refusal the nurse will educate the inmate about potential health risks for refusing medication, worsening of symptoms, consequences of refusal of medical treatment.

In the case of psychiatric medications, this refusal will be reported to the mental health staff during the morning interdisciplinary team meeting. The lack of documentation regarding Cummings' refusal of medication is a violation of Erie County Department of Health (ECDOH) Correctional Health (CH) Medication Delivery System ECDOH CH-06.04.00, as this was not noted at the Interdisciplinary Team meeting.

*In a response to the Commission's preliminary report dated 5/30/18, the Erie County Attorney reported that policy ECSO CHD: 11-01-00 from 2015 supersedes policy ECDOH CH-06.04.00 and does not identify any reporting requirement to the interdisciplinary team meeting for refused medications. Both policies were provided to the Commission during the review of the matter with no indication that ECDOH CH-06.04.00 was not in effect.*

23.    On 2/6/16, per the Delta Control log book, the nurse was on the unit at 7:50 p.m. for medications and there is no indication of any refusals.

24.    On 2/7/16 at 11:15 a.m., per the Delta Control log book, Cummings refused her meal. At 1:25 p.m., Cummings was observed flooding her cell and the water was shut off. Sergeant ▮ documented in the Delta Control logbook that water usage was to be monitored, used, and then turned off. During an interview with Commission staff, Deputy ▮ stated that Cummings had been splashing water on herself earlier in the shift. When there was water noted to be coming under the door the supervisor was called and advised to come to the unit. Deputy ▮ stated that after the water had been turned off, the sergeant later returned and stated that the water could not be shut off and would just be monitored. Following this individual inmate disturbance, Cummings' classification was not reviewed. This is a violation of 9 NYCRR §7013.9 (a)(1) Classification Review.

25.    Commission staff interviewed facility staff and reviewed the Delta Control log book entries for 2/7/16. Commission staff noted an entry authored by Sergeant ▮ documenting an event involving Cummings who was flooding the housing area and ordered "water usage to be monitored, used and then turned off". The next logbook entry regarding Cummings' water use was entered on 2/11/16 at 7:30 a.m., indicating "Inmate asking for water, water on. Flood dodgers in place Inmate Cummings prone to flood." Commission staff was advised during an interview with Chief of Operations ▮ that he was unaware that the water was shut off to Cummings' cell and that the Watch

Commander maintained the authority to approve water deprivation and that it should
have been documented via an administrative deprivation order. Further interviews with
Captain ▮ (Watch Commander) and Sergeant ▮ (Area Supervisor) indicated that
the Area Supervisor maintained the authority to shut off water to an inmate's cell and
higher approval was not needed. Sergeant ▮ further advised Commission staff that it
is incumbent upon his relief to either continue or discontinue the "water monitoring".
Sergeant ▮ advised Commission staff that the toilet and sink in the cell maintained
separate shut off valves and that his order to turn the water off applied only to the toilet;
the sink remained functional. Commission staff toured the housing area with Captain ▮
visually inspected the plumbing chase, and noted that there was only one water shut off
valve controlling water to both the sink and toilet. There was no documentation of any
administrative orders issued to restrict Cummings access to her cell water other than the
logbook entry dated 2/7/16. Additionally, from 2/7/16 at 1:25 p.m. to 2/11/16 at 7:30 a.m.,
there was no clear indication of what time periods Cummings had her access to the
water in her cell turned on or off. A restriction of water to a cell, absent a clearly
documented need for the safety and security of the facility with administrative review and
approval, constitutes a violation of 9 NYCRR §7040.4(b)(2) & (3) Individual Occupancy
Housing Units. Each individual occupancy housing unit shall contain: (1) one bed and
mattress, (2) one functional sink, and (3) one functional toilet.

*In a response to the Commission's preliminary report dated 5/30/18, the Erie County
Attorney provided documentation that there were separate shut off valves for both the
cell sink and toilet in addition to a main water shut off vavle. A photo provided of the
water valve assembly in the plumbing chase area shows separate valves labeled on the
photo for both the sink and the toilet with a main water shut off valve located below
them. The individual valves shown have slotted top fittings with no attached handles.
These type valves would require the use of a tool or key to be effectively shut off. There
was no documentation provided to indicate that either maintenance was called or a tool
obtained to shut the water off, as ordered on 2/7/16, or turned on, as entered in the
logbook on 2/11/16.*

26.   On 2/7/16 during the 3:00 p.m. to 11:00 p.m. shift, Deputy ▮ noted that at 3:00 p.m.
Cummings had ripped up the vinyl part of the mattress during the previous shift and that
the sergeant was to be notified. There was no documentation in the log book to indicate
that Cummings had ripped the mattress on the previous shift. At 8:46 p.m. per the Delta
Control log book, the LPN was on the unit for medications and there were no refusals for
medications noted. ▮
This is a violation of the Erie County Sheriff's Office Policy and Procedure Correctional
Health Division Medication Management Medication Administration ECSO CHD: 11-01-
00. During an interview with Commission staff, Deputy ▮ could not recall the
sergeant's response to the ripped mattress. When asked if there was water on in
Cummings' cell, Deputy ▮ stated that he could not recall the water being off. Deputy
▮ stated that he did not issue a misbehavior report to Cummings for damaging the
mattress. During an interview with Commission staff, Sergeant ▮ stated that the
water was on in Cummings' cell on his tour. Sergeant ▮ stated that he does not
leave the water off in cells. The failure to replace the ripped mattress which would be
deemed non-serviceable is a violation of 9 NYCRR §7040.4(b)(1) Individual Occupancy
Housing Units. Pursuant to 9 NYCRR §7040.4(b)(1), each individual occupancy housing
unit shall contain one bed and mattress. There was no documentation of any
administrative deprivation orders issued to deprive Cummings of her entitlement to
possess a mattress.

27. On 2/8/16 at 7:36 a.m., per Deputy ▮ in the Delta Female log book, Cummings refused to go to her disciplinary hearing. A review of the disciplinary report indicated that Cummings received sanctions including restitution of $100, loss of 1-hour visit for 120 days, disciplinary segregation for 180 days, and full restriction. At 7:56 a.m., Sergeant ▮ was on supervisory rounds. At 8:15 a.m., per the Delta Female log book, Cummings refused her Orthopedic appointment. Cummings refused to sign the transportation refusal form which was signed by the deputy. Cummings also refused court on this date. At 1:02 p.m., Cummings refused a visit. At 1:25 p.m., Sergeant ▮ was on supervisory rounds. There was no indication in the log book that these refusals were addressed by the sergeant or that the sergeant spoke to Cummings. During an interview with Commission staff, Deputy ▮ stated that all refusals are obtained by the Supervisory staff. During an interview with Commission staff, Sergeant ▮ stated that the deputy obtains the refusals and notifies the appropriate areas. Sergeant ▮ stated that the supervisor goes up to the housing unit for the escort once the deputy confirms the inmate is going to the appointment. Sergeant ▮ stated that he does not see every inmate when he is on his supervisory rounds. The Medical Review Board finds that this discrepancy regarding who obtains the refusals is indicative of the systemic management failures of the Holding Center.

28. On 2/8/16 at 7:47 p.m., per the Delta Control log book, the LPN was on the unit for medications and there was no indication that Cummings had refused her medications. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is a violation of the Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00.

29. On 2/9/16 during the 11:00 p.m. to 7:00 a.m. shift, per the Delta Female log book, Cummings mattress was ripped, the stuffing was pulled out, and room was in disarray as noted in the previous log. There is no indication in the log book that Cummings' mattress was replaced. The failure to replace the ripped mattress which would be deemed non-serviceable is a violation of 9 NYCRR §7040.4 (b)(1) Individual Occupancy Housing Units.

30. On 2/9/16 at 9:40 a.m. per the Delta Female log book, Cummings was out to Buffalo City Court. This was for an arraignment for Assault on a Police Officer/Fireman/EMT, Assault 2nd Degree, Assault 3rd Degree and Obstructing Government Administration 2nd Degree. At 9:55 a.m., per the log book, maintenance was on the unit to clean Cummings' cell. At 10:13 a.m., Cummings returned from court. At 1:17 p.m., Deputy ▮ documented in the Delta log book that Cummings refused a non-contact visit. During an interview with Commission staff, Deputy ▮ stated that Cummings was urinating on the floor and was not showering. Deputy ▮ stated that it is common to have the cells cleaned when the inmates are out of the cell.

31. On 2/9/16, a second separate request for a competency evaluation was received from Judge G. at Buffalo City Court. This was the second request for a 730-competency evaluation issued by a court for Cummings. Mental Health requested additional time to complete the evaluation as the adjournment date was 2/16/16. Mental Health Director ▮ stated that they usually take one to two weeks to complete. The Medical Review Board finds that Erie County Forensic Mental Health again failed to properly initiate and expedite a 730 competency exam, that was indicated as needed by two separate court jurisdictions.

32.  On 2/9/16 at 7:24 p.m. per the Delta Female log book, the LPN was on the unit for medications. There is no indication of refusals noted in the log book. ██████████ ████████████████████████████████████ This is a violation of the Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00.

33.  ████████████████████████████████████████████████████████████████

     ████████████████████████████████████████████████████████████████

     ████████████████████████████████████████████████████████████████

     ████████████████████████████████████████ The Medical Review Board opines that Cummings, who was documented as impaired enough to be unable to sign for a release of her privacy information, was not of a sound state of mind to be incarcerated and required immediate physician intervention and hospitalization.

34.  On 2/10/16 at 7:24 p.m., per the Delta Control log book, the LPN was on the unit for medications and there is no indication of any refusals. ████████████████████ ████████████████████ This is a violation of the Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00.

35.  On 2/11/16 at 1:20 a.m., per the Delta Control log book, Deputy ███ stated that Cummings was pounding on her door yelling for help. Cummings stated that she needed to go downstairs and get out of there. Cummings was told the time and then Cummings said that she couldn't breathe. Per the log book entry, Sergeant ███ was notified and there was no indication of any action being taken. At 6:15 a.m., Sergeant ███ was on the unit for supervisory rounds without any indication of Cummings being seen. During an interview with Commission staff, Deputy ███ stated that Cummings stated that she wanted to go home and when she was told she couldn't leave, she then stated that she couldn't breathe. Deputy ███ stated that the sergeant informed him that he would follow up with medical. Deputy ███ stated that an LPN came up later in the shift to deliver medications, but he could not recall if Cummings was seen. Deputy ███ stated that Cummings slept for the remainder of the shift and was not in any distress. The Delta Control log book documented that the LPN was on the unit at 4:59 a.m. for medication. There was no indication that the LPN saw Cummings. During an interview with Commission staff, Sergeant ███ stated that he did not recall being told of Cummings' complaints and that he would have called medical to have medical come see her. He stated that he did not recall medical coming to see her that shift. Sergeant ███ then stated that he was unsure if she went to medical or if medical came to see her.

36.  On 2/11/16 at 7:30 a.m. per the Delta Control log book, Deputy ███ noted that Cummings was asking for water and documented "water on, flood dodges in place, inmate prone to flooding." At 8:18 a.m., Cummings was offered recreation but refused. During an interview with Commission staff, Deputy ███ stated that Cummings had a mattress in her cell. Deputy ███ stated that she could not recall Cummings' behaviors or the condition of her cell. When asked about the water request, Deputy ███ stated

that at times Cummings was unable to push the button for water on her sink but that there was water access in her cell. There was no other documentation of flood dodges noted on any other log book entries. On 2/11/16, the Holding Center administration received a call from the sergeant at court who stated that Cummings was mentally decompensating and needed to be seen. ████████████████████

████████████████████████████████████████ Per Mental Health Specialist J.L., this is a meeting about medications and problems with patient's medications. The meeting does not address specific inmates. During an interview with Commission staff, Sergeant ████ stated that he called medical and reported that Cummings appeared disheveled and with a flat affect. Sergeant ████ attempted to talk to Cummings at court but she would not engage him. Sergeant ████ stated that he was quite concerned about her presentation and he contacted the facility medical department with his concerns and was advised that they were going to a meeting and would address his concerns there.

37. ████████████████████████████████████████

38. ████████████████████████████████████████

████████████████████████ During an interview with Commission staff, Dr. ████ stated that she does get notified if inmates refuse medications in general, as the medical department notifies the counselor. After three refusals, an appointment is scheduled with the provider to assess and review. ████

████████ Dr. ████ did state that medications compliance can be seen in the electronic medical records by the providers. ████████████████████

████████████ Dr. ████ stated that if an inmate is referred for a 9Z2 (forensic

mental health) bed the referral is also verbal and handled by Mental Health Director █████
who maintains a list and triages to place inmates as needed. A 9Z2 bed is an inpatient
mental health bed at the Erie County Medical Center that can provide a higher level of
psychiatric inpatient care. There are two beds available in this unit for county inmates.

█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████ Dr. █████ stated that other than the two forensic mental health beds
available at ECMC on the 9Z2 unit, the county has no other options for psychiatric beds
for an inpatient stay. The Medical Review Board finds that this was an abject failure by
the psychiatric provider to take immediate action on a floridly decompensating patient in
need of urgent medical and psychiatric intervention. The Board opines that the
psychiatrist had an absolute duty to assure that Cummings was referred to medical by
having a physician to physician consultation instead of delivering said request to nursing
staff at the facility. The failure of Dr. █████ to take appropriate action in this matter at this
critical juncture continued the cascade of failures that led to Cummings' death and in the
Board's opinion, is evidence of negligent medical care.

39.    On 2/11/16 at 5:00 p.m. per the Delta Control log book, Deputy █████ documented that
Cummings refused medical. During an interview with Commission staff, Deputy █████
stated that he did not recall what Cummings refused. Deputy █████ stated that the
inmates can be called through the speaker in their cell and would be told that medical is
there to see them. Through this speaker, the inmate can say yes or no to being seen.
Deputy █████ also stated that if an inmate needs something from medical there is a call
box in the room that alerts the control room and then they can call medical. █████████

█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████ There was still no
treatment for Cummings' fractured arm and she was not noted to be wearing a brace.
There was no refusal noted in the medical record for the assessment and vital signs for
Cummings. This is a violation of Erie County Department of Health (ECDOH)
Correctional Health (CH) Refusal of Care ECDOC CH-02-09-00 (Policy #12-07-00)
which requires the completion of a Refusal of Recommended Treatment Form. There is
no evidence of Cummings being notified of the consequences of the refusal. This was
the last RN documentation in the medical record of any attempt at an assessment, vital
signs, or care. The RN's grossly inadequate assessment from outside the cell and their
lack of intervention on Cummings behalf were negligent and constituted professional
misconduct. The Medical Review Board opines that the medical staff failed to pursue
additional attempts to complete an assessment or to refer Cummings to a higher level of
care which resulted in Cummings not receiving appropriate medical intervention and
ultimately her death. Pursuant to 9 NYCRR §7010.1(b) prompt screening is essential to
identify serious or life-threatening medical conditions requiring immediate evaluation and
treatment.

40. On 2/11/16 at 6:25 p.m., per the Delta Female one to one observation log book, the post was opened with Deputy███ and the reason for the one to one observation was not documented.  This is a violation of 9 NYCRR §7003.3(j)(5)(i) Supervision of Prisoners. Commission staff reviewed Constant Observation logbook entries and noted that facility staff failed to document within the logbook the reasons that Cummings was placed on additional supervision. Pursuant to 9 NYCRR §7003.3(j)(5)(i), this information is required to be documented within the written supervision records and the failure to do so constitutes a violation of this section.

41.

   During an interview with Commission staff, Deputy███ stated that Cummings was very clear and coherent when she refused her medications.  This is a violation of Erie County Department of Health (ECDOH) Correctional Health (CH) Refusal of Care ECDOC CH-02-09-00 (Policy #12-07-00) as there was no refusal form or education noted.

42. At 7:35 p.m., the meal monitoring tool was on the unit.

   There was no doctor or provider order written for the meal monitoring.  There is no indication of the doctor being consulted or notified of the meal monitoring.  There is no evidence of a provider appointment being made for an evaluation.  This is a violation of 9 NYCRR §7010.2 which states "no medication or medical treatment shall be dispensed to an inmate except as authorized or prescribed by the facility physician."  This is also a violation of Erie County Department of Health (ECDOH) Correctional Health (CH) Meal Monitoring ECDOH CH-06.10.00 (Policy #12-10-00).  When security staff becomes aware that an inmate is not eating regularly and such irregularity consists of three or more consecutive meals, the security staff member will make an entry into the housing area log book documenting this observation and notify medical.  Following notification, the inmate will be examined in the medical unit.  If appropriate, the medical provider will order a meal monitoring plan to be started. A full physical workup will be conducted.  The inmate will be scheduled for daily weights, vital signs, and a nursing assessment of orientation and mental status.  The nurse will notify the medical provider of any decrease in weight, signs of dehydration, or changed in mental status. This was also a violation of Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring ECSO CHD:05-03-01 which adds that the assessment will include but not limited to all the above and skin turgor and mucous membranes.  All documentation will be in the inmate's electronic medical records (EMR). The Medical Review Board finds that the lack of RN assessments and physician evaluation is indicative of the grossly negligent care that was provided to Cummings during her incarceration and contributed to her death.

43.

44.   On 2/12/16 on the 11:00 p.m. to 7:00 a.m. shift, per the Delta log book, Deputy ▮
      documented that Cummings was on a one to one and Deputy ▮ was sitting with her.
      There is no indication of the reason for the one to one observation which is a violation of
      9 NYCRR §7003.3 (j)(5)(i)-Supervision of Prisoners. At 4:15 a.m., Cummings was noted
      as washing her shirt at the sink. The deputy noted that she called for a new shirt from
      the linen room. At 4:30 a.m., Cummings was noted to be drinking water. At 4:40 a.m.,
      Cummings was offered to exchange the wet shirt for a dry shirt and she refused. At 5:30
      a.m., Cummings was given breakfast and per the meal monitoring tool, Cummings did
      not eat. During an interview with Commission staff, Deputy ▮ stated that initially
      Cummings refused to exchange the shirt, but then did switch the shirt out. Deputy ▮
      stated that Cummings' toilet was shut off but her water was on in her cell. There is no
      indication in the log book of Cummings urinating. Commission staff reviewed the
      Constant Observation logbook entries and interviewed facility staff responsible for
      supervising inmates on constant observation. Commission staff noted that the facility's
      practice consisted of documenting observations and inmate activity at set 15-minute
      intervals and any inmate activity that occurred during the intervals was not documented.
      Pursuant to 9 NYCRR §7003.3(j)(5)(vi), logbook records shall include periodic facility
      staff observations of the prisoner's condition or behavior. The Commission's
      interpretation of this standard deems that all inmate activity shall be documented and in
      instances where there is no change in activity or behavior, such as when the prisoner is
      asleep, then an entry should be made documenting the prisoner's continued activity at
      intervals not to exceed 15 minutes. The failure of facility staff to document all of
      Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3(j)(5)(vi)-Supervision
      of Prisoners.

45.   On 2/12/16 on the 7:00 a.m. to 3:00 p.m. shift, per the Delta female one to one log book,
      it was noted by Deputy ▮ "at 7:00 a.m. Cummings was walking around naked banging
      on the door saying, 'let me out'." There is no indication of the reason for the one to one
      which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. At 7:15 a.m.,
      Cummings was turning the sink on and off. At 10:30 am, Cummings was laying on her
      bunk complaining but there was no indication of what the complaints were in the log
      book. At 11:25 a.m., lunch was served on the unit and per the meal monitoring tool,
      Cummings refused her tray and did not eat. At 2:45 p.m., Cummings was spitting water
      on the floor. There is no indication that Cummings urinated during this eight-hour shift.
      This is a violation of 9 NYCRR §7003.3(j)(5)(vi). At this time per the one to one log
      book, Cummings had not urinated in 16 hours, a critical finding indicating possible
      dehydration and renal malfunction that needed to be immediately reported to medical
      staff. During an interview with Commission staff, Deputy ▮ stated that Cummings
      "seemed out of it, didn't act like she knew she was in jail."

46.



47.

During an interview with Commission staff,
Sergeant ▮ stated that the meetings were about 15 minutes long and they would
discuss medication noncompliance, any inmates on observation, and inmates having
incidents or behaviors. The report is emailed through a chain of command to medical,
mental health, and security staff. This is a violation of Erie County Sheriff's Office Policy
and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring
ECSO CHD:05-03-01 which states that "the interdisciplinary team will discuss each
inmate being followed for meal monitoring of any concern or change in condition." There
is no indication that this was discussed by the team and there is no documentation on
the report that Cummings was on a meal monitoring. Per Erie County Sheriff's Office
Policy and Procedure Correctional Health Division Inmate Care and Access Hunger
Strike ECSO CHD:05-07-00 Procedure: 2- the nurse will place the inmate on a meal
monitoring tool. The monitoring tool will be assessed daily by the registered nurse and
documented within the medical record. There is no evidence of an RN going on the unit
for an assessment for the 7:00 a.m. to 3:00 p.m. shift and there is no indication in the
one to one log book that an RN was in to see Cummings.

48. On 2/12/16 during the 3:00 p.m. to 11:00 p.m. shift, Deputy ▮ was assigned the 2 to 1
observation. There was no indication of the reason for the one to one observation which
is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. At 4:45 p.m.,
Cummings returned her old meal tray and was given dinner. Per the meal monitoring
tool, Cummings did not eat food but did drink lemonade. At 5:00 p.m., Cummings asked
to clean up and was told that the deputy would check with the sergeant. Deputy ▮
documented that "I/M is a dep, sup, cuffed I was told for transport within a facility." At
6:45 p.m., Cummings was given soap and a towel to wash in her cell. At 7:00 p.m.,
Cummings was noted to be brushing her teeth. At 7:15 p.m., Cummings was given a
blanket for her bunk. There is documentation in the Delta Female Control book and the
Delta Female 2 to 1 observation log book that the nurse was on the unit for medications
at 7:45 p.m. and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At 8:00 p.m., Cummings was

issued six pairs of socks, two bras, and six pair of underwear from the "ground floor". At 9:30 p.m., there was a notation that Cummings was sleeping on her bunk. There was a late entry that noted "mattress was brought up by maintenance and was not given to Cummings today, wait to see if behaviors continue to improve so this one is not destroyed. Has been cooperative with all directions given by sergeant and deputy this shift." There is no indication of an RN coming to see Cummings to assess her or to review the meal monitoring tool. There is no indication that Cummings urinated. This shift marks 24 hours that Cummings had not been documented while on constant supervision as having urinated, a critical finding indicating possible dehydration and renal malfunction that needed to be immediately reported to medical staff. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3(j)(5)(vi)-Supervision of Prisoners.

49.     During an interview with Commission staff, Deputy ▮▮▮ could not recall if Cummings was issued the new mattress. Deputy ▮▮▮ also could not recall why Cummings was issued new clothing during the 3:00 p.m. to 11:00 p.m. shift. During an interview with Commission staff, Sergeant ▮▮▮ stated that Cummings requested shower access but could not be allowed when she requested it as the facility locks down from 5:30 p.m. to 6:30 p.m. When he returned to offer her the shower after lockdown at approximately 6:45 p.m., Cummings refused at that time. When asked about the clothing that was issued to her, Sergeant ▮▮▮ stated that this would have been property brought in by family and is usually issued at this time. Sergeant ▮▮▮ stated that he never told the deputy not to give Cummings the mattress when it was brought up. He did state that Cummings had water in her cell. There is no indication that Cummings urinated. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3(j)(5)(vi)-Supervision of Prisoners. Cummings was not afforded a shower on this shift after her request. It is further noted that at 9:30 p.m., Deputy ▮▮▮ documented that Cummings "has been cooperative and complied with all directions" issued by the deputy and the sergeant "on this shift". Commission staff was advised by Holding Center staff that when inmates are transferred between housing units, they do not transfer facility issued property with them and are reissued property in the new housing assignment. Commission staff reviewed the Constant Observation logbook entries for Cummings and noted that on 2/12/16 at approximately 6:45 p.m., Deputy ▮▮▮ issued Cummings a towel and soap to wash up in her cell. Further, at approximately 7:15 p.m. she was issued a blanket and at approximately 8:00 p.m. She was issued undergarments, including six pairs of white socks, two bras, and six pairs of underwear. There is no documentation of any administrative deprivation orders issued to deprive Cummings of her entitlement to possess a towel, blanket, and clothing/undergarments. Cummings was transferred to Delta Female cell 87, on Administrative Segregation and subsequently disciplinary status, on 2/5/16 at approximately 4:50 p.m. This prolonged deprivation constitutes violations of 9 NYCRR §7005.6(a)(6)- Personal Health Care Items, §7005.7- Clothing, and §7005.9(a)-Bedding.

50.     On 2/13/16, on the 11:00 p.m. to 7:00 a.m. shift, Cummings was supervised by Deputy ▮▮▮ There was no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3(j)(5)(i) Supervision of Prisoners. At 4:15 a.m., Cummings was standing at the sink with her head underwater while she was urinating on the floor. At 5:27 a.m., Cummings was given her breakfast tray. Cummings took the juice and then threw the tray on the floor yelling "I don't fucking want it." Cummings then began yelling to let her out. During an interview with Commission staff, Deputy ▮▮▮ was unable to recall if the supervisor was notified of this behavior. Deputy ▮▮▮ did state that

when a supervisor makes his rounds, he is given an overview of the inmate's behaviors. During an interview with Commission staff, Sergeant ▮▮▮ stated that he did not recall if he was notified of Cummings' behavior that shift. Sergeant ▮▮▮ stated that when he is on duty during the first round he reviews the log book and on subsequent rounds he relies on the deputies to tell him about any changes. Upon review of the Constant Observation log book, there was no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of the food and urine. The facility failed to take reasonable action to ensure that Cummings' cell remained in a habitable condition. The inaction of facility staff, allowing the cell to degrade to a deplorable condition, constitutes a violation of 9 NYCRR §7015.2(c)-Cell Sanitation. This is a violation of NYS Correction Law §500 – K Treatment of Inmates and Correction Law §137 (6)(b) which requires that: Adequate sanitary and other conditions are required for the health of the inmate shall be maintained.

51.    On 2/13/16 during the 7:00 a.m. to 3:00 p.m. shift, Cummings was supervised by Deputy ▮▮▮ There is no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3(j)(5)(i) Supervision of Prisoners. At 10:15 a.m., Cummings was standing at the door and observed urinating on the floor. At 11:30 a.m., Cummings was noted to be drinking water. Per the meal monitoring tool, Cummings ate an orange and drank milk. Upon review of the Constant Observation log book, there was no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2(c)-Cell Sanitation. During an interview with Commission staff, there were no changes in her behavior per Deputy ▮▮▮ On the 7:00 a.m. to 3:00 p.m. shift, there was no indication in the one to one observation log book that an RN was in to see Cummings or to review the meal monitoring tool as was required per policy.

52.



There is no indication these findings were relayed to the Psychiatrist, jail physician, or medical staff. The Medical Review Board opines that this lack of communication and failure to obtain care for an inmate in an obvious declining mental and physical status further expedited her continued decline that led to her death.

53.

There is no

indication on the report that Cummings was on meal monitoring or that she was refusing medications. This is a violation of Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring ECSO CHD:05-03-01.

54. On 2/13/16 on the 3:00 p.m. to 11:00 p.m. shift, Cummings was supervised by Deputy ▆▆▆ There is no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. At 4:35 p.m., Cummings refused her meal and accepted her juice. At 8:15 p.m., Cummings was observed sitting in front of the cell door "peeing." ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Upon review of the Constant Observation log book, there was no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2 (c) Cell Sanitation. This is a violation of NYS Correction Law §500 – K Treatment of Inmates and Correction Law §137 (6)(b). During an interview with Commission staff, Deputy ▆▆▆ reported that Cummings was naked the whole time, talking to herself, hard to understand, and babbling. Deputy ▆▆▆ reported that Cummings had a mattress and was given a smock and smock blanket. Per Deputy ▆▆▆ when the LPN came with medications, Cummings expressed that she did not want medications. Deputy ▆▆▆ reported that urine came out of the cell door but she was unable to recall who cleaned it up. There is no indication in the one to one observation logbook that an RN was in to see Cummings.

55. On 2/14/16 on the 11:00 p.m. to 7:00 a.m. shift, Cummings was supervised by Deputy ▆▆▆ There is no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3 (j)(5)(i) Supervision of Prisoners. Cummings was reported to be naked all night, laying down on the floor or bunk, and occasionally moaning. At 2:30 a.m., Cummings was laying on the floor moaning and ripping up her cup, naked. At 5:30 a.m., Cummings refused breakfast and per the meal monitoring tool consumed only juice. At 6:45 a.m., Cummings was laying on the floor and urinated all over herself and remained naked. Upon review of the Constant Observation log book, there was no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2 (c) Cell Sanitation. This is also violation of NYS Correction Law §500 – K Treatment of Inmates and Correction Law §137 (6)(b). During an interview with Commission staff, Deputy ▆▆▆ stated that Cummings frequently made moaning noise. Deputy ▆▆▆ did not note any changes in Cummings' mood or behaviors from her previous time with her. Deputy. ▆▆▆ stated that the sergeant was notified of Cummings urinating on herself and was told that they were aware of this issue.

56. On 2/14/16 on the 7:00 a.m. to 3:00 p.m. shift, Cummings was supervised by Deputy ▆▆▆ There is no indication of the reason for the one to one which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. Cummings was lying on the floor or bunk until 11:45 a.m., when she was noted to be on the floor eating lunch. Cummings then remained laying on her bunk until the end of the shift. On the 7:00 a.m. to 3:00 p.m. shift, there is no indication in the one to one observation log book that an RN was in to see Cummings as required per the meal monitoring policy. There is no indication that Cummings had urinated. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3(j)(5)(vi)-Supervision of Prisoners.

57. 

There was no evidence that Mental Health Specialist I⬛⬛ s inability to assess Cummings or her observations were referred to the psychiatrist.

58. 

There was no indication on the report that Cummings was on meal monitoring, refusing medication, and decompensating. This is a violation of Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring ECSO CHD:05-03-0.

59. On 2/14/16 on the 3:00 p.m. to 11:00 p.m. shift, Cummings was supervised by Deputy ⬛⬛ There is no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3(j)(5)(i) Supervision of Prisoners. Cummings was documented as remaining naked and moaning. At 4:30 p.m., dinner was served and per the meal monitoring tool, Cummings accepted her tray but consumed only juice. ⬛⬛ There was no progress note or refusal form signed. This is a violation of Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00. On the 3:00 p.m. to 11:00 p.m. shift, there was no indication in the one to one observation log book that an RN was in to see Cummings to assess her or review the meal monitoring form. Deputy ⬛⬛ remained for the 11:00 p.m. to 7:00 a.m. shift. At 11:00 p.m., Cummings was observed laying naked in her food on the floor. At 1:14 a.m., Sergeant ⬛⬛ was on the unit for rounds and Cummings refused to wear clothes and had trash and clutter all over her cell floor. Upon review of the Constant Observation log book, there was no evidence that Cummings had cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2(c)-Cell Sanitation. This is a violation of NYS Correction Law §500 – K Treatment of Inmates and Correction Law §137 (6)(b). At 5:12 a.m., Sergeant ⬛⬛ returned and noted that Cummings continued to refuse to get dressed or cleaned and noted that the cell needed a thorough cleaning. There was no indication of action being taken by the deputy or the sergeant. At 5:34 a.m., Cummings refused her meal tray and did not eat per the meal monitoring tool. At 6:45 a.m., Cummings was documented as laying on the floor under her blanket. During the 3:00 p.m. to 11:00 p.m. and the 11:00 p.m. to 7:00 a.m. shift, there was no indication that Cummings had urinated a critical finding indicating possible dehydration and renal malfunction that needed to be immediately reported to medical staff. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3 (j)(5)(vi) Supervision of Prisoners. During an interview with Commission staff, Deputy ⬛⬛ stated that she does review log books from the previous shifts when she assumes her post. Deputy ⬛⬛ stated that she would not have documented urination unless Cummings did so on her 15-minute documentation time.

60. On 2/15/16 for the 7:00 a.m. to 3:00 p.m. shift, Cummings was supervised by Deputy ⬛⬛ There was no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3 (j)(5)(i) Supervision of Prisoners. At 7:00 a.m.,

Cummings was noted to be on the floor naked with food and a tray scattered around the cell. Upon a review of the Constant Observation log book, there was no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2(c)-Cell Sanitation. This is a violation of NYS Correction Law §500 – K Treatment of Inmates and Correction Law §137 (6)(b) . Cummings refused her lunch tray at 11:15 a.m. Cumming spent the remainder of the shift laying on the floor or her bunk making noises and sleeping. At 12:20 p.m., a pass-through key was added to the key ring. During an interview with Commission staff, Deputy ▓▓▓ stated that the feed up flap is generally left open and this key was added so that the flap could be opened if it got closed. On the 7:00 a.m. to 3:00 p.m. shift, there was no indication in the one to one log book that an RN was in to see Cummings. There is no indication in the one to one log book that Cummings urinated. This shift marks 24 hours that Cummings had not been observed having urinated, a critical finding indicating possible dehydration and renal malfunction that needed to be immediately reported to medical staff. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3 (j)(5)(vi)-Supervision of Prisoners.

61. On 2/15/16 for the 3:00 p.m. to 11:00 p.m. shift, Cummings was supervised by Deputy ▓▓▓ There is no indication of the reason for the one to one which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. At 3:00 p.m., Cummings was laying naked on the floor pushing scattered food under the door. At 4:32 p.m., dinner was on the unit and was offered to Cummings. Per the meal monitoring tool, Cummings did not accept the meal tray or eat any food. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This was not noted in the one to one log book. There was no refusal form signed or progress note written. This is a violation of Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00. This is also a failure of facility staff to document all of Cummings' daily activity which constitutes a violation of 9 NYCRR §7003.3 (j)(5)(vi) Supervision of Prisoners. Per the documentation in the log book Cummings spent the entire shift laying on the bunk or the floor. During an interview with Commission staff, Dep ▓▓▓ stated that Cummings was pacing back and forth and looked healthy. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3(j)(5)(vi)-Supervision of Prisoners. Dep ▓▓▓ stated that Cummings had her smock off and was pacing and she didn't recall seeing her oranges in the cell. Cummings "seemed out in space with a glazed looked on her face" and Dep ▓▓▓ reported that she had been acting this way. Dep ▓▓▓ reported that her prior contact with Cummings was escorting her to a visit and she "seemed off, not responding, and not following direction." On the 3:00 p.m. to 11:00 p.m. shift, there is no indication in the one to one log book that an RN was in to see Cummings. There is no indication that during this shift Cummings urinated which marked 32 hours without any observation of her urinating, a critical finding indicating possible renal failure that needed to be immediately reported to medical staff. The failure of facility staff to document all of Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3 (j)(5)(vi)-Supervision of Prisoners.

62. On 2/16/16 on the 11:00 p.m. to 7:00 a.m. shift, Cummings was supervised by Deputy ▓▓▓ There was no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. At 4:45 a.m., Cummings was noted to be hyperventilating. There is no indication of any action taken by the deputy. At 5:25 a.m., the breakfast meal was served. Per the log book, the deputy could not open the pass thru as the door was stuck. At 5:37 a.m. the pass-through was

finally opened and her meal was served. At 5:57 a.m., Cummings was noted to eat dry cereal and drink juice. At 6:45 a.m., Cummings was observed laying on floor hyperventilating. There is no indication of any action taken for this. During an interview with Commission staff, Deputy ███ stated that she would have reported this hyperventilating to the sergeant but she does not recall if he came to the unit. Deputy ███ stated that Cummings ate more food that morning than she had seen her eat previously. Deputy ███ stated that the 6:45 a.m. episode of hyperventilating would have been relayed to the incoming staff. There is no indication of Cummings urinating. This indicated that Cummings had not been observed to urinate for 40 hours, a critical finding that Cummings was in renal failure and possible ketoacidosis with the observed hyperventilation. The failure of facility staff to document all of inmate Cummings' daily activity constitutes a violation of 9 NYCRR §7003.3(j)(5)(vi)-Supervision of Prisoners. Additionally, the Medical Review Board finds that deputies conducting supervision failed to make immediate notification to medical staff of multiple observations that indicated Cummings was suffering from acute illness.

63.   On 2/16/16 on the 7:00 a.m. to 3:00 p.m. shift, Cummings was supervised by Deputy ███ There is no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. Cummings was observed lying on the floor naked with trash thrown all over the cell which Cummings refused to throw out. Upon review of the Constant Observation log book, there was no evidence that Cummings had cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2 (c). Cell Sanitation. This is a violation of NYS Correction Law Article 20 §500 – K Treatment of Inmates that applies Article 6 §137 (6)(b). At 7:30 a.m., the Delta Control Log Book indicated that Cummings was offered recreation but she refused. At 8:00 a.m., Cummings was noted to be kneeling by the door having a bowel movement. Upon review of the Constant Observation log book, there was no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of the food and urine. This is a violation of 9 NYCRR §7015.2 (c)-Cell Sanitation. At 8:45 a.m., Cummings was noted to be lying on the bunk with a blanket. At 9:15 a.m., Cummings was standing at the door. At 10:00 a.m., Cummings was observed pushing garbage under the door. When Cummings was asked to get the garbage to throw out, Cummings laid back on the floor. At 11:30 a.m., Cummings was offered a lunch tray and pushed it back out of the cell. At 11:45 a.m., Cummings was observed smearing wet cereal from her breakfast tray on the floor. At 12:00 p.m., Cummings was observed playing in the garbage and food in the cell on the floor. At 12:30 p.m., Cummings was observed smashing cereal all over her body and the floor. At 12:45 p.m., Cummings was heard screaming "I have a sister." At 12:50 p.m., the Delta Control Log Book noted that Cummings refused to go to City Court. At 2:15 p.m., Cummings was observed drinking milk. ███

███ At 2:50 p.m., Cummings was observed urinating on the floor and did not responding to verbal communication. During an interview with Commission staff, Deputy ███ stated that Cummings had been "going downhill." Deputy ███ attempted to engage and encourage Cummings to eat. Deputy ███ reported that when mental health came in to see her she covered her head with a blanket and would not engage them. On the 7:00 a.m. to 3:00 p.m. shift, there was no indication in the one to one log book that an RN was in to see Cummings to assess her or review the meal monitoring tool.

64.



The
Medical Review Board finds that the continued lack of assessments, follow ups, and
overall failure to treat Cummings' fractured humerus, documented mental status
decompensation, and observed signs of renal failure constitutes gross negligence of the
Erie County Holding Center's medical staff.

65.

66.

This is a violation of
Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate
Care and Access Meal Monitoring ECSO CHD:05-03-01 as medication compliance can
be viewed by any provider on the electronic system and does not require medical to
update.

67.

The Medical Review Board
opines that this obvious decline in functioning should have been addressed immediately
and medical staff should have been notified immediately. There is no evidence that any
medical provider was consulted with or notified of Cummings' physical condition. There
is no evidence that the psychiatrist was consulted regarding Cummings' mental state
and decline of functionality. Upon review of the Constant Observation log book, there is
no evidence that Cummings cleaned her cell or that any other staff cleaned the cell of
the food and urine. This is a violation of 9 NYCRR §7015.2 (c). Cell Sanitation.

*In a response to the Commission's preliminary report dated 5/30/18, the Erie County
Attorney indicated that there was insufficient evidence to support that Cummings cell
was not cleaned. Per the Commission's review of the Constant Observation log book for
that date 2/16/16, there were no entries regarding any cell cleaning. Addtionally, FNP
clinical record specifically stated "cell is deplorable".*

68.



He stated that the facility can get information from outside sources and try to incorporate the families in the care.  FNP ▮ stated that the 9Z2 beds are the only options for the county and if there is a medical reason for the behavior, medical staff can send the inmate to the emergency room. ▮

He stated that medical staff would get the request and follow the instructions.  FNP ▮ stated that there is no way to confirm if the note on the desktop is received or read by medical staff.  He did state that if the request was not completed, they have the option to call medical staff or resend the note. ▮
FNP ▮ stated that he does not get the minutes from the Interdisciplinary Team Meeting.  FNP ▮ stated that the forensic staff meets two times a week with the psychiatrist, NP, and counseling staff. ▮
The Medical Review Board finds that the FNP's decision that Cummings' condition was drug related without consulting a psychiatrist or medical provider to rule out a potential medical condition compounded the progressing medical crisis that ultimately led to her death.  The Medical Review Board finds that there was a systemic lack of communication and coordination of care in the Forensic Mental Health Department.  The request by Dr. ▮ for a medical evaluation was never completed and was attempted by an RN, a person wholly underqualified given Cummings' deteriorating status.  The mental health providers were not aware that Cummings was not taking her prescribed medications.  The Interdisciplinary Team Meeting minutes did not reflect any other information on Cummings other than her waiting for a 9Z2 (forensic mental health) bed and seem to serve little to no valuable function in their present format to address inmate's serious health needs.  The NP was not aware that Dr. ▮ believed this could be a medical issue and did not report his findings to her.  Dr. ▮ did not follow through with her request for a medical evaluation and despite getting the Interdisciplinary Team Meeting minutes, did not note that the report indicated that Cummings was awaiting a 9Z2 bed per her order with no mention of a medical evaluation. Additionally, the Medical Review Board finds it unconscionable that for a six-day period, Cummings was maintained on constant observation status, with documented observations of her failing to eat, failing to urinate, mentally decompensating without any immediate referrals to the jail physician and or reports to jail administration.  As the Sheriff of Erie County holds the ultimate responsibility to safely keep all inmates in his custody, the Medical Review Board finds that the collective neglect and failures to provide proper care to Cummings is a violation of NYS Correctional Law §500-c (4).

69.
On 2/16/16 on the 3:00 p.m. to 11:00 p.m. shift, Cummings was supervised by Deputy ▮ There is no indication of the reason for the one to one which is a violation of 9 NYCRR §7003.3(j)(5)(i)-Supervision of Prisoners. At 3:15 p.m., Cummings was observed lying on her bunk under the blanket. At 4:35 p.m., Cummings' dinner meal was placed on the pass-through slot. At 5:25 p.m., Cummings tray was removed untouched however she did drink her juice. At 6:45 p.m., Cummings was trying to put on her pants while lying on the floor.  Cummings did get her uniform on and was laying on the bunk, but her pants appeared too small. Cummings was observed either lying on the floor or the bunk the entire shift.  On the 3:00 p.m. to 11:00 p.m. shift, there was no indication in

the one to one observation log book that an RN was in to see Cummings to assess her or review the meal monitoring tool. There was documentation in the Delta Female Control Book that the nurse was on the unit for medications at 7:50 p.m. without indication of any refusals. There was no documentation in the Delta Female 2 to 1 log book that the LPN delivered medications for Cummings. ███████████████

█████████████████████████ This is a violation of Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00. Deputy███ recalled Cummings spoke very little, but that she had water and a mattress in her cell. Cummings was noted to moan but never voiced complaints. Deputy███ was unable to recall if Cummings stood at all during that shift.

70.   On 2/17/16 on the 11:00 p.m. to 7:00 a.m. shift, Cummings was supervised by Deputy ███. There is no indication of the reason for the one to one observation which is a violation of 9 NYCRR §7003.3 (j)(5)(i) Supervision of Prisoners. Cummings was again observed to be naked at 11:00 p.m. She was then observed either lying on the floor or her bunk crying until 12:47 a.m. Deputy███ called the sergeant and advised that there was something wrong with Cummings and requested to have the cell cleaned. At 12:47 a.m., Sergeant███ and Deputy███ along with maintenance arrived to clean Cummings' cell. When Sergeant███ arrived, Cummings was lying on the floor in her cell. Cummings was asked to stand to have the mechanical restraints applied and appeared to have difficulty attempting to stand.  A wheelchair was then obtained for Cummings and she attempted to get into the wheelchair per Sergeant███ but was unable to stand. Medical staff was then notified. Cummings was assisted into the wheelchair by the deputies. Cummings appeared to be confused. ████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

█████ Deputy███ transported Cummings via wheelchair to medical.  Deputy███ then remained in the hallway and did not hear anything being said. ████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

█████ A known medical problem that was neglected for over 14 days.

71.   ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

72. During an interview with Commission staff, Deputy ███ stated that Cummings appeared to have lost all her strength. Deputy ███ stated that there was a change noted in Cummings since she had supervised her on the 7:00 a.m. to 3:00 p.m. shift and this was why she called for the sergeant. During an interview with Commission staff, Sergeant ███ was unable to recall the condition of the cell but did recall food thrown around in the cell. Per Sergeant ███ the plan was that Cummings would be placed in mechanical restraints and stay on her bunk while the cell was cleaned if she was not willing to leave the cell. During an interview with Commission staff, Deputy ███ stated that he was there to assist with cleaning the cell. Deputy ███ could not recall the condition of the cell.

73.

███ Cummings was on hospital watch until 2/17/16 at 4:30 p.m. when she was released from the custody of the Erie County Sheriff's Office.

74. During an interview with Chief ███ who was the Chief of Operation at the Erie County Holding Center, he reported that he did get copied on the Interdisciplinary Reports however, he had never seen Cummings. Chief ███ stated that he does tour the facility but not all areas. Chief ███ stated that water deprivation orders are issued by the watch commander and deprivation orders are written. He did not recall any deprivation orders for Cummings. When asked if he was aware of Cummings' condition and request for transfer to ECMC's 9Z2 unit, he stated that he was not. Chief ███ stated that administration can inquire about placement but already understands that there is a long wait for beds. Chief ███ did not recall anyone voicing concerns about Cummings.

75. From 2/12/16 until 2/16/16, the medical department violated Erie County Department of Health (ECDOH) Correctional Health (CH) Meal Monitoring ECDOH CH-06.10.00 (Policy #12-10-00) and Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring ECSO CHD:05-03-01. Cummings was not seen daily for vital signs or assessment and there is no indication that Cummings was seen by a nurse other than to refuse medications. During the five days that Cummings was on meal monitoring there is no evidence in the Delta Control log book or the Delta Female one to one log book of an RN coming to see Cummings for an assessment, weight, intake, or referral to a provider. There is no evidence that the meal monitoring tool was reviewed by the RN.

    *In a response to the Commission's preliminary report dated 5/30/18, the Erie County Attorney indicated that per policy 05-03-01 vital signs are not required daily for meal monitoring, as the policy states "the nurse will review the meal monitoring form daily and document the inmate's medical assessment…". ECDOH CH-06.10.00 (Policy #12-10-*

*00) requires the inmate be "scheduled for daily weights, vital signs and a nursing assessment of orientation and mental status". Both policies were provided for the Commission's review with no indication that either were not applicable. Additionally, the requirement per policy 05-03-01 for a "medical assessment" to be conducted daily for an inmate under a meal monitoring study would, with a reasonable amount of medical certainty, expect to include a recording of vital signs.*

76.     From 2/12/16 until 2/16/16, the Interdisciplinary Team meeting was held and violated Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring ECSO CHD:05-03-01 which states that "the interdisciplinary team will discuss each inmate being followed for meal monitoring of any concern or change in condition.

77.     ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
        ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ From 2/5/16 until 2/16/16, there are no refusal forms documented in the medical record. The medication was refused and there is no evidence of a progress note in the medical record or of the doctor or mental health being notified. This information was not noted at the Interdisciplinary Team Meetings. There is no evidence of follow up with medication compliance from the mental health staff. Per Erie County Forensic Mental Health Services Standard Operating Procedures Policy: Forensic Mental Health: Refusal of Active Case Treatment/Medication Policy #11 Refusal of Medication Procedure 5- "in circumstances where the inmate provides conflicting information regarding medication compliance, compared to Correctional Health, FMP QMHP will review MAR/EMAR to address validity/accuracy of information." There is no evidence this review was ever completed as all mental health providers stated that they were unaware that Cummings had refused all doses of medications. Cummings was to receive a total of 12 doses of medication and there is no evidence that she received any medication during this time period.

78.     Commission staff interviewed facility staff and reviewed the Constant Observation logbook entries from 2/12/16 until 2/16/16 for Cummings and noted that there was only one documented entry within the logbook that Cummings was offered, refused, or afforded access to a hot shower while she was on Constant Observation. Cummings was entitled to receive five showers during this time. The denial of access to hot showers constitutes a violation of 9 NYCRR §7005.2. (b) Showers.

        *In a response to the Commission's preliminary report dated 5/30/18, the Erie County Attorney indicated that Cummings should have only been afforded access to a hot shower three times during this period as she was housed in special housing and 9 NYCRR §7005.2 states, "hot showers shall be made available to all prisoners confined in special housing….at least three times per week." The intent of this standard is to ensure a minimal access to showers is provided not a maximum and should not serve as an impediment for prisoners to maintain proper hygiene.*

79.     The matter of India Cummings death was referred to the Erie County District Attorney's Office for review. The District Attorney's Office closed out their review as of September 2017 with no grand jury review ordered or any charges filed.

80.     The MRB disagrees with the Erie County Medical Examiner's conclusion that the cause and manner of Ms. Cummings' death were both "Undetermined." India Cummings was diagnosed as suffering from terminal acute renal failure, rhabdomyolysis, dehydration,

thrombosis of leg veins and a poorly healing fracture of the humerus on admission to Buffalo General Hospital. She had been incarcerated at the Erie County Holding Cell for 16 days. Autopsy showed that the immediate cause of her death was a massive pulmonary embolism that occluded blood flow to both lungs. An examination of the microscopic autopsy slides and the circumstances of death establish that the embolus had detached from lower leg thrombosed veins and that it had developed after she was admitted to the ECHC. A brief medical examination at the Erie County Medical Center Emergency Room on the day of incarceration found that she had incurred a comminuted spiral Holstein-Lewis fracture of the left distal humerus consistent with her statement to the treating doctor that she felt her arm break as it was being pulled by a Lackawanna Police Officer who was restraining her. She was given a brace by the ER doctor but received no follow-up care at ECHC as her medical condition was observed to deteriorate. Therefore, the MRB has concluded that the cause of her death was a massive pulmonary embolism resulting from acute renal failure, rhabdomyolysis, dehydration and fracture of the humerus; and that the manner of her death was homicide by medical neglect.

## ACTIONS REQUIRED:

### TO THE OFFICE OF THE SHERIFF OF ERIE COUNTY:

1. The Sheriff shall take notice of the Medical Review Board's findings and recommendations in the report herein and commence comprehensive and systematic reviews of all Holding Center operations to assure that inmates are capable of being safely kept in accordance with Correction Law §500-c. (4). A report of corrective actions to be taken shall be provided to the Medical Review Board.

2. The Sheriff shall conduct a review of policy and procedure and take administrative action to assure that staff are in compliance with 9 NYCRR §7003.3-Supervision of Prisoners regarding the documentation of reasons for increased supervision and the documentation of inmate behavior and activity when increased supervision is being provided.

3. The Sheriff shall conduct a review of policy and procedure and take administrative action to assure that staff are in compliance with 9 NYCRR Part 7005 Prisoner Personal Hygiene regarding deprivation of inmate clothing and providing access to showers when on constant supervision status.

4. The Sheriff shall conduct a review of policy and procedure and take administrative action to assure that staff are in compliance with 9 NYCRR §7013.9-Classification to assure that a proper review of classification occurs after an inmate is involved in a serious incident or exhibits adjustment problems that threaten the inmate's safety of the safety, security, or good order of the facility.

5. The Sheriff shall review the facility's policy and procedure and take administrative action to assure that staff are in compliance with 9 NYCRR Part 7015 Sanitation and review why on multiple occasions Cummings cell was not cleaned of trash and food items.

6. The Sheriff shall review the facility's policy and procedure and take administrative action to assure that staff are in compliance with 9 NYCRR Part 7022 Reportable Incidents and review why Cummings' assault incident on 2/3/16 was not reported to SCOC within the required reporting guidelines.

7. The Sheriff shall review the facility's policy and procedure and take administrative action to assure that staff are in compliance with 9 NYCRR Part 7040 Maximum Facility Capacity in regards to failing to replace Cummings damaged mattress and her prolonged deprivation of water absent any review or accountability by supervisors.

8. The Sheriff will develop a policy and procedure for all staff regarding water deprivation for inmates and will document that training has been completed with all staff regarding said policy.

## TO THE COMMISSIONER OF ERIE COUNTY HEALTH DEPARTMENT AND THE JAIL PHYSICIAN:

1. The Commissioner and Jail Physician shall take note of the Medical Review Board's findings herein and commence a comprehensive review of the multiple failures of the medical staff including failures to pursue additional attempts to complete a medical assessment, failure to refer Cummings to a higher level of care, failures to provide adequate nursing assessments on multiple occasions, failures to order needed physician follow ups, overall failure to treat her fractured humerus, and failure to address observed signs of renal failure that constituted grossly negligent care and led to her preventable death. A thorough report of findings and corrective actions to be taken shall be provided to the Medical Review Board for further review.

2. The Commissioner and Jail Physician shall conduct a review of Cummings's intake medical screening and ascertain why an emergent mental health referral was not made to ECMC on Cummings given her documented altered mental status.

3. The Commissioner and Jail Physician shall conduct a review of Cummings' intake physical by NP J.C. who failed to document a thorough exam of Cummings' arm injury, failed to assure Cummings received prescribed medications, and failed to assure for proper follow up. Administrative action should be taken if found to be in violation of policy and procedure.

4. The Commissioner and Jail Physician shall review the facility's policy and procedure and take administrative action to assure that all medical staff are in compliance with 9 NYCRR Part 7010 Health Services in that a prompt screening is provided to assure serious illnesses or injuries are identified and treated.

5. The Commissioner and Jail Physician will assure training for all medical providers on the policy Erie County Department of Health (ECDOH) Correctional Health (CH) Initial Medical and Mental Health Screening – ECDOH CH-05.01.00 effective 09/10/10.

6. The Commissioner and Jail Physician will assure training for all medical providers on Erie County Sheriff's Office Policy and Procedure Correctional Health Division Medication Management Medication Administration ECSO CHD: 11-01-00.

7. The Commissioner and Jail Physician will assure training for all medical providers on Erie County Department of Health (ECDOH) Correctional Health (CH) Medication Delivery System ECDOH CH-06.04.00.

8. The Commissioner and Jail Physician will assure training for all medical providers on Erie County Department of Health (ECDOH) Correctional Health (CH) Refusal of Care ECDOC CH-02-09-00 (Policy #12-07-00).

9. The Commissioner and Jail Physician will assure training for all medical providers on Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Hunger Strike ECSO CHD:05-07-00.

10. The Commissioner and Jail Physician will assure training for all medical providers on Erie County Department of Health (ECDOH) Correctional Health (CH) Meal Monitoring ECDOH CH-06.10.00 (Policy #12-10-00).

11. The Commissioner and Jail Physician will assure training for all medical providers on Erie County Sheriff's Office Policy and Procedure Correctional Health Division Inmate Care and Access Meal Monitoring ECSO CHD:05-03-01.

## TO THE DIRECTOR, OF ERIE COUNTY FORENSIC MENTAL HEALTH SERVICES

1. The Director will take note of the Medical Review Board's findings herein and commence a comprehensive review of the multiple failures of the psychiatric providers and mental health staff to recognize, assess, and properly obtain emergency psychiatric care for Cummings florid psychosis. Additionally, the Medical Review Board requests that the Erie County Mental Health Department commence a comprehensive review of all crisis level services as the Board has found an alarming pattern of fatal incidents with justice involved patients in Erie County. A thorough report of findings and corrective actions to be taken shall be provided to the Medical Review Board for further review.

2. The Director will review the function of the Interdisciplinary Team and assure that adequate documentation on the report is made and assure that all Medical and Forensic Mental Health providers have access to the report. Additionally, the Interdisciplinary Team should include both a psychiatric and medical provider.

3. The Director will review with process of obtaining medical evaluations requested by Forensic Mental Health staff and develop a policy to assure completion of requests and availability of such evaluations.

4. The Director shall conduct a comprehensive review of the 730 examination order process and ascertain why an expedited review was not completed on Cummings despite requests from two separate magistrates.

5. The Director shall conduct an investigation into the conduct of LMHC ████ who approved Cummings for general population housing despite documenting her altered mental status and failure to properly inform the Erie County Holding Center staff of her condition. Administrative action should be taken if found to be in violation of policy and

procedure.

6. The Director shall conduct an investigation into the conduct of Mental Health Specialist ███ who failed to make an immediate psychiatric referral on Cummings despite documenting that Cummings was not capable of signing a release of her medical information due to her mental status. Administrative action should be taken if found to be in violation of policy and procedure.

7. The Director shall conduct an investigation into the conduct of FNP ███ who failed to make an immediate notification to a physician regarding Cummings' deteriorating physical condition and failed to consult with psychiatry or a physician when determining that Cummings' mental status was possibly drug related. Administrative action should be taken if found to be in violation of policy and procedure.

8. The Director shall conduct an investigation into the conduct of Dr. ███ who failed to order an immediate psychiatric hospitalization of a patient in obvious crisis and failed to engage in a physician to physician consultation regarding the possible underlying medical causes of Cummings' progressively deteriorating health. Administrative action should be taken if found to be in violation of policy and procedure.

## TO THE ERIE COUNTY MEDICAL EXAMINER:

That the Erie County Medical Examiner review the forensic pathology of this case in light of the findings of the Medical Review Board with an eye toward a restatement of the cause of death to better reflect the circumstances and the autopsy findings that Cummings death was attributed to traumatic injury received during her arrest with a prolonged period of continual medical neglect and therefore should be ruled as homicide due to medical neglect.

## TO THE CHAIR OF THE ERIE COUNTY LEGISLATURE:

That the Erie County Legislature take official notice of the findings of the Medical Review Board in the case cited herein and the findings of previous matters that the Board has reported on to address the alarming pattern of fatal events that have occurred in Erie County with justice involved individuals who are in mental health crisis. A comprehensive review and services plan should be commenced by the county.

## TO THE ASSISTANT ATTORNEY GENERAL FOR CIVIL RIGHTS, U.S. DEPARTMENT OF

## JUSTICE:

That the Assistant Attorney General for Civil Rights take official notice of the findings of the Medical Review Board in the case cited herein and initiate both individual criminal civil rights investigations and a CRIPA investigation into the Erie County Sheriff's Office confinement and treatment of India Cummings.

WITNESS, HONORABLE THOMAS LOUGHREN, Commissioner, NYS Commission of Correction, Alfred E. Smith State Office Building, 80 South Swan Street, 12th Floor, in the City of Albany, New York 12210 on this 26th day of June, 2018.

THOMAS LOUGHREN
Commissioner & Chair
Medical Review Board

TL:DC:tlc
06/2018